Case 2:15-cv-04965-PD Document 1 Filed 09/02/15 Page 1 of 37

PAE AO 241
(Rev. 07/



PD

# PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| | |
|---|---|
| United States District Court | District: Eastern District of Pennsylvania |
| Name (under which you were convicted): Dennis Johnson | Docket or Case No.: CP-51-CR-0007319-2009 15 4965 |
| Place of Confinement: SCI-FAYETTE | Prisoner No.: JT-9636 |
| Petitioner (Include the name under which you you were convicted): Dennis Johnson | Respondent (Name of Warden, Superintendent, Jailor, or authorized person having custody of petitioner): Scott Nickelson |
| V. | and |
| | The District Attorney of the County of: PHILADELPHIA |
| | and |
| | The Attorney General of the State of: PENNSYLVANIA |

## PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging: COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY.

   (b) Criminal docket or case number (if you know): CP-51-CR-0007319-2009

2. (a) Date of judgment of conviction (if you know): 9-30-2010

   (b) Date of sentencing: 11-2-2010

3. Length of sentence: Life without parole concurrent terms 5-10 years 3 to 7 years for VUFA.

4. In this case, were you convicted on more than one count or of more than one crime? ☒ Yes ☐ No

5. Identify all crimes of which you were convicted and sentenced in this case: Murder in the second degree, robbery, carring a firearm without a license.

Case 2:15-cv-04965-PD Document 1 Filed 09/02/15 Page 3 of 38



______________________________________________

______________________________________________

______________________________________________

6. (a) What was your plea? (Check one)

☒ (1) Not Guilty ☐ (3) Nolo contendere (no contest)

☐ (2) Guilty ☐ (4) Insanity plea

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? ______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

(c) If you went to trial, what kind of trial did you have? (Check one)

☒ Jury ☐ Judge only

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes ☒ No

8. Did you appeal from the judgment of conviction?

☐ Yes ☒ No

9. If you did appeal, answer the following:

(a) Name of court: ______________________________________________

(b) Docket or case number (if you know): ______________________________________________

(c) Result: ______________________________________________

(d) Date of result (if you know): ______________________________________________

(e) Citation to the case (if you know): ______________________________________________

(f) Grounds raised: ______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

(g) Did you seek further review by a higher state court? ☐ Yes ☒ No

If yes, answer the following:

(1) Name of court: ______

(2) Docket or case number (if you know): ______

(3) Result: ______

(4) Date of result (if you know): ______

(5) Citation to the case (if you know): ______

(6) Grounds raised: ______

(h) Did you file a petition for certiorari in the United States Supreme Court? ☐ Yes ☒ No

If yes, answer the following:

(1) Docket or case number (if you know): ______

(2) Result: ______

(3) Date of result (if you know): ______

(4) Citation to the case (if you know): ______

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court? ☒ Yes ☐ No

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: Court ~~of Common Pleas, Superior Court, Pa~~ Supreme

(2) Docket or case number (if you know): CP-CR-0007319-2009

(3) Date of filing (if you know): July 20,2013

(4) Nature of the proceeding: PCRA

(5) Grounds raised: Trial counsel was ineffective when he failed to object to the robbery jury instruction. 2) Counsel was ineffective when he failed to object to confrontation grounds and hearsay grounds to DT McDermotts testimony. 3) Counsel was ineffective when he failed to object to the introduction of testimony from a medical examiner who did not perform nor observed autopsy. 4) counsel was ineffective when he failed to request for a KLOIBER INSTRUCTION.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes ☒ No

(7) Result: Denied relief

(8) Date of result (if you know): September 9,2013

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: ______

(2) Docket or case number (if you know): ______

(3) Date of filing (if you know): ______

(4) Nature of the proceeding: ______

(5) Grounds raised: ______

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes ☒ No

(7) Result: ______

(8) Date of result (if you know): ______

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: ______

(2) Docket or case number (if you know): ______

(3) Date of filing (if you know): ______

(4) Nature of the proceeding: ______

(5) Grounds raised: ______

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes ☒ No

(7) Result: ____

(8) Date of result (if you know): ____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion:

| | | | |
|---|---|---|---|
| (1) | First petition: | ☒ Yes | ☐ No |
| (2) | Second petition: | ☐ Yes | ☐ No |
| (3) | Third petition: | ☐ Yes | ☐ No |

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**CAUTION:** To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:** Counsel was ineffective when he failed to object to Robbery jury instructions.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO OBJECT TO COMMONWEALTHS ROBBERY JURY INSTRUCTIONS. WHEN TRIAL COURT FAILED TO CHARGE THE JURY ON A ESSENTIAL ELEMENT OF ROBBERY. COMMONWEALTH HAS THE ENTIRE CHARGE WRAPPED AROUND A KILLING IN THE COURSE OF A THEFT. (N.T. 9-30-10 PGS 103-105;ARR12-13).

(b) If you did not exhaust your state remedies on Ground One, explain why: ______________________

(c) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

☐ Yes ☒ No

(2) If you did not raise this issue in your direct appeal, explain why? Direct appeal was waived.

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: PCRA

Name and location of the court where the motion or petition was filed: Court of Common Pleas of Philadelphia County.

Docket or case number (if you know): CP-51-CR-0007319-2009

Date of the court's decision: September 9,2013

Result (attach a copy of the court's opinion or order, if available): SEE EXHIBIT A

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☒ No

(4) Did you appeal from the denial of your motion or petition? ☒ Yes ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☒ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: In the Superior Court of Pennsylvania Eastern District.

Docket or case number (if you know): NO 2706 EDA 2013

Date of the court's decision: February 23, 2015

Result (attach a copy of the court's opinion or order, if available): SEE EXHIBIT B

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:

**GROUND TWO:** Counsel was ineffective when he failed to object to DT.McDermott's testimony regarding Amin Vicks.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

DT.McDermott testified that Amin Vicks, who did not testify was re-interviewed informed detectives "That Curtis Smith was there, Dennis Johnson was the shooter..."(N.T. 9/29/10 pg. 176;ARR)

(b) If you did not exhaust your state remedies on Ground Two, explain why:

(c) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

☐ Yes ☒ No

Case 2:15-cv-04965-PD Document 1 Filed 09/02/15 Page 8 of 38



(2) If you did not raise this issue in your direct appeal, explain why? DIRECT APPEAL WAIVED

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: PCRA

Name and location of the court where the motion or petition was filed: Court of Common Pleas of Philadelphia County.

Docket or case number (if you know): CP-51-CR-0007319-2009

Date of the court's decision: September 9,2013

Result (attach a copy of the court's opinion or order, if available): SEE EXHIBIT A RELIEF DENIED.

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☒ No

(4) Did you appeal from the denial of your motion or petition? ☒ Yes ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☒ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: SUPERIOR COURT OF PENNSYLVANIA EASTERN DISTRICT.

Docket or case number (if you know): NO.2706 EDA 2013

Date of the court's decision: February 23, 2015

Result (attach a copy of the court's opinion or order, if available): RELIEF DENIED SEE EXHIBIT B

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

Case 2:15-cv-04965-PD Document 1 Filed 09/02/15 Page 9 of 38



(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: ______

**GROUND THREE:** Trial counsel was ineffective when he failed to seek a cautionary Kloiber Instruction.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): Counsel was ineffective when he failed to re quest for a cautionary Kloiber instruction, when the Commonwealths case rested entirely on the identifications made by Ozzie Clark and Curtis Smith who on prior occasions failed to identify petitioner.

(b) If you did not exhaust your state remedies on Ground Three, explain why: ______

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

☐ Yes ☒ No

(2) If you did not raise this issue in your direct appeal, explain why? DIRECT APPEAL WAIVED.

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: PCRA

Name and location of the court where the motion or petition was filed: COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY.

Docket or case number (if you know): CP-51-CR-0007319-2009

Date of the court's decision: September 9,2013

Result (attach a copy of the court's opinion or order, if available): SEE EXHIBIT A Relief Denied

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☒ No

(4) Did you appeal from the denial of your motion or petition? ☒ Yes ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☒ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: SUPERIOR COURT OF PENNSYLVANIA EASTERN DISTRICT.

Docket or case number (if you know): NO. 2706 EDA 2013

Date of the court's decision: February 23,2015

Result (attach a copy of the court's opinion or order, if available): SEE EXHIBIT B Relief Denied

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: ______

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: ______

**GROUND FOUR:** Trial counsel was ineffective when he failed to object to the introduction of testimony from medical examiner.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Dr.Collins gave testimony to the cause of death for the

Commonwealth. This Dr.Collins never participated on the victim. Dr.Collins testified that the cause of death "to a reasonable degree of medical certainty" a "gunshot wound to the chest". (Id at 32)

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c) **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

☐ Yes ☒ No

(2) If you did not raise this issue in your direct appeal, explain why? Direct Appeal waived

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: PCRA

Name and location of the court where the motion or petition was filed: COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY.

Docket or case number (if you know): CP-51-CR-0007319-2009

Date of the court's decision: September 9, 2013

Result (attach a copy of the court's opinion or order, if available): SEE EXHIBIT A

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☒ No

(4) Did you appeal from the denial of your motion or petition? ☒ Yes ☐ No

Case 2:15-cv-04965-PD Document 1 Filed 09/02/15 Page 12 of 38



(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☒ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: SUPERIOR COURT OF PENNSYLVANIA EASTERN DISTRICT.

Docket or case number (if you know): NO. 2706 EDA 2013

Date of the court's decision: February 23, 2015

Result (attach a copy of the court's opinion or order, if available): SEE EXHIBIT B

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: ______

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: ______

13. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction? ☐ Yes ☒ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: Issues not raised due to Collateral Attck Counsel's ineffectiveness

Case 2:15-cv-04965-PD Document 1 Filed 09/02/15 Page 13 of 37

GROUND FIVE: Petitioner was denied the effective assistance of counsel as guaranteed under the United States Constitution. When trial counsel failed to interview any eyewitness that was present at the crime scene.

This claim was not raised in the state court due to the collateral review counsel's ineffectiveness. Under the guidance of the United States Supreme Courts decision in Martinez v. Ryan, 132 s.ct. 1309 (U.S.2012), this claim is proper position to be heard in the instant habeas petition.

(b) Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: ______

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition? ☐ Yes ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available. ______

15. Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging? ☐ Yes ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised: ______

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: Brian McMonagle address not known.

(b) At arraignment and plea: Michael Coard One Liberty Place 1650 Market ST STE 3652 Phila Pa 19103-7301.

(c) At trial: Micheal Cord One Liberty Place 1650 Market ST STE 3652, Phila Pa 19103-7301.

(d) At sentencing: Micheal Cord One Liberty Place 1650 Market ST STE 3652 Phila Pa 19103-7301.

(e) On appeal: ______

(f) In any post-conviction proceeding: Norris E. Gelman 2000 Market ST Suite 2940 Phila Pa 19103.

(g) On appeal from any ruling against you in a post-conviction proceeding: Norris E. Gelman 2000 Market ST Suite 2940 Phila Pa 19103.

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging? ☐ Yes ☒ No

(a) If so, give the name and location of the court that imposed the other sentence you will serve in the future: ______

(b) Give the date the other sentence was imposed: ______

(c) Give the length of the other sentence: ______

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future? ☐ Yes ☐ No

18. **TIMELINESS OF PETITION:** If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition*

On September 9, 2011 Petitioner waived his direct appeal rights. On July 20, 2012 Petitioner filed a PCRA.On August 19, 2015 The PA Supreme Court denied allowance of appeal.Petition is timely.

Case 2:15-cv-04965-PD Document 1 Filed 09/02/15 Page 16 of 37



* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court. The limitation period shall run from the latest of -

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: ______________

or any other relief to which petitioner may be entitled.

______________________
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on ______________________.
(month, date, year)

Executed (signed) on ______________________________ (date).

Dennis Johnson
Signature of Petitioner

If the person signing is not the petitioner, state the relationship to petitioner and explain why petitioner is not signing this petition. ____________________________________________
______________________________________________________________
______________________________________________________________
______________________________________________________________
______________________________________________________________

# EXHIBIT A

IN THE COURT OF COM MON PLEAS OF PHILADELPHIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :
:
V. : CP 51 CR 0007319 2009
:
DENNIS JOHNSON :

FILED
JUL 15 2014
Criminal Appeals Unit
First Judicial District of P

**OPINION**

DeFino-Nastasi, J.

**PROCEDURAL HISTORY**

On September 30, 2010, a jury convicted the Defendant of second degree murder, robbery and violating the Uniform Firearms Act (VUFA).

On November 2, 2010, the Defendant was sentenced to life in prison for his murder conviction and to concurrent terms of five (5) to ten (10) years' incarceration on the Robbery conviction and three and one-half (3½) to seven (7) years' incarceration for his VUFA conviction.

On November 11, 2010, the Defendant filed a post-sentence motion that was denied on February 4, 2011.[1]

On March 3, 2011, the Defendant filed a direct appeal to the Superior Court that was discontinued on September 9, 2011.

On July 20, 2012, the Defendant filed a PCRA petition that was formally dismissed on September 9, 2013.

On September 18, 2013, the Defendant filed the instant appeal.

On March 18, 2014, the Defendant filed a 1925(b) statement claiming that the PCRA court erred in dismissing his PCRA petition because:

[1] On November 5, 2010, the Defendant filed a direct appeal that was premature and withdrawn.

Case 2:15-cv-04965-PD Document 1 Filed 09/02/15 Page 19 of 37

1. Trial counsel was ineffective for failing to object to the trial court's charge which failed to define robbery, the felony on which the second degree murder conviction was predicated;
2. Trial counsel was ineffective for failing to object on confrontation grounds and hearsay grounds to Detective McDermott's testimony that Amin Vicks when reinterviewed informed detectives that the Defendant was the shooter;
3. Trial counsel was ineffective because he failed to object to the introduction of testimony from a medical examiner who did not perform the autopsy;
4. Trial counsel was ineffective for failing to request a Kloiber instruction on the identifications of Curtis Smith and Ozzie Clark.

**FACTS**

Curtis Smith testified that he has known the Defendant all his life. On August 27, 2007, he went with the Defendant and Amin Vicks to the 24 hour convenience store located at 30th Street and Lehigh Avenue in Philadelphia. The store owner conducted business only through a window on the side of the store. The front door to the store was kept locked. Ozzie Clark was working at the store. Curtis Smith approached the side window to purchase cigars used for smoking marijuana. He made his purchase, and then heard screaming and loud talking. He saw the Defendant with a small revolver in his hand pointed at the chest area of a male he did not know. The male, later identified as Kenyatta Smith, was standing in front of the Defendant. He heard the Defendant tell Kenyatta Smith to put everything from his pockets on the step. Kenyatta Smith took a pack of cigarettes, a knife, an ID and a cell phone out of his pocket and put the items on the steps leading up to the front door of the store. When Kenyatta Smith bent down toward his cell phone, the Defendant said to him, "didn't I tell you not to touch the phone".

The Defendant then grabbed the phone and shot at Kenyatta Smith. Kenyatta Smith, hereinafter referred to as the decedent, tried to run away from the Defendant, but collapsed. Later that same night, Curtis Smith met up with the Defendant and Vicks. He asked the Defendant why he shot the decedent. The Defendant left in his car without answering him. Curtis Smith did not call the police because he was afraid and did not want to be involved. (Notes of Testimony, Trial (Jury) September 28, 2010, pages 113 -141).

Curtis Smith was interviewed and gave a signed statement on January 15, 2009. In that statement he indicated that the Defendant robbed and killed the decedent. During that same interview, he identified and signed a photo of the Defendant from a photo array. He also identified a photo of Amin Vicks from a photo array. (NT, id, pages 150 – 154).

Police Officer Lewis Grandizio testified that he is assigned to the Firearms Identification Unit. He analyzed and prepared a report on a bullet that he received from the Medical Examiner's office recovered from the left side of the back of the decedent. He determined that the bullet was a .32 caliber and was consistent with being fired from a .32 revolver. (NT, id, pages 211 – 223).

Dr. Gary Collins testified that he is an assistant medical examiner for the Philadelphia Medical Examiner's Office. He reviewed a report, the findings and the photos of an autopsy performed by Dr. Gregory McDonald. Dr McDonald was no longer employed by the Medical Examiner's Office. Based upon his independent review, he opined that the decedent sustained a single penetrating gunshot wound to the right side of his chest under the armpit. A bullet was recovered from the left side of the decedent's back. No soot or stippling was found on the decedent's body or clothing indicating that the end of the firearm was more than two (2) feet away from the decedent's body. He opined that the cause of death was a gunshot wound to the

chest and that the manner of death was homicide. (Notes of Testimony, September 29, 2010, pages 16 – 32).

Ozzie Clark testified that he was the store clerk/cashier at the Lehigh Variety store at 30th Street and Lehigh Avenue on August 27, 2007. He knew the Defendant, the decedent, Curtis Smith and Amin Vicks from the neighborhood and because they were regular customers at the store. Right before the incident, he was outside playing video games, when the Defendant, Amin Vicks and Curtis Smith walked up to the store window. The decedent rode up to the store on a bicycle. He went back into the store. After he finished filling the decedent's order, someone ordered two sodas and he turned to look at the refrigerator where the sodas were stored. When he turned back, he saw the Defendant holding a chrome revolver handgun to the decedent's side and going through the decedent's pockets. The Defendant and decedent stepped away from each other and the Defendant pointed the gun at the decedent's torso. He heard the Defendant say to the decedent, "you want to get popped old head?" A shot rang out. Everyone started to run away. The decedent ran from the Defendant then collapsed between two parked cars. (NT, id, pages 33 – 62)

Clark called the police. When the police arrived on the scene he told them that somebody had been shot and needed to get to the hospital. He did not tell the police that he knew who shot the decedent because he had to work at the store and was afraid that he or his family could be shot. (NT, id, pages 68 – 73).

On February 19, 2009, Clark gave another statement to homicide detectives. At that time, he was no longer working at the store. In that statement he identified the Defendant as the shooter. (NT, id, pages 74 -75).

Detective Aaron Booker testified that he and his partner Detective Jack McDermott took over the investigation into the death of the decedent in 2008. During the course of the investigation, he was informed that Curtis Smith was incarcerated in Philadelphia County. He obtained a writ to have him brought down to the Homicide Unit for an interview about the shooting death of Kenyatta Smith that occurred on August 17, 2007 at 30th Street and Lehigh Avenue. During that interview, Curtis Smith identified a photo of the Defendant from a photo array as the person who robbed and shot the decedent. He also identified a photo of Amin Vicks from a photo array as being with the Defendant when the Defendant shot and killed the male at 30th Street and Lehigh Avenue on August 17, 2007. (NT, id, pages 153 – 166).

Detective John McDermott testified that he and Detective Booker took over the investigation into the murder of Kenyatta Smith from Detective Baker. Detective Baker had attempted to interview Amin Vicks, but he had been uncooperative. Based on this information, Amin Vicks was brought in for a second interview. During that second interview, Vicks told the homicide detectives, that at the time of the shooting, he was there along with Curtis Smith, Amin Vick and the Defendant who was the shooter. Based on this information, the detectives attempted to contact Curtis Smith and Ozzie Clark. On February 27, 2009, Detective McDermott obtained an arrest warrant for the Defendant. The Defendant was arrested on March 10, 2009. (NT, id, pages 174 – 185).

**ANALYSES**

As noted supra, the court held a hearing on July 9, 2013 after which the Defendant's PCRA petition was denied.

The PCRA court found that the Defendant's claims of ineffectiveness of counsel were without merit. (See Notes of Testimony, Hearing, Volume 1, July 9, 2013, pages 1-5).

Case 2:15-cv-04965-PD Document 1 Filed 09/02/15 Page 23 of 37

**CONCLUSION**

Based on the foregoing, the judgment of sentence should be affirmed.

By the Court:

Rose Marie DeFino-Nastasi

Rose Marie DeFino-Nastasi, J.

# First Judicial District of Pennsylvania

*51CR00073192009*
*Dennis Johnson*

*Hearing Volume 1*
*July 09, 2013*

**CRS**
**Court Reporting System**

*First Judicial District of Pennsylvania*
*100 South Broad Street, Second Floor*
*Philadelphia, PA 19110*
*(215) 683-8000 FAX:(215) 683-8005*

*Original File 7-9-13^DENNIS^JOHNSON.txt, 6 Pages*
*CRS Catalog ID: 13090516*

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

- - -

COMMONWEALTH : CP-51-CR-0007319-2009
:
:
vs. :
:
DENNIS JOHNSON :

- - -

Tuesday, July 9, 2013

- - -

Courtroom 1107 - Criminal Justice Center
Philadelphia, Pennsylvania

- - -

PCRA

- - -

BEFORE: THE HONORABLE ROSE MARIE DEFINO-NASTASI, J.

- - -

APPEARANCES:

CARI MAHLER, ESQ.
Assistant District Attorney
For the Commonwealth

NORRIS GELMAN, ESQ.
For the Defendant



Commonwealth vs. Johnson

THE COURT: This is a PCRA petition. It is here for decision.

The claims were that, one, Trial Counsel was ineffective for failing to object to the jury charge, failure to define robbery, second degree murder charge, the underlying felony, second degree murder.

The Court defined robbery. I actually instructed them that I was going to define robbery after I think second degree murder, so that it would be clear and it was defined. So that has no merit.

Trial Counsel was ineffective for failing to object to Detective McDermott's testimony. There is some testimony from Detective McDermott regarding an Amin Vicks who didn't testify at the trial and the detective was describing the course of the investigation during his testimony and in that, he states that they took a statement from Amin Vicks. The first



Commonwealth vs. Johnson

time he came in, he was uncooperative. He comes back a second time and he indicates another person that was present on the scene to show that is how they got to that person to interview him but there is the statement in there that the Defendant was the shooter. That should not have been allowed in.

However, there are two other eyewitnesses that identified the Defendant as the shooter. So it shouldn't have been in but there was no prejudice to the Defendant because it would have been harmless error and I will not say more about that because the statement -- even the way it is typed up doesn't make sense. I don't want to say anything more about it. I think it was typed incorrectly. I had problems with that Stenographer before. That Stenographer had written things that were incorrect, that I know were incorrect and when I read it, I thought I would never let that get in but I



Commonwealth vs. Johnson

don't know and the statement, itself, doesn't make sense and it says Amin Vicks was there or something like that. It just didn't make sense but anyway, we don't have to get into all of that but I felt compelled to say it for some reason. When I read the statement, I thought to myself I didn't think it came out this way, and let me just state for the record that it was not this Stenographer.

The third claim, Trial Counsel was ineffective for failing to object to testimony of the medical examiner who did not perform the autopsy but the medical examiner came to their own independent conclusion. So the Court finds that has no merit.

Trial Counsel was ineffective for failing not to request a Kloiber charge. The witnesses, when initially interviewed, did not identify the Defendant; however, they did at a later time and they indicated at court that

Case 2:15-cv-04965-PD Document 1 Filed 09/02/15 Page 26 of 37



Commonwealth vs. Johnson

the reason they didn't the first time was because they were afraid but the bigger issue is they knew him. They knew him for years. So there is no Kloiber issue in the case. So that has no merit and, finally, Trial Counsel's cumulative ineffectiveness. You can't cumulate meritless issues, so there could be no cumulative ineffectiveness here and I believe that's it.

Did I cover all of the issues?

**MR. GELMAN**: Yes.

**MS. MAHLER**: Yes.

**THE COURT**: So the PCRA is denied and I will give it thirty days for formal dismissal.

**MR. GELMAN**: You will send a 907 out?

**THE COURT**: 907 to be sent, yes.

**COURT CRIER**: 8/13, Your Honor.

\- - -

(Whereupon, the proceedings were



Commonwealth vs. Johnson

adjourned, at this time.)

\- - -

Court Reporting System (Generated 2014/10/31 18:10:24)

# EXHIBIT B

Case 2:15-cv-04965-PD Document 1 Filed 09/02/15 Page 28 of 37

**OMMONWEALTH OF PENNSYLVANIA, Appellee v. DENNIS B. JOHNSON, Appellant**
**SUPERIOR COURT OF PENNSYLVANIA**
**2015 Pa. Super. Unpub. LEXIS 271**
**No. 2706 EDA 2013**
**February 23, 2015, Decided**
**February 23, 2015, Filed**

**Notice:**

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

**Editorial Information: Prior History**

Appeal from the PCRA Order Entered September 9, 2013. In the Court of Common Pleas of Philadelphia County. Criminal Division at No(s): CP-51-CR-0007319-2009.
**Judges:** BEFORE: BENDER, P.J.E., LAZARUS, J., and FITZGERALD, J.*

**Opinion**

**Opinion by:** BENDER

**Opinion**

MEMORANDUM BY BENDER, P.J.E.:

Appellant, Dennis B. Johnson, appeals from the post-conviction court's September 9, 2013 order denying, without a hearing, his first petition for relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Appellant is currently serving a life sentence for his conviction of second degree murder, robbery, and a violation of the Uniform Firearms Act. Appellant raises four claims asserting the ineffective assistance of his trial counsel. After careful review, we affirm.

The following facts were adduced at Appellant's trial. On August 27, 2007, Appellant, Curtis Smith (Curtis), and Amin Vicks were at a convenience store located at 30th Street and Lehigh Avenue in Philadelphia, where Ozzie Clark (Clark) was working as the sole clerk. At the time Curtis arrived, the doors to the store were locked, and business was being conducted through a window on the side of the store.

Curtis identified Appellant in court, and testified that he knew Appellant all of his life. N.T., 9/28/10, at 112-14. While Curtis was at the window completing his purchase of cigars, he heard a commotion. Curtis turned to see Appellant "with a gun out[,]" and pointed at the chest of the victim, Kenyatta Smith (Kenyatta or "the victim"). ***Id.*** at 126, 136. Curtis also heard Appellant say to the victim, "Put everything on the steps or something like that." ***Id.*** at 128. He then observed Kenyatta place his personal effects, including a phone, on the steps. He also heard Appellant instruct the victim not to touch the items. When he observed what was going on, Curtis asked Appellant, "Yo, what [are] you doing, Dog?" ***Id.*** at 126. Soon thereafter, Curtis heard gunshots.1 ***Id.*** He immediately ran away, explaining that "When somebody is shooting a gun, I'm moving out of the way so I don't get hit." ***Id.*** at 160.

Clark also testified for the Commonwealth. He had worked at his parents' business, the convenience



© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

store located at 30th Street and Lehigh Avenue, since he was a child. Clark identified Appellant in court, indicating that he had known him for 5 or 6 six years at the time of the shooting. N.T., 9/29/10, at 41. Appellant would frequent the convenience store about once or twice a week as a customer. Clark knew Kenyatta as a frequent customer at the store as well, and further recalled that Kenyatta was a nighttime security guard at a local pool. Clark also indicated that he knew Amin Vicks and Curtis, as they were also regular customers.

Clark was working alone the evening of the shooting. He saw Curtis, Amin Vicks, and Appellant approach the store. Kenyatta arrived at nearly the same time on a bicycle. Kenyatta purchased a few items first. While he was taking an order for Amin Vicks or Curtis, Clark noticed Appellant holding Kenyatta at gunpoint with a chrome revolver, and rifling through the victim's pockets. Clark heard Appellant say something like, "you want to get popped, Oldhead?" ***Id***. at 54. Clark believed that Appellant said this when Kenyatta resisted giving up his phone. ***Id***. at 61. Immediately thereafter, Clark heard a gunshot ring out, and saw everyone run away, including Kenyatta, who only ran for a short time before collapsing. Clark indicated that he was only about eleven feet from where the shooting took place, and that he heard only one shot. Immediately after the shooting, Clark called the police and then tried to attend to Kenyatta, who was "[b]arely breathing." ***Id***. at 66.

Police Officer Lewis Grandizio, a firearms expert, testified that he analyzed the bullet taken from Kenyatta's body. It was consistent with being fired from a .32 caliber revolver. Dr. Gary Collins, an assistant medical examiner for the Philadelphia Medical Examiner's Office, reviewed the report of the autopsy that had been performed by Dr. Gregory McDonald.2 Dr. Collins concluded that Kenyatta died of a single gunshot wound to the right side of his chest under the armpit, and that the manner of death was homicide. The single bullet had penetrated the victim's liver, heart, and left lung.

On September 30, 2009, Appellant was convicted by a jury of the above-listed offenses. On November 2, 2010, the trial court sentenced Appellant to life imprisonment for second degree murder, and concurrent terms of 5-10 years' and 3 1/2-7 years' imprisonment for robbery and the firearms violation, respectively. Appellant filed a direct appeal, but that appeal was ultimately discontinued on September 9, 2009, before a brief was filed with this Court.

Appellant filed a counseled PCRA petition, his first, on July 20, 2012.3 The Commonwealth filed a motion to dismiss on February 2, 2013. Appellant filed a response to the Commonwealth's motion to dismiss on March 5, 2013. Subsequently, on July 9, 2013, the PCRA court issued notice of its intent to dismiss Appellant's PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907. Appellant's petition was susequently dismissed by the court by order dated September 9, 2013.

Appellant filed a timely notice of appeal to this Court from that order on October 4, 2013. He also filed a timely Pa.R.A.P. 1925(b) statement with the PCRA court, which then filed its Rule 1925(a) opinion on July 15, 2014. Appellant now presents the following questions for our review:

> I. Was trial counsel ineffective because he failed to object to the charge of the court which failed to define robbery and its intent elements, robbery being the statutorily enumerated felony on which Appellant's second degree murder conviction was predicated?II. Was trial counsel ineffective because he failed to object on confrontation clause grounds and on hearsay grounds to detective McDermott's testimony that Amin Vicks, who did not testify, when reinterviewed informed detectives "that Curtis Smith was there, Dennis Johnson [Appellant] was the shooter..."?III. Was trial counsel ineffective because he failed to object to the introduction of testimony from a medical examiner who did not perform the autopsy and who was substituting for the medical examiner who did perform the autopsy?IV. Was trial counsel ineffective because he failed to ask for a cautionary ***Kloiber***4 instruction because the Commonwealth's case rested entirely on the identifications [of Appellant] made by Curtis Smith and Ozzie Clark, when each of them had not



© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Case 2:15-cv-04965-PD Document 1 Filed 09/02/15 Page 30 of 37

identified Appellant to the police when interviewed after the crime and at other times?Appellant's Brief at 5 (unnecessary capitalization omitted).

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review [is] plenary.***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012) (internal citations omitted).

Appellant presents four ineffective assistance of counsel (IAC) claims. In reviewing such claims:

We begin with the presumption that counsel rendered effective assistance. To obtain relief on a claim of ineffective assistance of counsel, a petitioner must rebut that presumption and demonstrate that counsel's performance was deficient, and that such performance prejudiced him. ***Strickland v. Washington***, 466 U.S. 668, 687-91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In our Commonwealth, we have rearticulated the Strickland Court's performance and prejudice inquiry as a three-prong test. Specifically, a petitioner must show: (1) the underlying claim is of arguable merit; (2) no reasonable basis existed for counsel's action or inaction; and (3) counsel's error caused prejudice such that there is a reasonable probability that the result of the proceeding would have been different absent such error. ***Commonwealth v. Pierce***, 515 Pa. 153, 158-59, 527 A.2d 973, 975 (1987).***Commonwealth v. Dennis***, 17 A.3d 297, 301 (Pa. 2011) (some internal citations omitted).

**I.**

Appellant's first claim concerns the trial court's jury instructions regarding the definition of robbery, the predicate offense for Appellant's second degree murder conviction.5 "For a verdict to be founded on second degree murder, the jury must be instructed as to the elements of the alleged felonies." ***Commonwealth v. May***, 656 A.2d 1335, 1343 (Pa. 1995). Here, Appellant asserts that the trial court failed to instruct the jury on the elements of robbery, and that trial counsel was ineffective for failing to object to the jury instructions on that basis. He contends that he was prejudiced by this error because the jury might have convicted him under an incorrect definition of robbery, which would also undermine Appellant's conviction for second degree murder. ***Id***. Specifically, Appellant contends that the "trial court never defined robbery in terms of the element of intent and never required the jury to find, beyond a reasonable doubt, Appellant harbored an intent to rob." Appellant's Brief at 12.

In considering the underlying merits of this IAC claim, we consider the following standards:

When reviewing a challenge to jury instructions, the reviewing court must consider the charge as a whole to determine if the charge was inadequate, erroneous, or prejudicial. "The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." ***Commonwealth v. Prosdocimo***, 525 Pa. 147, 578 A.2d 1273, 1274 (1990). A new trial is required on account of an erroneous jury instruction only if the instruction under review contained fundamental error, misled, or confused the jury.***Commonwealth v. Fletcher***, 986 A.2d 759, 792 (Pa. 2009) (some internal citations omitted).

In the instant case, the trial court instructed the jury, in pertinent part, as follows:



© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Case 2:15-cv-04965-PD Document 1 Filed 09/02/15 Page 31 of 37

The Defendant has been charged with robbery. To find the Defendant guilty of this offense[,] you must find that the following two elements have been proven beyond a reasonable doubt: that the Defendant killed Kenyatta Smith. Second, that the defendant did this during the course of a theft.During the course of committing means that you could find the Defendant guilty if you find beyond a reasonable doubt that he did these things either - and that refers to the killing. Either while - I'm sorry. That he did these things either while actually committing a theft, attempting to commit a theft, or while fleeing after either committing or attempting to commit a theft.A theft[,] of course[,] means taking unlawful control of or exercising unlawful control over someone else's property and intending not to give it back. The Defendant is charged with second degree murder. I will start [with] some terminology and basic principles. The more serious types of crimes are called felonies. For example, robbery is a felony.Second degree murder is called felony murder because it's a killing connected with a felony. The felon need [] not intend to kill anyone or anticipate that anyone be killed.The Defendant has been charged with second degree murder, that is[,] felony murder. To find the Defendant guilty of this offense[,] you must find that the following three elements have been proven beyond a reasonable doubt:First, that the Defendant killed Kenyatta Smith. Second, that the Defendant did so while committing a robbery. Third, that the Defendant was acting with malice.You may find that the Defendant acted with malice if you are satisfied beyond a reasonable doubt that he committed the robbery. Because robbery is a crime inherently dangerous to human life[,] there does not have to be any other proof of malice. And[,] I have already defined robbery for you.N.T., 9/30/10, at 103-05.

Appellant contends that the court failed to instruct the jury that it was required to find, beyond a reasonable doubt, that Appellant *intended to rob* the victim to sustain a conviction for robbery. We disagree. No such intent element is required by the statute defining the offense. Section 3701 of the Crimes Code defines robbery as follows:

***(a) Offense defined.--***

(1) A person is guilty of robbery if, in the course of committing a theft, he:

(i) inflicts serious bodily injury upon another; 18 Pa.C.S. § 3701(a).

The trial court's instructions mirror the statutory definition of robbery with a single caveat: the trial court replaced the infliction-of-serious-bodily-injury element with "the Defendant killed Kenyatta Smith." N.T., 9/30/10, at 103. Clearly, however, a conclusion that Appellant killed the victim would satisfy the infliction-of-serious-bodily-injury element of robbery. Indeed, the trial court's instruction narrowed the range of conduct for which Appellant was culpable for robbery and, thus, he suffered no prejudice as a result of the court's modification in this regard.

The court did not directly define the *mens rea*, or intent element, of robbery. Notably, no such element appears in the statute. Instead, the court instructed the jury that a robbery occurs when a killing occurs during the course of a theft. The court then defined theft as "taking unlawful control of or exercising unlawful control over someone else's property and *intending not to give it back*." ***Id***. at 104 (emphasis added). Thus, the court included an intent element in its definition of robbery by incorporating the 'intent to steal' element of theft. Consequently, Appellant's contention that the trial court failed to define the intent element of robbery *at all* is meritless. The trial court's instructions required, at a minimum, that the jury find that Appellant *intended* to keep the items stolen during the course of the robbery.

Appellant argues, however, that this invited the jury to convict Appellant of second degree murder if the Appellant killed the victim during the course of a theft rather than during a robbery. Theft is not an offense enumerated in 18 Pa.C.S. § 2502(d) and, therefore, Appellant is correct that a conviction for theft cannot sustain a conviction for second degree murder. Moreover, it is true that our Supreme



© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Case 2:15-cv-04965-PD Document 1 Filed 09/02/15 Page 32 of 37

Court has previously held that robbery consists of two elements: "(1) The *felonious intent to take money or goods from the person*, presence or control of another; and, (2) the accomplishment of that end by violence or putting in fear." ***Commonwealth v. Simpson***, 260 A.2d 751, 754 (Pa. 1970) (emphasis added). Appellant contends that "the intent to rob is markedly different from the intent to commit a theft." Appellant's Brief at 12.

However, we view the difference between "intending not to give it back" and "felonious intent to take money or goods from the person" to be, at best, illusory. The ***Simpson*** Court's definition predates the substantial adoption of the Model Penal Code as our Crimes Code, which did not occur until 1973. Indeed, "felonious intent" is not used to describe any offenses defined by our Crimes Code. ***See generally*** 18 Pa.C.S. § 302 (General requirements of culpability). Thus, the ***Simpson*** Court's definition of the intent element of robbery was superseded by the adoption of the Crimes Code in 1973. Moreover, we see no reason why, under the current Crimes Code, the specific intent to steal, when accompanied by the use of force or the threat of the use of force, would not be sufficient to demonstrate the *mens rea* element of robbery under the current statute governing that offense. The difference between the offense of robbery and theft is not, or is no longer, a difference of intent. It is a difference in the manner in which the intended act is accomplished.

Appellant does draw our attention to ***Commonwealth v. Prosdocimo***, 578 A.2d 1273 (Pa. 1990), a case that occurred after the adoption of the Crimes Code. Appellant concedes that ***Prosdocimo*** is adverse to his position, but claims that his case is distinguishable. We agree that ***Prosdocimo*** is adverse to Appellant's position, but we disagree that his case is distinguishable.

In ***Prosdocimo***, our Supreme Court reversed the decision of this Court granting Prosdocimo a new trial because of a "confusing and incorrect jury instructions on felony-murder and robbery...." ***Id***. at 1274. As our Supreme Court explained:

> The crux of the Superior Court holding is that the trial judge's instructions interchanged the legal definitions of robbery and theft in such a way as to confuse the jury and permit the jury to convict Prosdocimo of felony-murder if he participated in a theft, whereas the law requires that felony-murder be predicated on one of several enumerated felonies, including robbery but excluding theft. The Commonwealth, as appellant, challenges this holding, claiming instead that the jury instructions were not incorrect or misleading, and that they were no more complicated than necessary in view of the complexity of the law of felony-murder.***Id***.

Appellant adopts a similar argument to the one addressed in ***Prosdocimo*** - that the jury may have been permitted to convict Appellant of second degree murder due to his participation in a theft. However, our Supreme Court criticized the Superior Court's decision in ***Prosdocimo*** for failing to "examine the charge in its entirety." ***Id***. at 1276. Our Supreme Court noted that "[t]he trial court instructed the jury four times during its charge that the underlying felony was robbery and nowhere stated that the homicide might be felony-murder if it occurred during a theft rather than a robbery." ***Id***.

We have the same concern here. Appellant's evaluation of the trial court's jury charge is hypercritical. Although the trial court's charge could have been clearer, the court never instructed the jury that it could find Appellant guilty of second degree murder based upon the commission of a theft, rather than a robbery. To the contrary, the trial court specifically instructed the jury that it must find that Appellant committed a robbery to convict him of second degree murder. Moreover, because we are not convinced that the court was required to instruct the jury that Appellant "intended to rob" rather than "intended to steal," we conclude that Appellant's claim lacks arguable merit.

Nevertheless, even if there were arguable merit to Appellant's claim, Appellant cannot possibly demonstrate that he was prejudiced by counsel's failure to object to the jury charge under the facts of



© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Case 2:15-cv-04965-PD Document 1 Filed 09/02/15 Page 33 of 37

this case. Had the trial court explicitly instructed the jury that it was required to find that Appellant intended to rob the victim, we have no doubt that the jury would have reached the same result. Two eyewitnesses testified that Appellant demanded that the victim turn over his personal property at gunpoint, that Appellant specifically threatened to shoot the victim if he did not comply with that demand, and that Appellant did, in fact, shoot the victim during the encounter. It is simply not plausible that the jury's decision would have turned on the question of whether Appellant intended to rob the victim versus whether he merely intended to steal from him. The facts adduced at Appellant's trial demonstrate overwhelmingly that Appellant intended to commit a robbery. Accordingly, we also conclude that Appellant could not have been prejudiced by trial counsel's failure to object.

**II.**

Appellant also claims that trial counsel ineffectively failed to object on confrontation and/or hearsay grounds to a Commonwealth witness's testimony regarding a statement made by Amin Vicks' identifying Appellant as the shooter, where Amin Vicks did not testify at Appellant's trial. We agree with the PCRA court that this statement should not have been admitted, as it was inadmissible on both hearsay and confrontation clause grounds. However, we also agree with the PCRA court that Appellant cannot demonstrate prejudice because there is no reasonable probability that the outcome of his trial would have been different had this statement been excluded.

The PCRA court determined that Amin Vick's statement was merely cumulative of the testimony of eyewitnesses Curtis Smith and Ozzie Clark and, as such, Appellant could not demonstrate outcome-determinative prejudice. As our Supreme Court noted in ***Commonwealth v. Chmiel***, 889 A.2d 501, 521 (Pa. 2005), harmless error exists where "the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence[.]" ***Id***. at 521 (citing ***Commonwealth v. Robinson***, 721 A.2d 344, 350 (Pa. 1998)). Here, the erroneously admitted statement, which was not itself an extensive or detailed statement regarding the shooting, was merely cumulative of the eyewitness accounts of Curtis Smith and Ozzie Clark, both of whom testified at length at Appellant's trial to the same information: that Appellant shot the victim, Kenyatta Smith. Thus, Appellant could not have been significantly prejudiced by trial counsel's failure to object.6

**III.**

Next, Appellant asserts that trial counsel was ineffective for failing to object to Dr. Collins' testimony because Dr. Collins did not perform the autopsy on the victim, nor did he write the autopsy report referenced in his testimony. Appellant contends this testimony violated his confrontation clause rights under ***Crawford v. Washington***, 541 U.S. 36 (2004). Appellant argues that Dr. Collins provided the Commonwealth's only evidence regarding the victim's cause of death. Furthermore, Appellant asserts that the medical examiner who did performed the autopsy, Dr. Gregory McDonald, was not unavailable to testify merely because he had left the medical examiner's office to take a faculty position at the Philadelphia College of Osteopathic Medicine. The PCRA court rejected this IAC claim because it found that Dr. Collins had come "to [his] own independent conclusion" with regard to the victim's cause of death. N.T., 7/9/13, at 4.

In ***Commonwealth v. McCloud***, 322 A.2d 653 (Pa. 1974), the trial court permitted the Commonwealth to admit "substantial portions of the written report of the official, salaried medical examiner who performed an autopsy on the deceased," where "[t]he medical examiner was not called to testify [because,] at the time of trial[,] he was attending a convention." ***Id***. at 654. Although it recognized the evidence as hearsay, the trial court allowed the autopsy report to be admitted under the business records exception to the hearsay rule. Our Supreme Court ultimately granted McCloud a new trial because "the Commonwealth could have produced the maker of the autopsy report, but did



© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Case 2:15-cv-04965-PD Document 1 Filed 09/02/15 Page 34 of 37

not. Its failure to do so clearly was error of constitutional dimension." ***Id***. at 657.

However, in ***Commonwealth v. Mitchell***, 570 A.2d 532 (Pa. Super. 1990), this Court reached a different result. In that case, a medical examiner, Dr. Robert Catherman, testified "as to the manner and cause of the victim's death." ***Id***. at 534. However, Dr. Catherman's testimony "was based on autopsy reports prepared by Dr. Kenneth Carpenter, who was unavailable for trial because he had moved to Germany." ***Id***. Yet, the ***Mitchell*** Court rejected the appellant's confrontation clause claim on the following grounds:

> Experts may offer testimony based on the reports of others. ***Commonwealth v. Thomas***, 444 Pa. 436, 443, 282 A.2d 693, 698 (1971). In homicide cases, pathologists may base their opinions on facts from autopsy reports prepared by others. ***Commonwealth v. Smith***, 480 Pa. 524, 391 A.2d 1009 (1978). The present case is distinguishable from ***Commonwealth v. McCloud***, 457 Pa. 310, 322 A.2d 653 (1974), cited by appellant. In ***McCloud***, the Commonwealth read substantial portions of the autopsy report, including opinions and conclusions, into the record. The Commonwealth relied on the business records exception to the hearsay rule. In the present case, Dr. Catherman did not read any of Dr. Carpenter's opinions or conclusions. He read only the facts contained in the report,2 and based his own opinion on those facts. Furthermore, in ***McCloud***, the medical examiner who prepared the report was away temporarily attending a convention. The court emphasized the fact that the Commonwealth could have produced him. In the present case, the person who prepared the report moved out of the country, and was not available to testify.
>
> 2 The facts upon which Dr. Catherman based his report were merely Dr. Carpenter's observations of the nature and location of various injuries and results of various tests. Dr. Catherman drew his own conclusions as to the cause of these facts.***Mitchell***, 570 A.2d at 534.

The facts of the instant case fall between those present in ***McCloud*** and ***Mitchell***. However, after careful consideration, we conclude that the operative facts in this case are more analogous to those present in ***Mitchell***. Here, Dr. Collins utilized the facts presented by the autopsy report prepared by Dr. McDonald, but arrived at his own opinion regarding the manner of death. N.T., 9/29/10, at 32. Thus, the jury was presented with an expert witness who came to his own conclusions based upon the facts presented in the autopsy report, and Appellant has not demonstrated that Dr. Collins relied on opinions contained in the report. There is little or no evidence of record regarding why Dr. McDonald was unavailable, particularly since there was testimony that Dr. McDonald was teaching at a school in Philadelphia. While this latter fact is concerning to us, we do not find it dispositive in this case. Thus, we conclude that Appellant's claim lacks merit.

In any event, we also conclude that Appellant cannot demonstrate that he was prejudiced by trial counsel's failure to object to Dr. Collins' testimony, even if that testimony should have been excluded. In this case, there is no serious dispute regarding the manner of the victim's death, nor, for that matter, that the victim did, in fact, die. Appellant has not proffered any evidence or, indeed, any theory, regarding why there would be any serious doubt regarding the fact that the victim was dead, and/or that he died from a gunshot wound.7 Indeed, Kenyatta Smith died at the scene of the shooting, which had been witnessed by both Curtis Smith and Ozzie Clark, as detailed above. Furthermore, Police Officer Lisa Conroy testified that when she arrived at the scene of the crime, in response to a radio call that was received at 3:19 a.m., medics were already transporting the victim to Temple Hospital. N.T., 9/28/10, at 85-87. Officer Conroy immediately went to the hospital to check on the status of the victim. ***Id***. at 85. When she arrived, she discovered that the victim had been declared dead at 4:04 a.m. ***Id***. at 85-86. Moreover, Officer Conroy was able to identify the victim by the contents of his wallet. ***Id***. at 88.

Given these circumstances, this is not a case where expert medical testimony was necessary to prove



© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Case 2:15-cv-04965-PD Document 1 Filed 09/02/15 Page 35 of 37

the manner of death. Indeed, our Supreme Court has held, as a general proposition, that "medical testimony is not required to prove the cause of death." ***Commonwealth v. Gilman***, 401 A.2d 335, 339 (Pa. 1979) (citing ***Commonwealth v. Ilgenfritz***, 353 A.2d 387 (Pa. 1976)). In ***Gilman***, the High Court determined that a witness's "testimony that appellant beat decedent with a blunt instrument and the subsequent discovery of decedent's body are evidence of the cause of death." ***Id***. Similarly, in ***Ilgenfritz***, our Supreme Court stated that "[w]hile it is true, of course, that the Commonwealth must prove causation, like every element of a crime, beyond a reasonable doubt, it does not follow that only medical testimony can prove causation." ***Ilgenfritz***, 353 A.2d at 390.

There is some authority to the contrary. ***See Commonwealth v. Baker***, 445 A.2d 544 (Pa. Super. 1982) (holding lay coroner's opinion insufficient to prove causation of death in the absence of an autopsy where the victim had died following a collision with the intoxicated defendant's vehicle); however, two factors lead us to reject ***Baker*** as controlling authority in this instance. First, the instant case is factually distinguishable from ***Baker*** because there were eyewitnesses to the shooting of the victim, whereas no comparable testimony existed in ***Baker***. Second, the ***Baker*** holding, a decision of the Superior Court, did not distinguish itself from our Supreme Court's rulings in ***Gilman*** and ***Ilgenfritz***, nor even recognize those decisions as contrary authorities, on the question of whether expert medical testimony was necessary to prove the manner of death.

Here, there was ample circumstantial evidence for the jury to have determined, even without the testimony of Dr. Collins, that Kenyatta Smith died, and that the manner of his death was homicide by gunshot. The facts of this case regarding the manner and cause of death are not beyond the comprehension of a lay juror. Consequently, we conclude that Appellant cannot demonstrate that there is a reasonable probability that the result of his trial would have been different had trial counsel successfully convinced the trial court to exclude the testimony of Dr. Collins. As such, Appellant's third IAC claim lacks merit.

**IV**.

Finally, Appellant claims that trial counsel was ineffective for failing to ask for a ***Kloiber*** jury instruction, because the in-court identifications provided by Curtis Smith and Ozzie Clark were suspect. Both witnesses had failed to identify Appellant until long after the shooting occurred. Recently, our Supreme Court addressed the applicability of ***Kloiber*** charges as follows:

> A ***Kloiber*** charge is appropriate where there are special identification concerns: a witness did not have the opportunity to clearly view the defendant, equivocated in his identification of a defendant, or had difficulty making an identification in the past. ***Commonwealth v. Rollins***, 558 Pa. 532, 738 A.2d 435, 448 n. 14 (1999); ***Commonwealth v. Gibson***, 547 Pa. 71, 688 A.2d 1152, 1163 (1997). However, "[w]hen the witness already knows the defendant, this prior familiarity creates an independent basis for the witness's in-court identification of the defendant and weakens ineffectiveness claims based on counsel failure to seek a ***Kloiber*** instruction." ***Commonwealth v. Ali***, 608 Pa. 71, 10 A.3d 282, 303 (2010) (citations omitted).***Commonwealth v. Reid***, 99 A.3d 427, 448 (Pa. 2014).

Here, both Curtis Smith and Ozzie Clark testified that they had known Appellant for many years. The also both testified that the only reason that they did not come forward sooner to identify Appellant as the shooter was because both feared reprisals for cooperating with police, not because of any difficulty in their ability to observe or identify Appellant at the time of the shooting. Accordingly, there was no basis for a ***Kloiber*** charge to be issued to the jury, and counsel could not have provided IAC for failing to request it.

Having found no merit to any of Appellant's IAC claims, we affirm the order of the PCRA court denying



© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Case 2:15-cv-04965-PD Document 1 Filed 09/02/15 Page 36 of 37

Appellant's PCRA petition.

Order ***affirmed***.

Judge Lazarus joins the memorandum.

Justice Fitzgerald concurs in the result.

Judgment Entered.

Date: 2/23/2015

**Footnotes**

*

1

There does not appear to be any dispute that Curtis also testified that he saw Appellant shoot the victim. However, the relevant portion of the transcript in which this testimony occurred is missing from the certified record. Nevertheless, during cross-examination, Appellant's counsel clearly alludes to this testimony, asking Curtis, "But then you testified that you saw it. My question is, how could you see it if ... you were around the corner hearing it?" N.T., 9/28/10, at 161-62. Curtis explained that he was standing at the corner of the store, that his view was not obstructed by the building, and that he had no difficulty observing the shooting and the events that immediately preceded it. ***Id***. at 163-64.

2

Dr. McDonald was no longer employed with the Philadelphia Medical Examiner's Office at the time of Appellant's trial.

3

This petition was titled "Amended [PCRA] Petition," however, the lower court docket does not indicate that any prior PCRA petition was filed by Appellant.

4

***Commonwealth v. Kloiber***, 106 A.2d 820, 826-27 (Pa. 1954) (holding that "where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution").

5

"A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S. § 2502(b). The statute further explains the phrase "perpetration of a felony" as follows: "The act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit *robbery*, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping." 18 Pa.C.S. § 2502(d) (emphasis added).

6

Appellant argues that "the Amin Vick identification was the strongest one presented by the Commonwealth" because it was the only unimpeached identification of Appellant as the shooter. Appellant's Brief at 25. Appellant does not cite to any portion of the record where this statement was repeated, nor has he identified where in the record the Commonwealth relied upon this statement.



© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Case 2:15-cv-04965-PD Document 1 Filed 09/02/15 Page 37 of 37

Indeed, our review of the Commonwealth's closing argument reveals that Amin Vick was only mentioned once, in passing, and that the statement in question was never referenced. Accordingly, Appellant's characterization that the Amin Vick's statement was the strongest evidence against Appellant is simply belied by the record.

7

Of course, Appellant did not have a burden of offering such evidence or theories during his trial. However, it is his burden on appeal, and particularly in an appeal from a collateral proceeding, to prove that the underlying error and ineffectiveness of counsel resulted in outcome-determinative prejudice.



© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.