# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DENNIS JOHNSON,** | : | **CIVIL ACTION** |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SCOTT NICKELSON,** *et al.,* | : | **NO. 15-4965** |
| **Respondents.** | : | |

## RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Dennis Johnson is a Pennsylvania state prisoner currently serving a sentence of life imprisonment for second-degree murder, robbery, and related charges. Before this Court are his *pro se* petition for writ of habeas corpus, ECF No. 1, his counseled amended petitions for writ of habeas corpus, ECF Nos. 11 and 12, his second counseled amendment and supplement to petition for writ of habeas corpus, ECF No. 56, and his third counseled motion to amend and correct his habeas filings with a supporting memorandum of law, ECF Nos. 68, 80. Across these filings, he raises a total of eleven claims. After careful review of the record, Respondents conclude that Johnson is entitled to habeas relief on one of his claims. Claim IV alleges ineffective assistance of trial counsel for failing to object to the testimony of the lead police detective that a witness told him that the murder was committed by Johnson. ECF No. 80 at 43–44. The state court correctly concluded that the

testimony was inadmissible because it violated the Confrontation Clause and hearsay rules. *Commonwealth v. Johnson*, No. 2706 EDA 2013, 2015 WL 6169417 at \*14 (Pa. Super. Ct. Feb. 23, 2015). But the state court's decision that Johnson was not prejudiced by counsel's failure to object to the admission of the testimony was an unreasonable application of clearly established federal law as set forth in *Strickland v. Washington*, 466 U.S. 668, 695 (1984). 28 U.S.C. § 2254(d)(1). The Commonwealth is constrained to conclude that Johnson's claim of ineffective assistance of trial counsel has merit, and he is entitled to habeas relief.[1]

## I.      FACTUAL AND PROCEDURAL HISTORY

### A.  Facts presented at trial

The Lehigh Variety convenience store operated out of a small service window at the corner of 30th Street and Lehigh Avenue in Philadelphia. N.T. 9/29/10 at 47, 54. Ozzie Clark, Jr.'s family had owned Lehigh Variety for over a decade, and he worked there as a store clerk during the overnight

---

[1] In the interests of judicial economy, Respondents only address Johnson's Claim IV. Johnson is entitled to complete relief on this claim, and the disposition of this claim will moot the remainder of his claims. Should the Court wish to hear from Respondents regarding Johnson's remaining claims, Respondents respectfully request the opportunity to supplement this response.

hours in the summer of 2007. *Id.* at 33–40. Clark installed a video game on the 30th Street sidewalk at that time.

In the early morning hours of August 17, 2007, several people gathered to play the video game, including Johnson, Curtis Smith, Amin Vicks, and Clark. N.T. 9/28/10 at 133; N.T. 9/29/10 at 50; N.T. 6/3/09 at 6–9. While the men were playing the game, Kenyatta Smith—the victim—ordered soda and chips from Lehigh Variety's service window.[2] N.T. 9/29/10 at 51–53. While Clark served Kenyatta Smith, another man—the perpetrator—approached the window to order two sodas. *Id.* at 54.

When Clark's back was turned to get the soda, the perpetrator pulled a gun on Kenyatta Smith. *Id.* From behind the store window, Clark saw the perpetrator holding Kenyatta Smith at gunpoint with one hand while probing Kenyatta Smith's pockets with his other hand. *Id.* at 56. When Kenyatta Smith balked at relinquishing his cell phone, the perpetrator aimed his gun at Kenyatta Smith's chest and fired once. Everyone, including the shooter, fled the scene. *Id.* at 55–66. Kenyatta Smith was pronounced dead at 4:04 a.m. after being transported to a nearby hospital. N.T. 9/28/10 at 108. A later autopsy found that the cause of death was a

---

[2] Curtis Smith and Kenyatta Smith were not related. Their first and last names are used here to avoid confusion.

single gunshot to Kenyatta Smith's abdomen from a .32 caliber weapon. N.T. 9/28/10 at 219–20.

### a. Testimony of store clerk Ozzie Clark, Jr.

Clark was the only witness to testify at Johnson's preliminary hearing almost two years after the crime. He identified Johnson as the shooter even though he could not see the shooter's face. Clark testified that he was able to identify Johnson by his "body" and "talk, speech." N.T. 6/3/09 at 24, 27, 31. His identification was "not visual." *Id.* at 24. Clark conceded that he was not sure Johnson was the shooter "beyond a reasonable doubt" because the shooter was wearing a hat when the murder occurred. *Id.* at 38.

In September 2010, over three years after the crime, Clark testified at Johnson's jury trial before Judge Rose Marie DeFino-Nastasi in the Philadelphia Court of Common Pleas. The prosecutor was MK Feeney, and defense counsel was Michael Coard. Clark said that, within minutes of the victim Kenyatta Smith's arrival at Lehigh Variety, Johnson pointed a revolver at his side and stuck his hands in Kenyatta Smith's pockets. N.T. 9/29/10 at 52, 55–56. Johnson asked Kenyatta Smith if he wanted "to get popped" when Kenyatta Smith resisted giving up his cell phone. N.T. 9/29/10 at 57. According to Clark, Johnson fired at Kenyatta Smith from

4

eleven feet away as Kenyatta Smith tried to run. *Id.* at 66, 111–12. Clark saw

Johnson and Curtis Smith fleeing in the same direction. *Id.*

Clark testified that, despite his previous reluctance to identify Johnson,

he finally did so out of a sense of "civi[c] duty." N.T. 6/3/09 at 33, 36; N.T.

9/29/10 at 139.

### b. Testimony of eyewitness Curtis Smith

During their investigation, law enforcement came to believe that Curtis

Smith was a potential suspect in Kenyatta Smith's murder. They were

unable to locate him for nearly two years. Curtis Smith was finally

interviewed by Detective John McDermott in January 2009 because he was

being held at Curran Fromhold Correctional Facility on a parole violation.

N.T. 9/28/10 at 143–49. Curtis Smith testified that the detectives gave him

*Miranda* warnings and told him they thought he was involved in Kenyatta's

murder. *Id.* at 156; N.T. 9/29/10 at 160–64, 168, 173. Curtis Smith only agreed

to talk to the police about Kenyatta Smith's murder after he was

incarcerated for a parole violation and new drug charges. N.T. 9/28/10 at

147–49. His probation agent pressured him to cooperate because it may

have helped make a deal in the face of substantial prison time. *Id.*

Curtis Smith testified that he was at Lehigh Variety with Johnson and

Vicks at the time Kenyatta Smith was murdered. N.T. 9/28/10 at 122. Curtis

Smith approached the Lehigh Variety service window to purchase cigars about twenty-five minutes after Kenyatta Smith arrived. *Id.* He testified that he heard a commotion and turned around to see Johnson robbing Kenyatta Smith at gunpoint. *Id.* at 125–29. Curtis Smith said that Johnson and Kenyatta Smith were two to three feet apart. *Id.* at 132, 197–98. Once he heard shots, Curtis Smith ran away alone. *Id.* at 165, 168, 207.

### c. Testimony of Detective John McDermott

Detective McDermott was assigned to investigate Kenyatta Smith's murder after it was transferred to the Philadelphia Police Department's Special Investigations Unit. He testified that, before he took over the case, law enforcement tried to interview Amin Vicks early in the investigation, but he was "uncooperative." *Id.* Detective McDermott also testified that he reviewed statements that were taken from witnesses to Kenyatta Smith's murder. N.T. 9/29/10 at 175.

Then, in the exchange that is the focus of the current proceeding, Detective McDermott testified that eyewitness Vicks—who did not testify—told him that Johnson was the shooter:

> Q: Did you read any statements that you had taken before you got the witnesses?
>
> A: That's correct, I read everything.

Q: At that time do you recall what, if any, statements you [had] from any witnesses?

A: We had a statement from Ozzie Clark, the male who was working in the store.

Q: And there was no identification from that statement; is that correct?

A: That's correct. He identified the arm of Amin Vicks, he had Certified Gangster tattooed on his arm.

Q: And based on that you indicated that Amin Vicks was brought in?

A: That's correct.

Q: And what do you do with the investigation; what do you do with it?

A: At one point we reinterviewed Amin who gave us information that Curtis Smith was there, Dennis Johnson was the shooter, and this Amin Vick[s] was also there.

*Id.* at 175–76. Johnson's trial counsel did not object to this testimony.

### B. Conviction and Post-Trial Proceedings

The jury found Johnson guilty of second-degree murder, robbery, and possessing a firearm without a license. N.T. 9/30/10 at 113. He was sentenced to life without parole for second-degree murder with concurrent terms of five to ten years for robbery and three to six years for the firearm conviction.

Johnson's direct appeal was unsuccessful. No. CP-51-CR-6731-2009. The trial court denied his petition for post-conviction relief. N.T. 7/9/13 at 3. The Superior Court affirmed the denial of Johnson's PCRA petition. *Johnson*, 2015 WL 6169417 at *14.

As discussed in detail below, Respondents agree that Johnson is entitled to habeas relief on Claim IV because his trial counsel was ineffective for failing to object to Detective McDermott's testimony that a non-testifying witness identified Johnson as the shooter.

## II.  DISCUSSION

**A. Johnson is entitled to relief on his claim that his trial counsel was ineffective for failing to object to the admission of Detective McDermott's testimony.**

In Claim IV, Johnson argues that his trial counsel was constitutionally ineffective for failing to object on Confrontation Clause and hearsay grounds to Detective McDermott's testimony that an eyewitness told him that Johnson was the shooter. After careful review, the Commonwealth concludes that trial counsel's ineffectiveness warrants habeas relief. Trial counsel's failure to object was deficient because no reasonable strategy could have supported allowing the jury to hear inadmissible testimony evidence from a law enforcement officer that an eyewitness identified Johnson as the murderer. And Johnson suffered prejudice as a result of trial

8

counsel's mistake, because the prosecution's other evidence of Johnson's guilt suffered from serious flaws. By ignoring those flaws, the state court's ruling that Johnson did not suffer prejudice was an unreasonable application of Supreme Court law. *See Tyson v. Superintendent Houtzdale SCI*, 976 F.3d 382, 397 (3d Cir. 2020), *cert. denied sub nom Smith v. Tyson*, 141 S. Ct. 1737 (2021); *Saranchak v. Sec'y, Pa. Dept. of Corrs.*, 802 F.3d 579, 600 (3d Cir. 2015).

The Commonwealth is mindful that "[p]rosecutors have a special duty to seek justice." *Connick v. Thompson*, 563 U.S. 51, 65–66 (2011). A prosecutor's "interest 'in a criminal prosecution is not that he shall win a case, but that justice shall be done.'" *Dennis v. Secretary, Pa. Dept. of Corrs.*, 834 F.3d 263, 290 (3d Cir. 2016) (en banc) (internal alteration omitted) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)); *see also* Explanatory Comment 1, Pa. R. Prof. Conduct 3.8 ("A prosecutor has the responsibility of a minister of justice and not simply that of an advocate"). Accordingly, the Commonwealth's position here is the product of a thorough review of the record, coupled with "careful consideration" in light of its "'primary authority for defining and enforcing the criminal law.'" *Kennedy v. Superintendent Dallas SCI*, 50 F.4th 377, 382 (3d Cir. 2022) (quoting *Engle v. Isaac*, 456 U.S. 107, 128 (1982).

**1) Trial counsel performed deficiently.**

To show deficient performance, a petitioner must show that his counsel's performance fell below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In order to make that showing, Johnson has to overcome the presumption that the challenged action "might be considered sound trial strategy." *Id.* at 689.

The state court correctly concluded that Johnson's trial counsel should have objected to the admission of Detective McDermott's testimony. Specifically, the state court concluded that Detective McDermott's testimony was objectionable and should not have been admitted into evidence. N.T. 7/9/13 at 3; *Johnson*, 2015 WL 6169417 at *7. But because the state court did not squarely address whether trial counsel's performance was deficient under *Strickland*, this Court reviews its decision *de novo. See Bey v. Superintendent Greene*, 856 F.3d 230, 236 (3d Cir. 2017) (review is *de novo* if the state court did not consider the claim on the merits).

Detective McDermott testified that Vicks identified Johnson as the shooter during an out-of-court police interview. To satisfy the Sixth Amendment's Confrontation Clause, when "testimonial evidence is at issue" and the declarant is unavailable, the defendant must have "a prior opportunity for cross-examination." *See Crawford v. Washington*, 541 U.S. 26,

68 (2004) (police interrogations are testimonial); *Bruton v. United States*, 391 U.S. 123, 126 (1968) ("major reason underlying the constitutional confrontation rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses against him") (citation omitted); *United States v. Berrios*, 676 F.3d 118, 127 (3d Cir. 2012) ("If the absent witness's statement is testimonial, then the Confrontation Clause requires unavailability and a prior opportunity for cross-examination.") (citation omitted); *United States v. Hinton*, 423 F.3d 355, 360 (3d Cir. 2005) (testimonial statement is one that a "declarant would objectively foresee might be used in the investigation or prosecution of a crime"); *United States v. Hendricks*, 395 F.3d 173, 178–79 (3d Cir. 2005) (same). It is axiomatic that hearsay—an out-of-court statement offered to prove the truth of the matter asserted—is inadmissible. *See* Fed. R. Evid. 801, 802; Pa. R. Evid. 801, 802.

Vicks's statement to law enforcement was testimonial because it was given while he was being interrogated in police custody. *Crawford*, 541 U.S. at 51–52. Assuming Vicks was unavailable, Johnson did not have a prior opportunity to cross-examine him. *Berrios*, 676 F.3d at 127. And, Vicks's statement was offered to prove the truth of the prosecution's theory of the case—namely, that Johnson was the shooter.

11

On this record, trial counsel's failure to object to Detective McDermott's testimony on Confrontation Clause and hearsay grounds constituted deficient performance. There was no reason for trial counsel to fail to object. *See Strickland*, 466 U.S. at 689 ("fair assessment of attorney performance requires [the court] . . . to evaluate the conduct from counsel's perspective at the time" including chosen trial strategy); *see also Hinton v. Alabama*, 571 U.S. 263, 274 (2014) (a reasonably competent attorney under *Strickland* knows the relevant law); *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 944 (3d Cir. 2019) (when "[n]o sound strategy" supports "counsel's choices," counsel's "performance falls below an objective standard of reasonable performance").

While counsel's deficient performance is established on the existing record, Johnson's trial counsel also recently submitted a letter that confirms the accuracy of that conclusion. In this letter, counsel admits he had no strategic reason for not objecting:

> Upon review, I have concluded that I had no effectively strategic reason for failing to object to Detective McDermott's testimony. That testimony is clearly hearsay, and it was also a violation of Johnson's rights under the confrontation clause of the United States Constitution. The testimony was very prejudicial to Johnson because it bolstered, through a law enforcement witness, the two eyewitnesses, who were shaky

at best. If called to testify at a hearing, I would testify accordingly.[3]

Exh. A (Sept. 29, 2022 letter jointly submitted by Michael Coard and Johnson's counsel). Not only was trial counsel's performance deficient under an independent, objective analysis, but by his own admission, his performance was constitutionally deficient. Because trial counsel's failure to object was not the result of any reasonable strategic judgment, Johnson's trial counsel performed deficiently.

**2) Trial counsel's deficient performance prejudiced Johnson, and the state court's ruling to the contrary was an unreasonable application of *Strickland*.**

In order to show prejudice under *Strickland*, a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* Counsel's errors "must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Harrington v.*

---

[3] Respondents respectfully submit that a hearing is not necessary in light of (1) the state court's correct decision that Detective McDermott's testimony should not have been admitted into evidence; (2) clearly established federal law establishing that trial counsel's performance was constitutionally deficient; and (3) trial counsel's concession that his performance was deficient and Johnson suffered prejudice as a result.

*Richter*, 562 U.S. 86, 104 (2011); *see also Tyson*, 976 F.3d at 392 (citation omitted) ("When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.") When a claim is "adjudicated on the merits in State court proceedings," habeas relief is warranted when the state court decision is "contrary to" or "an unreasonable application of" clearly established federal law. 28 U.S.C. § 2254(d)(1). The state court adjudicated the prejudice prong of Johnson's claim of ineffective assistance of counsel on the merits. *See Johnson*, 2015 WL 6169417 (Superior Court affirming denial of PCRA petition). Therefore, the standards set forth in § 2254 apply to this Court's review.

According to the state court, Johnson was not prejudiced by trial counsel's failure to object because there was adequate evidence to support a conviction even without Detective McDermott's testimony. *Johnson*, 2015 WL 6169417 at *7. The state court said that Detective McDermott's "erroneously admitted" statement, "which was not itself an extensive or detailed statement regarding the shooting, was merely cumulative of the eyewitness accounts of Curtis Smith and Ozzie Clark, both of whom testified at length at [Johnson's] trial to the same information: that [Johnson] shot the victim, Kenyatta Smith. Thus, [Johnson] could not have been

significantly prejudiced by trial counsel's failure to object." *Johnson*, 2015 WL 6169417 at *7. Johnson was denied relief on his claim. The state court's reasoning was an unreasonable application of federal law because it failed to consider "the vast majority of relevant evidence," *Saranchak*, 802 F.3d at 600, and "ignored . . . evidence that could have supported an opposite conclusion," *Tyson*, 976 F.3d at 397. The following section therefore first sets out the key facts relevant to assessing prejudice, and then analyzes the how state court's analysis was unreasonable.

Neither of the two eyewitnesses who testified for the prosecution provided strong or credible evidence of Johnson's guilt. Clark identified Johnson as the shooter eighteen months after the crime, after failing to do so on two prior occasions. At trial, his only explanation for the delay was that he felt a sense of civic duty to come forward. N.T. 9/29/10 at 139. He explained that his identification was "not visual" and was based only on the shooter's body, talk, and speech. N.T. 6/3/09 at 24, 27, 31. Clark admitted that he could not identify Johnson as the shooter "beyond a reasonable doubt" because the shooter was wearing a hat. *Id.* at 38. The fact that the shooter was wearing a hat reduces the accuracy of Clark's identification, as does his admission that his identification was not visual—the very definition of an eyewitness. Since the trial, Clark has recanted and

identified Curtis Smith, not Johnson, as the real perpetrator. ECF No. 80, Exh. 23.

Curtis Smith, the other eyewitness who testified against Johnson, was considered by investigators to be a suspect for this murder himself. N.T. 9/29/20 at 143–49; 160–64; 168, 173. He evaded authorities for nearly two years and did not identify Johnson as the shooter until he was confronted by law enforcement. He only agreed to cooperate after he was taken into custody and *Mirandized.* N.T. 9/28/10 at 147–49. So the jury was aware that Curtis Smith had a strong self-preservation interest to implicate Johnson as the shooter. His probation agent pressured him to cooperate in the hope that Curtis Smith would be able make a deal for less prison time. *Id.* Given the circumstances under which Curtis Smith identified Johnson, his identification of Johnson as the shooter was as seriously flawed as Clark's.

The reliability of both Clark's and Curtis Smith's eyewitness identifications of Johnson was weakened further by at least two substantial contradictions between them. Clark said that within minutes of Kenyatta Smith's arrival, Johnson pulled a gun on him; Curtis Smith said that Kenyatta Smith was at the store for twenty-five minutes before Johnson robbed him at gunpoint. And Clark said that Johnson fired at Kenyatta

Smith from eleven feet away; Curtis Smith said that they were two to three feet apart.

Without Amin Vicks's identification through the detective to shore up the questionable reliability of Clark's and Curtis Smith's identifications, there is a reasonable probability that the outcome of Johnson's trial would have been different. *See Buck v. Davis*, 137 S. Ct. 759, 776 (2017) (petitioner need only demonstrate reasonable probability that, but for counsel's errors, at least one juror would have reached different result). Their identifications of Johnson were subject to substantial challenge, and they gave conflicting and inconsistent accounts of the crime.

Detective McDermott's improperly admitted testimony bolstered the unreliable and weak testimony given by the two eyewitnesses. His testimony suggested that Vicks's identification of Johnson as the shooter was unequivocal: "Dennis Johnson was the shooter." This stood in clear contrast to the eyewitnesses's uncertain identifications, evidence that the state court ignored. And jurors find members of law enforcement more credible than other witnesses. *See Butler v. City of Camden*, 352 F.3d 811, 817 (3d Cir. 2003) ("some venirepersons may believe law enforcement officials wear an invisible cloak of credibility by virtue of their position") (citation omitted). There is a reasonable probability that the improperly admitted

testimony of Detective McDermott—a law enforcement officer—swearing that Amin Vicks, an unavailable eyewitness, identified Johnson as the shooter tipped the scales in favor of Johnson's conviction. It is more than conceivable that any weaknesses or inconsistencies in Clark's and Curtis Smith's testimony were resolved in the mind of the jury by concrete testimony from Detective McDermott that another eyewitness conclusively identified Johnson as the shooter.

Absent Detective McDermott's testimony, there is a reasonable probability that Johnson would not have been convicted. Was it more than merely "conceivable" that the jury would not have returned a guilty verdict? *Tyson*, 976 F.3d at 396. On this record, the answer is yes.

The state court's failure to recognize key facts rendered its adjudication of the prejudice prong of *Strickland* unreasonable. *Tyson*, 976 F.3d at 397; *Saranchak*, 802 F.3d at 600. In *Tyson*, the Third Circuit determined that the state court unreasonably undertook a prejudice analysis under *Strickland* when it "ignored . . . evidence that could have supported an opposite conclusion," namely, whether circumstantial evidence proved that Tyson had an intent to kill. 976 F.3d at 397. The state court overlooked eyewitness testimony that Tyson handed his gun to an accomplice and stayed in the car while his accomplice went to shoot the victims. *Id.* The Third Circuit

18

held that, had the state court properly considered the eyewitness testimony, it would have realized that "a jury could have reasonably concluded that Tyson . . . anticipated a confrontation" but lacked "the intent to kill." *Id.*

Similarly, in Johnson's case the "conclusory reasoning of the state court amounted to an unreasonable application of *Strickland.*" *Id.* at 398. The state court ignored the evidence that undermined the eyewitnesses's identification of Johnson. Most seriously, Clark testified that he did not visually identify Johnson—a crucial fact overlooked by the state court. And Curtis Smith's testimony was tainted by his own self-interest in avoiding culpability for the murder. Without the unequivocal statement of Amin Vicks, offered through law enforcement, that Johnson was the shooter, a jury could have reasonably concluded that he was not. *See id.*; *see also Saranchak*, 802 F.3d at 600 (state court's failure "to discuss the vast majority of relevant evidence . . . further buttresses our conclusion that its analysis was unreasonable"). A "proper prejudice analysis" requires "an evaluation of the totality of the available . . . evidence." *Saranchak*, 802 F.3d at 600. The state court's failure to discuss key testimony, coupled with the fact that it "brushed aside" problematic eyewitness testimony, supports that the state court's analysis was unreasonable. *Id.* Johnson suffered prejudice because,

absent Detective McDermott's testimony, it is reasonably probable that the outcome of his trial would have been different. *Strickland*, 466 U.S. at 694.

**3) Other factors undermine confidence in the outcome of Johnson's trial.**

Respondents note that, in addition to Johnson's constitutionally ineffective representation, other factors "undermine confidence in the outcome" of his trial. *Strickland*, 466 U.S. at 694. During their post-trial investigation, Johnson's appointed counsel obtained information and discovery from the District Attorney's Office that was not previously disclosed. The new facts provide additional support for Respondent's concession that Johnson is entitled to a new trial.

As noted above, it is undisputed that Vicks did not identify Johnson during Detective McDermott's first, documented interview; Detective McDermott testified that Vicks did so only at a second interview. The DAO and homicide files do not contain documentation consistent with there being more than one interview with Vicks. ECF No. 80 at 24. Additionally, Vicks submitted an affidavit swearing that he was only interviewed once by law enforcement and never told the police that Johnson, or anyone else, was the shooter. ECF No. 80, Exh. 25. To be clear, the Respondents do *not* concede that Detective McDermott's testimony about the second interview was false. However, Respondents are constrained to recognize that the fact

20

that the first interview is documented as normal in the file, while the second one is not, lends added support to Johnson's contention that he suffered prejudice from the improper admission of Detective McDermott's testimony.

Clark has since recanted his testimony and identified Curtis Smith as the shooter, not Johnson. ECF No. 80, Exh. 23. Respondents have already analyzed and explained the credibility issues with Clark's and Curtis Smith's trial testimony; these new facts, if true, provide further support for Respondents' arguments.

Finally, because facts elicited at trial indicated that the shooter rifled through Kenyatta Smith's pockets during the robbery, Kenyatta Smith's clothes were submitted for "touch DNA" analysis. The results of the testing excluded Johnson as a source of DNA on every area of clothing tested. ECF No. 80, Exh. 35. Touch DNA analysis was not available at the time of Johnson's trial. If it had been, the jury would have heard these new facts— that are arguably favorable to Johnson—and considered them while weighing the other testimony.

The case against Johnson was not overwhelming from the outset and his counsel was constitutionally ineffective. The post-trial investigation

unearthed additional factors that highlight weaknesses in the prosecution and confirm a low level of confidence in the outcome of Johnson's trial.

## III.    CONCLUSION

For the foregoing reasons, this Court should grant a conditional writ of habeas corpus and order that Johnson be re-tried within 180 days or released from custody.

Respectfully submitted,

*/s/ Jaclyn Mason*
JACLYN MASON
Assistant District Attorney
Federal Litigation Unit

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DENNIS JOHNSON,** | : | **CIVIL ACTION** |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SCOTT NICKELSON,** *et al.,* | : | **NO. 15-4965** |
| **Respondents.** | : | |

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing response was served on November 4, 2022, on the following counsel for Petitioner *via* this Court's CM/ECF electronic filing system:

> Aren Adjoian
> Jahaan A.R. Shaheed
> Federal Community Defender
> 601 Walnut Street Suite 540W
> Philadelphia, PA 19106

> Respectfully submitted,

> */s/ Jaclyn Mason*
> JACLYN MASON
> Assistant District Attorney
> Federal Litigation Unit