**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DENNIS JOHNSON,** | : | **CIVIL ACTION** |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **NO. 15-cv-4965** |
| | : | |
| **SCOTT NICKELSON, et al.,** | : | |
| **Respondents.** | : | |

**REPORT AND RECOMMENDATION**

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE** **February 3, 2023**

Presently before the Court is a counseled amended petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254, by Dennis Johnson ("Petitioner"), an individual currently incarcerated at the State Correctional Institution – Frackville in Frackville, Pennsylvania. For the following reasons, I respectfully recommend that the petition be GRANTED as to Claim IV[1] and that the District Court order the Commonwealth to provide Petitioner with a new trial or release him from custody within 180 days. I further respectfully recommend that the petition be DEFERRED with respect to Petitioner's remaining claims.[2]

## I. FACTUAL AND PROCEDURAL BACKGROUND

In affirming the denial of Petitioner's first petition under Pennsylvania's Post Conviction

[1] I refer to the claim at issue as "Claim IV," in accordance with the parties' use of the numbering set forth in Petitioner's May 31, 2022 memorandum of law. (*See* Memo. of Law, ECF No. 80).

[2] Respondents agree that Petitioner "is entitled to complete relief on this claim, and the disposition of this claim will moot the remainder of his claims." (Resp., ECF No. 86, at 2). Accordingly, Respondents did not brief his other claims, nor did Petitioner file a reply. (Not. of Intent to Forego Reply, ECF No. 87). Because this I concur with the parties that Petitioner's Claim IV warrants full relief, I likewise limit my discussion to that claim.

Relief Act (PCRA), 42 Pa. C.S. § 9501 *et seq.*, on February 23, 2015, the Pennsylvania Superior Court provided the following factual and procedural history through that point:

> On August 27, 2007, Appellant [Dennis Johnson], Curtis Smith (Curtis), and Amin Vicks were at a convenience store located at 30th Street and Lehigh Avenue in Philadelphia, where Ozzie Clark (Clark) was working as the sole clerk. At the time Curtis arrived, the doors to the store were locked, and business was being conducted through a window on the side of the store.
>
> Curtis identified Appellant in court, and testified that he knew Appellant all of his life. N.T., 9/28/10, at 112–14. While Curtis was at the window completing his purchase of cigars, he heard a commotion. Curtis turned to see Appellant "with a gun out[,]" and pointed at the chest of the victim, Kenyatta Smith (Kenyatta or "the victim"). *Id.* at 126, 136. Curtis also heard Appellant say to the victim, "Put everything on the steps or something like that." *Id.* at 128. He then observed Kenyatta place his personal effects, including a phone, on the steps. He also heard Appellant instruct the victim not to touch the items. When he observed what was going on, Curtis asked Appellant, "Yo, what [are] you doing, Dog?" *Id.* at 126. Soon thereafter, Curtis heard gunshots. *Id.* He immediately ran away, explaining that "When somebody is shooting a gun, I'm moving out of the way so I don't get hit." *Id.* at 160.
>
> Clark also testified for the Commonwealth. He had worked at his parents' business, the convenience store located at 30th Street and Lehigh Avenue, since he was a child. Clark identified Appellant in court, indicating that he had known him for 5 or 6 years at the time of the shooting. N.T., 9/29/10, at 41. Appellant would frequent the convenience store about once or twice a week as a customer. Clark knew Kenyatta as a frequent customer at the store as well, and further recalled that Kenyatta was a nighttime security guard at a local pool. Clark also indicated that he knew Amin Vicks and Curtis, as they were also regular customers.
>
> Clark was working alone the evening of the shooting. He saw Curtis, Amin Vicks, and Appellant approach the store. Kenyatta arrived at nearly the same time on a bicycle. Kenyatta purchased a few items first. While he was taking an order for Amin Vicks or Curtis, Clark noticed Appellant holding Kenyatta at gunpoint with a chrome revolver, and rifling through the victim's pockets. Clark heard Appellant say something like, "you want to get popped, Oldhead?" *Id.* at 54. Clark believed that Appellant said this when Kenyatta resisted giving up his phone. *Id.* at 61. Immediately thereafter, Clark heard a gunshot ring out, and saw everyone run

> away, including Kenyatta, who only ran for a short time before collapsing. Clark indicated that he was only about eleven feet from where the shooting took place, and that he heard only one shot. Immediately after the shooting, Clark called the police and then tried to attend to Kenyatta, who was "[b]arely breathing." *Id.* at 66.
>
> Police Officer Lewis Grandizio, a firearms expert, testified that he analyzed the bullet taken from Kenyatta's body. It was consistent with being fired from a .32 caliber revolver. Dr. Gary Collins, an assistant medical examiner for the Philadelphia Medical Examiner's Office, reviewed the report of the autopsy that had been performed by Dr. Gregory McDonald. Dr. Collins concluded that Kenyatta died of a single gunshot wound to the right side of his chest under the armpit, and that the manner of death was homicide. The single bullet had penetrated the victim's liver, heart, and left lung.
>
> On September 30, 2009, Appellant was convicted by a jury of the above-listed offenses. On November 2, 2010, the trial court sentenced Appellant to life imprisonment for second degree murder, and concurrent terms of 5–10 years' and 3 1/2–7 years' imprisonment for robbery and the firearms violation, respectively. Appellant filed a direct appeal, but that appeal was ultimately discontinued on September 9, 2009, before a brief was filed with this Court.
>
> Appellant filed a counseled PCRA petition, his first, on July 20, 2012.3 The Commonwealth filed a motion to dismiss on February 2, 2013. Appellant filed a response to the Commonwealth's motion to dismiss on March 5, 2013. Subsequently, on July 9, 2013, the PCRA court issued notice of its intent to dismiss Appellant's PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907. Appellant's petition was su[b]sequently dismissed by the court by order dated September 9, 2013.

*Commonwealth v. Johnson*, No. 2706 EDA 2013, 2015 WL 6169417, at *1-2 (Pa. Super. Ct. Feb. 23, 2015) (footnotes omitted).

The procedural history from that point is set forth in the Superior Court's January 2, 2018 affirmance of the denial of Petitioner's second PCRA petition:

> Our Supreme Court denied Appellant's petition for allowance of appeal on August 19, 2015. (*See Commonwealth v. Johnson*, 121 A.3d 495 (Pa. 2015)).
>
> On September 10, 2015, Appellant filed the instant *pro se* PCRA

> petition . . . . The Commonwealth filed a letter brief on October 24, 2016. The PCRA court issued notice of its intent to dismiss the petition without further proceedings on December 15, 2016, and Appellant filed a response on December 29, 2016. *See* Pa.R.Crim.P. 907(1). On January 18, 2017, the court entered its order dismissing the petition as untimely.

*Commonwealth v. Johnson*, No. 1069 EDA 2017, 2018 WL 258903, at *2 (Pa. Super. Ct. Jan. 2, 2018) (footnote omitted).

On July 25, 2018, the Pennsylvania Supreme Court denied Petitioner's petition for allowance of appeal. *Commonwealth v. Johnson*, 189 A.3d 991 (table) (Pa. July 25, 2018) (footnotes omitted).

On September 2, 2015, Petitioner filed his *pro se* petition for a writ of habeas corpus. (Hab. Pet., ECF No. 1). After the appointment of counsel, Petitioner amended his petition on May 31, 2016. (First Am. Hab. Pet., ECF No. 12). On September 13, 2016, the Honorable Paul S. Diamond referred the petition to me for a Report and Recommendation. (Order, ECF No. 20). After seeking and obtaining several extensions, Respondents filed their response on May 19, 2017, and an amended response on May 31, 2017. (Resp., ECF No. 33; Am. Resp., ECF No. 34). Petitioner filed *pro se* traverses in support of his amended petition on June 28 and 30, 2017. (Traverses, ECF Nos. 39, 41). On September 13, 2017, upon a counseled motion by Petitioner, I issued a Report and Recommendation recommending that this matter be stayed pending the resolution of Petitioner's then-pending second PCRA petition. (R & R, ECF No. 49). Judge Diamond approved and adopted my Report and Recommendation and stayed the matter on September 29, 2017. (Order, ECF No. 51). On September 21, 2018, Petitioner, through counsel, moved to file a second amended petition. (Mot. to Supp. and Am., ECF No. 56). Respondents filed a response not opposing the motion, and on October 1, 2019, I ordered the second amended petition to be docketed and issued another Report and Recommendation recommending that the matter be stayed until the resolution of Petitioner's state court proceedings, which remained

pending. (R & R, ECF No. 62; Order, Sec. Am. Hab. Pet., ECF No. 64). On May 14, 2020, Judge Diamond approved and adopted my Report and Recommendation and again stayed the matter. (Order, ECF No. 66). On January 10, 2022, Petitioner, through counsel, moved unopposed to file a third amended petition and to lift the stay. (Mot. to Am. and Lift Stay, ECF No. 68). I granted the relief requested in the motion the following day. (Order, ECF No. 71). After the entry of a revised briefing schedule upon joint motion of the parties, Petitioner filed a memorandum of law in support of his thrice-amended habeas petition on May 31, 2022. (Memo. of Law, ECF No. 80). Respondents moved, unopposed, for an extension, and filed their response on November 4, 2022. (Resp. to Third Am. Pet., ECF No. 86). On November 28, 2022, Petitioner filed a Notice of Intent to Forego Reply. (Not. of Intent to Forego Reply, ECF No. 87). This Court received the State Court Record on or about January 26, 2023. Accordingly, the matter has been fully briefed and is ripe for disposition.

## II. LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) increased the deference federal courts must give to the factual findings and legal determinations of the state courts. *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002); *Werts*, 228 F.3d at 196. Pursuant to 28 U.S.C. § 2254(d), as amended by the AEDPA, a petition for habeas corpus may be granted only if: (1) the state court's adjudication of the claim resulted in a decision contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of United States;" or (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Factual issues determined by a state court are presumed to be correct, and the petitioner bears the burden of rebutting this presumption by clear

and convincing evidence. *Werts*, 228 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)).

The Supreme Court has explained that, "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also Hameen v. Delaware*, 212 F.3d 226, 235 (3d Cir. 2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." *Hameen*, 212 F.3d at 235 (citing *Williams*, 529 U.S. at 388-89). "In further delineating the 'unreasonable application of' component, the Supreme Court stressed that an unreasonable application of federal law is different from an incorrect application of such law and a federal habeas court may not grant relief unless that court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable." *Werts*, 228 F.3d at 196 (citation omitted).

## III. DISCUSSION

Petitioner's Claim IV, as amended, reads: "Petitioner received constitutionally deficient assistance of counsel where trial counsel failed to object on confrontation grounds and on hearsay grounds to Detective John McDermott's testimony that Amin Vicks, who did not testify, when re-interviewed informed detectives 'that Curtis Smith was there, Dennis Johnson [Petitioner] was the shooter . . . .'" (First Am. Hab. Pet., ECF No. 12, at 13-15 (alteration in original)). I consider whether Petitioner is entitled to habeas relief on this claim.

**A. The Superior Court's Opinion**

Petitioner raised this claim verbatim in his appeal to the Superior Court of the denial of his initial PCRA petition. *Johnson*, 2015 WL 6169417, at *2. The court provided the following analysis of the claim:

> We agree with the PCRA court that this statement should not have been admitted, as it was inadmissible on both hearsay and confrontation clause grounds. However, we also agree with the PCRA court that Appellant cannot demonstrate prejudice because there is no reasonable probability that the outcome of his trial would have been different had this statement been excluded.
>
> The PCRA court determined that Amin Vick's statement was merely cumulative of the testimony of eyewitnesses Curtis Smith and Ozzie Clark and, as such, Appellant could not demonstrate outcome-determinative prejudice. As our Supreme Court noted in *Commonwealth v. Chmiel*, 889 A.2d 501, 521 (Pa.2005), harmless error exists where "the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence[.]" *Id.* at 521 (citing *Commonwealth v. Robinson*, 721 A.2d 344, 350 (Pa.1998)). Here, the erroneously admitted statement, which was not itself an extensive or detailed statement regarding the shooting, was merely cumulative of the eyewitness accounts of Curtis Smith and Ozzie Clark, both of whom testified at length at Appellant's trial to the same information: that Appellant shot the victim, Kenyatta Smith. Thus, Appellant could not have been significantly prejudiced by trial counsel's failure to object.

*Id.* at *7.

**B. The Parties' Arguments**

Petitioner argues that Detective McDermott's testimony repeating Vicks' out-of-court identification of Petitioner as the shooter violated long established Confrontation Clause and hearsay principles and that any competent criminal attorney should have objected on those grounds. (Memo. of Law, ECF No. 80, at 39-40). He asserts that the state courts erred in concluding that he suffered no prejudice from the testimony because they "unreasonably applied a sufficiency-of-the-evidence test in place of a reasonable-probability-of-a-different-result test."

(*Id.* at 40). He contends that the only other evidence of his guilt was the testimony from Curtis Smith and Clark, but that this testimony was weak because the former, whom Petitioner alleges was the real shooter, had a motive to lie and because the latter initially failed to identify Petitioner as the shooter, only later claimed to do so on a "not visual" basis due to his inability to see the shooter's face, and even then was not sure of the shooter's real identity. (*Id.* at 35).

Respondents agree that Petitioner is entitled to relief on this claim. They note that trial counsel's failure to object to Detective McDermott's testimony "was deficient because no reasonable strategy could have supported allowing the jury to hear inadmissible testimony evidence from a law enforcement officer that an eyewitness identified Johnson as the murderer." (Resp. to Third Am. Pet., ECF No. 86, at 8, 10-13). Pointing to the same reasons proffered by Petitioner, they also concur that he suffered prejudice due to the "serious flaws" with Curtis Smith's and Clark's testimony and that the state court's contrary determinations constituted an unreasonable application of United States Supreme Court case law. (*Id.* at 9, 13-20 (citation omitted)).

**C. Analysis**

A claim for ineffective assistance of counsel is governed by *Strickland v. Washington*, 466 U.S. 668 (1984).[3] In *Strickland*, the United States Supreme Court established the following two-pronged test to obtain habeas relief on the basis of ineffectiveness:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the

[3] It is well settled that *Strickland* is "clearly established Federal law, as determined by the Supreme Court of the United States." *Williams*, 529 U.S. at 391. Thus, Petitioner is entitled to relief if the Pennsylvania court's rejection of his claims was: (1) "contrary to, or involved an unreasonable application of," *Strickland*; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Here, Petitioner alleges an unreasonable application of *Strickland*.

> defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. Because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," a court must be "highly deferential" to counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "Thus . . . a defendant must overcome the 'presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Bell v. Cone*, 535 U.S. 685, 698 (2002) (quoting *Strickland*, 466 U.S. at 689). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

**1. Deficient Performance**

There is no question that trial counsel performed deficiently in failing to object to Detective McDermott's testimony. Vicks, who was apparently unavailable for trial, allegedly provided a testimonial statement to Detective McDermott identifying Petitioner as the shooter. *See Crawford v. United States*, 541 U.S. 26, 68 (2004) (police interviews are testimonial in nature); *see also United States v. Hendricks*, 395 F.3d 173, 178-79 (3d Cir. 2005). Under such circumstances, the Confrontation Clause of the Sixth Amendment requires that the defendant have had "a prior opportunity for cross-examination," but Petitioner never received that opportunity. *United States v. Berrios*, 676 F.3d 118, 127 (3d Cir. 2012) (quoting *Crawford*, 541 U.S. at 68). Moreover, Federal Rule of Evidence 802 renders hearsay, an out-of-court statement offered to prove the truth of the matter asserted therein, inadmissible. FED. R. EVID. 802; *see also* FED. R. EVID. 801(c). Here, Vicks' statement was offered for purposes of identifying

Petitioner as the killer, i.e., to prove the truth of what Vicks had asserted. Indeed, the Court notes that although the state courts did not apply *Strickland*, they agreed that Detective McDermott's testimony repeating Vicks' statement "should not have been admitted, as it was inadmissible on both hearsay and confrontation clause grounds." *Johnson*, 2015 WL 6169417, at *7. In addition, trial counsel provided a letter to Respondents acknowledging that he "had no effectively strategic reason for failing to object to Detective McDermott's testimony." (Ltr., ECF No. 86-1, at 1.) Accordingly, I have no trouble concluding that the first prong of *Strickland*'s test for ineffectiveness assistance of counsel has been met.

**2. Prejudice**

As noted, the state courts concluded that Vicks' purported identification of Petitioner as the shooter was "merely cumulative" of Curtis Smith's and Clark's testimony because those witnesses also identified Petitioner as the shooter. *Johnson*, 2015 WL 6169417, at *7. However, this analysis was an unreasonable application of *Strickland*'s prejudice factor due to the courts' failure to consider the problems with that testimony.

Clark did not initially identify the shooter to police. (N.T. 9/29/10 at 68). Nor did he select Petitioner from a photo array shown to him by Philadelphia Detectives in May 2008. (*Id.* at 80). At the June 2009 preliminary hearing he explained that he did not do so because he had been asked if he recognized anybody from the crime scene "without a reasonable doubt" and he could not make an identification to that degree of certainty. (N.T. 6/3/09 at 38). Instead, he waited until Detective McDermott reached out to him in February 2009, a year and half after Kenyatta Smith's murder, to identify Petitioner as the shooter.[4] (*Id.* at 81). When asked at the

[4] Respondents claim that Clark's "only explanation for the delay was that he felt a sense of civic duty to come forward," but Clark also testified that he feared for his safety because "I still got to come to work here [at the store] the next day and the after." (*Id.* at 68; Resp., ECF No. 86, at 15). Although he no longer worked at the store by May 2008, his mother continued to

preliminary hearing if he knew at the time of the crime who the shooter was, he replied, "yes and no." (N.T. 6/3/09 at 23). He explained that he never saw the shooter's face because the shooter was wearing a baseball cap but that his recognition of the individual was based on "[t]he hands, the body, the shoulders" and his "talk, speech." (*Id.* at 24, 27). He testified that the identification was "not visual." (*Id.* at 24).

On August 3, 2018, Clark executed an affidavit in which he recanted his prior statements and testimony identifying Petitioner as Kenyatta Smith's murderer. (Clark Aff., ECF No. 80-1 at Ex. 24). He averred that the real shooter was Curtis Smith and that his prior identifications of Petitioner as the shooter had been coerced by police, who accused him of lying when he refused to select Petitioner from a photo array despite their indicating that Petitioner was the shooter and pointing to him; drafted portions of his February 2009 statement without input from him; showed up at his house and workplace repeatedly, which "unnerved" him; and directed him what to say at the upcoming trial, with Curtis Smith present in the room and nodding in agreement with the officers. (*Id.*). He indicated that Curtis Smith also intimidated him by coming to the store and staring at him while ordering food. (*Id.*). He claimed that he chose to come forward with the truth only after being shown affidavits of others who identified Curtis Smith as the shooter and realizing that he was "not the only person willing to tell the truth about" him.[5] (*Id.*).

As for Curtis Smith, at trial Detective Aaron Booker testified that he was initially a suspect himself. (N.T. 9/29/10 at 168). Like Clark, Curtis Smith did not initially identify

---

do so. (N.T. 9/29/10 at 147-48). By February 2009, the store had closed. (*Id.* at 75).

[5] In Clark's affidavit, he referenced the June 2018 affidavits of Maurice Stokes, Curtis Smith's cousin, and Ronnie Jordon, who shared a prison cell with Curtis Smith years after Kenyatta Smith's murder. (Stokes Aff., ECF No. 80-1 at Ex. 17; Clark Aff., ECF No. 80-1 at Ex. 24; Jordon Aff., ECF No. 80-1 at Ex. 28). Stokes and Jordon both claimed that Curtis Smith confessed the murder to them. (Stokes Aff., ECF No. 80-1 at Ex. 17; Jordon Aff., ECF No. 80-1 at Ex. 28).

Petitioner as the shooter. In fact, he gave no statement concerning the crime to police until they contacted him in January 2009 while he was imprisoned on an unrelated matter. (*Id.* at 149-50). Curtis Smith explained at trial that, in his view, it is "[b]ad to talk to the police" but that he eventually cooperated because his probation officer pressured him to do so.[6] (*Id.* at 142, 149).

Clark and Curtis Smith also contradicted each other on significant aspects of the shooting. Clark testified that Kenyatta Smith arrived at the store on his bicycle and that Clark had been waiting on him "all of 30 or all of 35 seconds" before the incident, but Curtis Smith testified that Kenyatta Smith had been at the store for 25 to 30 minutes. (N.T. 9/28/10 at 135-36; N.T. 9/29/10 at 52). Further, Clark stated that the shooter was approximately 11 feet from Kenyatta Smith; however, Curtis Smith set the distance at only two to three feet. (N.T. 9/28/10 at 132; N.T. 9/29/10 at 54).

Under these circumstances, the state court unreasonably applied *Strickland* in finding that Petitioner suffered no prejudice from the Confrontation Clause and hearsay violations because Clark's and Curtis Smith's testimony was "merely cumulative." Clark's identification of Petitioner as the gunman was shaky, at best. In multiple contacts with police, he initially failed to identify Petitioner, at least in part because he had doubts about the shooter's identity, and when he finally did so, he based it on "not visual" features. He also later recanted his identification of Petitioner in full, gave an explanation for his false statements and testimony, and fingered a different shooter, Curtis Smith. Stokes and Jordon also claimed in affidavits that Curtis Smith shot Kenyatta Smith, and the police, at least initially, considered him a suspect.

[6] Respondents claim that Curtis Smith's probation officer pressured him to cooperate "in the hope that Curtis Smith would be able to make a deal for less prison time," but this claim is unsupported by the cited notes of testimony. On the contrary, Curtis Smith testified that he did not expect to obtain anything from his cooperation and that his probation would continue. (N.T. 9/28/10 at 150).

Thus, Curtis Smith had a strong motive to identify someone else, such as Petitioner, as the shooter. He also faced pressure from his probation officer to cooperate with police, once he was finally tracked down by detectives 17 months after the shooting. Moreover, Clark and Curtis Smith differed substantially on key details of the crime, such as the length of time Kenyatta Clark had been at the store prior to being shot and the distance between him and the shooter. The state courts failed to account for these facts undermining the credibility of Clark's and Curtis Smith's testimony. *See Tyson v. Superintendent Houtzdale SCI*, 976 F.3d 382, 397 (3d Cir. 2020) (finding *Strickland* prejudice analysis unreasonable where the state court "ignored . . . evidence that could have supported the opposite conclusion").

In contrast to Clark's and Curtis Smith's testimony, the identification of Petitioner as the shooter by Amin Vicks, improperly admitted via a law enforcement officer, was unequivocal and seemingly devoid of self-interest: "Dennis Johnson was the shooter." (N.T. 9/29/10 at 176). It was not simply cumulative of Clark's and Curtis Smith's testimony; there is reason to believe that jurors would have found it more credible or compelling and not found Petitioner guilty without it. *See Buck v. Davis*, 580 U.S. 100, 119-20 ("the question" is whether there is "a reasonable probability that . . . at least one juror would have harbored a reasonable doubt"). Therefore, the admission of this testimony made it reasonably probable that the result of Petitioner's trial would have been different if trial counsel had objected. *Strickland*, 466 U.S. at 694. Accordingly, this Court respectfully recommends that Petitioner's petition for writ of habeas corpus be granted.

## IV. CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court grant the request for a writ of habeas corpus on Petitioner's Claim IV asserting ineffective assistance of

trial counsel. This Court further respectfully recommends that the petition be DEFERRED with respect to Petitioner's remaining claims.

Therefore, I respectfully make the following:

**RECOMMENDATION**

AND NOW this __3RD__ day of February, 2023, I respectfully RECOMMEND that the petition for writ of habeas corpus be GRANTED with respect to Petitioner's Claim IV asserting ineffective assistance of trial counsel and be DEFERRED with respect to Petitioner's remaining claims.

I further recommend that within one-hundred and eighty (180) days of the District Judge's Order approving and adopting this Report and Recommendation, the Commonwealth give Petitioner a new trial, or release him from custody.

BY THE COURT:

/s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge