## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENNIS JOHNSON, | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| SCOTT NICKELSON, et al., | : | No. 15-cv-4965 |
| Respondents. | : | |

## MOTION TO WITHDRAW RESPONSE

In the course of preparing for the upcoming evidentiary hearing in this case, the leadership of the Law Division of the Philadelphia District Attorney's Office (which represents the respondents here) reviewed the record, including the transcripts of petitioner Dennis Johnson's trial and the Commonwealth's response, ECF No. 86. Unfortunately, that review revealed that the prior response misstated parts of the record that the Commonwealth (and the Magistrate Judge) relied upon to determine that Johnson is due relief. Accordingly, the Commonwealth respectfully requests leave to withdraw its prior response and apologizes to the Court for the errors in the prior response.

## RELEVANT BACKGROUND

After a trial, a Pennsylvania jury convicted petitioner Dennis Johnson of second-degree murder and related offenses for the August 2007 murder of Kenyatta Smith. *See Commonwealth v. Johnson*, 2015 WL 6169417, at *1 (Pa. Super. Ct. Feb. 23, 2015). Johnson filed a petition for relief pursuant to Pennsylvania's Post-Conviction Relief Act, 42 Pa. C.S. § 9541 *et seq.*, claiming (as relevant here) that trial

counsel performed ineffectively by not objecting to a detective's testimony that a non-testifying witness, Amin Vicks, had told detectives that Johnson was the shooter. *Id.* at *2. The Pennsylvania Superior Court agreed that Vicks's statement should not have been admitted and that trial counsel performed deficiently by failing to object. *Id.* at *7. However, the Superior Court concluded that Johnson could not demonstrate prejudice because the evidence was "cumulative" of the eyewitness accounts of Curtis Smith and Ozzie Clark, who testified at trial that Johnson shot Smith. *Id.* In a footnote, the Superior Court rejected Johnson's argument that Vicks's identification was "the only unimpeached identification of [Johnson]," noting that Vicks's statement was not repeated or referenced in the Commonwealth's closing statement. *Id.* at *7 n.6. The Pennsylvania Supreme Court denied allocatur. *Commonwealth v. Johnson*, 121 A.3d 495 (Pa. 2015) (table).

In 2015, Johnson filed a *pro se* habeas petition in this Court. ECF No. 1. Johnson ultimately filed three counseled amended and/or supplemental petitions. ECF No. 11, 12, 56, 68, 80. Across these filings, Johnson raised eleven claims.

In 2022, the Commonwealth responded to Claim IV of Johnson's petition, which claimed that trial counsel performed ineffectively by not objecting to the detective's testimony that Vicks had identified Johnson as the shooter. ECF No. 86. The Commonwealth concluded that the Superior Court's adjudication of this claim was an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at 13–20; *see* 28 U.S.C. § 2254(d)(1). The response stated that neither of the two testifying eyewitnesses, Clark or Smith, "provided strong or credible evidence of

Johnson's guilt." ECF No. 86. at 15. In light of that view of the record, the response argued that the detective's testimony may have "tipped the scales" in favor of Johnson's conviction. *Id*. at 18. Among other things, the response asserted that, "[m]ost seriously," Clark "testified that he did not visually identify Johnson—a crucial fact overlooked by the state court." *Id*. at 19.[1]

Magistrate Judge Sitarski recommended that relief be granted on this claim. ECF No. 89. She agreed with the parties that the state courts' adjudication of the claim was unreasonable because it did not "consider the problems with" the other witnesses' testimony. Magistrate Judge Sitarski agreed that Smith testified that he "never saw the shooter's face." *Id*. at 11. In two footnotes, Magistrate Judge Sitarski corrected two other errors in the Commonwealth's response. *Id*. at 10–12 n.4 & n.6.

In May, this Court ordered an evidentiary hearing be held for Johnson to present eyewitness testimony from Clark, Smith, and Vicks. ECF No. 97; ECF No. 110. As none of undersigned counsel had any prior involvement in the case, undersigned counsel began to assist the then-assigned ADA, Jaclyn Mason, in preparing for the hearing. In the course of preparing for the hearing, on or about May 29, 2026, undersigned counsel determined that the prior response contained material

---

[1] The response is signed by former Assistant District Attorney Jaclyn Mason. At the time, her supervisor was Assistant District Attorney Matthew Stiegler, then-Supervisor of the Federal Litigation Unit. Although Stiegler did not sign the response, he supervised its preparation.

Mason submitted her resignation from the District Attorney's Office on June 2, 2026. Stiegler is currently the Supervisor of the DAO's Conviction Integrity Unit. The CIU is not part of the DAO's Law Division and has no role in litigating this matter.

misstatements and that relief on Johnson's claim was not warranted. Again, the Commonwealth apologizes for those misstatements, which are discussed in the next section.

## DISCUSSION

In the best professional judgment of undersigned counsel, the following statements in the prior response are not supported by the record or are legally erroneous. Undersigned counsel view these misstatements as material, affecting the Commonwealth's prior position.

The most significant error is the following statement: **"Most seriously, [Ozzie] Clark testified that he did not visually identify Johnson—a crucial fact overlooked by the state court."** ECF No. 86 at 19. But at Johnson's trial, Clark, the store clerk, repeatedly testified that he saw Johnson's face. He testified that he had known Johnson for at least five or six years in 2007. N.T. 9/29/10 at 41 ("five or six years"); 91 ("ten or eleven years"). That night, Johnson said "what's up, O" when he first got to the store. *Id*. at 60. He testified that he "saw [Johnson] brandishing a weapon and [] stick his hand in the guy's pockets" and that he saw Johnson pointing a gun at the victim. *Id*. at 55, 56. He testified that he saw one shot fired. *Id*. at 65. On cross-examination, Clark repeatedly testified that he saw the shooter's face. *Id*. at 93–94. He said that he identified Johnson as the shooter by both his "body" and "face." *Id*. at 95–97, 99. He denied that the shooter's baseball cap affected his ability to see his face. *Id*. at 112–13, 122. So, although the response cites the fact that Clark testified that he did not see Johnson's face as "crucial" and the

"[m]ost serious[]" issue with the state court's opinion, it is an inaccurate description of his trial testimony.

Instead, the response relies on pieces of Clark's testimony at the preliminary hearing to characterize his identification. At that hearing, Clark testified that he saw Johnson approach the victim to rob him, aim his gun at the victim's torso, and shoot him. N.T. 6/3/09 at 11–12. On cross-examination, he testified that the identity "came through talk, speech, not visual," that he didn't see the shooter's face, and that he saw the shooter's "hands, the body, the shoulders." *Id*. at 23–24. When questioned about some of this testimony at trial, he explained that Johnson's counsel had been "yelling" at him and that "there were people in the crowd making gestures and it was hard to focus." N.T. 9/29/10 at 133. He said that Johnson's mother had been in court making gestures and was thrown out of the courtroom by the judge. *Id*. at 134–35; *see* N.T. 6/3/09 at 32. This explanation is not included in the response, nor does the response acknowledge the more thorough testimony Clark offered at the trial. Additionally, the response does not mention that in Clark's initial police statement, given shortly after the crime, he described the shooter as "clean shaven," meaning that he saw the shooter's face.

Unfortunately, the R&R appears to rely on the response's characterization of Clark's identification. It agreed that Clark's identification of Johnson was "not visual" and characterized the identification as "shaky, at best." ECF No. 89 at 12. This is hard to square with Clark's trial testimony, during which he explained that he knew

Johnson from the neighborhood, that Johnson said hello to him before the shooting, and that he saw Johnson's face.

The response's discussion of Clark's testimony contains two additional, related errors. First, it says that **"[a]t trial, [Clark's] only explanation for the delay [in identifying Johnson] was that he felt a sense of civic duty to come forward."** ECF No. 86 at 15 (citing N.T. 9/29/10 at 139). As Magistrate Judge Sitarski pointed out in the R&R, Clark testified that he feared for his safety because he still had to work at the store after the shooting. ECF No. 89 at 10–11 n.4 (citing N.T. 9/29/10 at 68, 75, 147–48); *see also* N.T. 9/29/10 at 71 (same), 73 ("I could easily be shot, my mom, my sister, anybody."). There is also evidence in the record that, even in court, people from the neighborhood pressured Clark not to identify Johnson. *See* N.T. 9/29/10 at 133–35 (Clark's testimony that people in the crowd were making gestures and that Johnson's mother was thrown out of the preliminary hearing). Second, the response says that **"[t]he fact that the shooter was wearing a hat reduces the accuracy of Clark's identification . . . ."** ECF No. 86 at 15. As discussed above, at trial Clark never testified that any baseball cap affected his ability to see Johnson's face. N.T. 9/29/10 at 112–13, 122. This was not a "stranger identification" where Clark had never met Johnson before: he knew Johnson from the neighborhood, Johnson said hello to him when he first came to the store, and he saw Johnson's face.

The response includes at least one error in discussing Curtis Smith's testimony, too. It says that **"[Curtis Smith's] probation agent pressured him to cooperate in the hope that [Smith] would be able [to] make a deal for less**

6

**prison time."** ECF No. 86 at 16 (citing N.T. 9/28/10 at 147–49). As Magistrate Judge Sitarski pointed out in the R&R, this claim is "unsupported" by the transcript. ECF No. 89 at 12 n.6. Rather, Smith "testified that he did not expect to obtain anything from his cooperation and that his probation would continue." *Id.* (citing N.T. 9/28/10 at 150).

Finally, in analyzing whether the state courts' opinion was a reasonable application of federal law under 28 U.S.C. § 2254(d), the response argues that **"[t]he state court's failure to acknowledge key facts rendered its adjudication of the prejudice prong of *Strickland* unreasonable."** ECF No. 86 at 18. But, in the discussion that follows, the response does not mention footnote 6 of the state court's opinion, which notes Johnson's argument that Vicks's identification "was the strongest one presented by the Commonwealth because it was the only unimpeached identification of [Johnson] as the shooter." *Johnson*, 2015 WL 6169417, at *7 n.6. The state court did analyze the role Vicks's identification played in the trial: the statement was not repeated or relied on by the prosecution, and during the closing argument, Vicks "was only mentioned once, in passing, and the statement in question was never referenced." *Id.*

Based on these material errors and misstatements, the prior response must be withdrawn.

## CONCLUSION

For these reasons, the Commonwealth respectfully requests that this Court

grant leave to withdraw its prior response in this case, ECF No. 86.

Respectfully submitted,

/s/ David J. Napiorski
DAVID J. NAPIORSKI
Supervisor, Law Division
Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107
Email: david.napiorski@phila.gov
(215) 686-8000

/s/ Steven J. Wildberger
STEVEN J. WILDBERGER
Assistant Supervisor, Law Division
Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107
Email: steven.wildberger@phila.gov
(215) 686-8000

/s/ Peter F. Andrews
PETER F. ANDREWS
Supervisor, Federal Litigation Unit
Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107
Email: peter.andrews@phila.gov
(215) 686-8000

/s/ Katherine Ernst
KATHERINE ERNST
Chief of Training, Law Division
Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107
Email: katherine.ernst@phila.gov
(215) 686-8000

## CERTIFICATE OF SERVICE

I, David J. Napiorski, certify that on June 5, 2026, I served a copy of this response on

all counsel of record via the Court's CM/ECF system.

_____/s/_____

DAVID J. NAPIORSKI
Supervisor, Law Division
Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107
Email: david.napiorski@phila.gov
(215) 686-8000
