**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DENNIS JOHNSON,<br><br>Petitioner,<br><br>v.<br><br>SCOTT NICKELSON, Secretary, Pennsylvania Department of Corrections, et al.,<br><br>Respondents. | No. 15-cv-4965 |

## RESPONSE TO MOTION TO WITHDRAW RESPONSE[1]

Petitioner Dennis Johnson is currently serving a life sentence for the 2007 murder of Kenyatta Smith. He has consistently maintained his innocence since his arrest. The mounting evidence from the post-conviction investigation, including exculpatory DNA testing results, supports his innocence claim, as well as Mr. Johnson's claims of fundamental constitutional errors at his trial.

On February 3, 2023, in a reasoned Report and Recommendation (R. & R.), Magistrate Judge Sitarski concluded that Mr. Johnson's constitutional right to the

[1] Mr. Johnson has also received the Office of Attorney General's Motion to Establish a Briefing Schedule, and intends to file a separate response to that motion.

effective assistance of counsel was violated when his attorney failed to object to testimony that violated the rule against hearsay and the Confrontation Clause.[2] ECF No. 89 at 12-13. The Magistrate Judge recommended that Mr. Johnson be granted relief and released or retried within 180 days. *Id.* at 12-14.

Last week, however, the Commonwealth filed a motion to withdraw its response in which it had recommended relief on that very claim. ECF No. 118. According to the Commonwealth, its original response "misstated parts of the record that the Commonwealth (and the Magistrate Judge) relied upon to determine that Johnson is due relief." *Id.* at 1. The motion alleges that the Commonwealth's response's "most significant error" is its assertion that Ozzie Clark, Jr. did not visually identify Johnson, and that the state court unreasonably overlooked this fact when it reached its decision. *Id.* at 4-5 (quoting N.T. 6/3/09 at 23-24). In the Commonwealth's current view, the response did not sufficiently describe Mr. Clark's inconsistent trial testimony—that Mr. Clark was able to visually identify the shooter—and this induced the Magistrate Judge to believe that Mr. Clark's identification of Mr. Johnson was weaker than it was. *Id.* at 4–6.

---

[2] The state courts agreed the Confrontation Clause had been violated, *see* ECF No. 89 at 10, but found, in what the Magistrate Judge found to be an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984), that the violation was not material.

Mr. Johnson takes no position on the Commonwealth's underlying request to withdraw its response; the Commonwealth is free to litigate this case in whatever manner it sees fit. However, Mr. Johnson notes that the premise of the Commonwealth's motion—a speculative assertion that the Magistrate Judge relied on the Commonwealth's response to acquire a false understanding of Mr. Clark's trial testimony—is belied by the Magistrate Judge's Report and Recommendation (R. & R.). The R. & R. makes clear that the Magistrate Judge did not misunderstand the trial record.

Moreover, Mr. Clark's comment at the preliminary hearing that his identification was not visual is one of several problems with his identification, and just one of many factors the Magistrate Judge considered in a robust analysis that resulted in a recommendation that Mr. Johnson be granted habeas relief. The remaining assertions identified by the Commonwealth in its motion (two of which the Magistrate Judge already identified in her R. & R.) likewise did not induce any detrimental reliance by the Magistrate Judge. There is thus no reason to believe that any substituted response that makes the changes laid out in the Commonwealth's motion would change anything about the Magistrate Judge's analysis or conclusion. To the extent the Court has any doubts about this, it should

refer the case back to the Magistrate Judge for an updated R. & R. if the Commonwealth files a substituted answer.[3]

## FACTUAL AND PROCEDURAL BACKGROUND

Pending before this Court, as relevant to the Commonwealth's motion, is a claim that Mr. Johnson's trial counsel was ineffective for failing to object to Detective John McDermott's testimony that a non-testifying witness, Amin Vicks, identified Mr. Johnson as the shooter in an out-of-court police interview. *See* ECF No. 80 at 39–40 (Petitioner's Memorandum of Law).

Mr. Johnson exhausted this claim in state court by including it in his Post-Conviction Relief Act petition. The PCRA court denied relief on this claim, and the Pennsylvania Superior Court upheld that denial on appeal. *Commonwealth v. Johnson*, No. 2706 EDA 2013, 2015 WL 6169417, at *7 (Pa. Super. Feb. 23, 2015). The Pennsylvania Superior Court acknowledged that Detective McDermott's testimony about Mr. Vicks's out-of-court statement "was inadmissible on both hearsay and confrontation clause grounds[,]" but found that Mr. Johnson could not establish "outcome-determinative prejudice" because the

[3] This Court also has an evidentiary hearing scheduled in a little over a month at which time the Court can and will make its own independent factual determinations.

Vicks identification was "merely cumulative of the eyewitness accounts of Curtis Smith and Ozzie Clark." *Id.*

Mr. Johnson raised the same claim in this habeas proceeding, arguing both that the claim is meritorious and that the Pennsylvania Superior Court's denial of relief was unreasonable under the standard of review set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA). *See* ECF No. 80 at 39–40. The Commonwealth responded to Mr. Johnson's habeas petition by analyzing Mr. Johnson's ineffective-assistance-of-counsel claim at length and concluding that relief was warranted under AEDPA's standard of review. ECF No. 86 at 8 (Response). The Commonwealth did not address any of Mr. Johnson's other claims, reserving its right to do so depending on the outcome of the ineffective assistance claim. *Id.* at 2 n.2.

The Magistrate Judge issued an R. & R. recommending that this Court grant relief on Mr. Johnson's ineffectiveness claim. ECF No. 89 at 12-14. The Magistrate Judge concluded that the state courts' conclusion that Mr. Vicks's purported identification of Mr. Johnson was "merely cumulative" of the testimony of the other two eyewitnesses "was an unreasonable application of *Strickland*'s prejudice factor due to the courts' failure to consider the problems with that testimony." *Id.* at 10.

The Magistrate Judge then catalogued numerous problems with Mr. Clark's and Mr. Smith's testimony that were necessary to consider for a proper prejudice analysis. *Id.* at 10–12. As to Mr. Clark, the Magistrate Judge noted that he did not initially identify the shooter to police and did not select Mr. Johnson from a photo array shown to him by police in May 2008. *Id.* The Magistrate Judge also referenced several statements made by Mr. Clark at the preliminary hearing that weakened his identification of Mr. Johnson. Among them: Mr. Clark explained that he did not initially identify Mr. Johnson as the perpetrator "because he had been asked if he recognized anybody from the crime scene 'without a reasonable doubt' and he could not make an identification to that degree of certainty," *id.* at 10 (quoting N.T. 6/3/09 at 38); he "waited until Detective McDermott reached out to him in February 2009, a year and [a] half after Kenyatta Smith's murder, to identify Petitioner as the shooter," *id.*; when "asked at the preliminary hearing if he knew at the time of the crime who the shooter was, he replied, 'yes and no,'" *id.* at 10–11 (quoting N.T. 6/3/09 at 23); and he "explained that he never saw the shooter's face because the shooter was wearing a baseball cap but that his recognition of the individual was based on '[t]he hands, the body, the shoulders'

and his ‘talk, speech,’” and “that the identification was ‘not visual,’” *id.* at 11 (quoting N.T. 6/3/09 at 24, 27).[4]

As to Mr. Smith, the Magistrate Judge noted that “at trial Detective Aaron Booker testified that he was initially a suspect himself.” *Id.* Like Mr. Clark, Mr. Smith did not initially identify Mr. Johnson as the shooter. *Id.* at 11–12. In fact, “he gave no statement concerning the crime to police until they contacted him in January 2009 while he was imprisoned on an unrelated matter.” *Id.* at 12. He testified at trial that he believed it is “‘[b]ad to talk to police,’ but that he eventually cooperated because his probation officer pressured him to do so.” *Id.* (quoting N.T. 9/29/10 at 142, 149). The Magistrate Judge also noted that Mr. Clark and Mr. Smith contradicted one another on significant aspects of the shooting, including the length of time the victim had been present on the scene prior to the shooting (30 or 35 seconds versus 25 to 30 minutes) and the distance between the shooter and the victim (two to three feet versus 11 feet). *Id.*

The Magistrate Judge also analyzed the effect of Detective McDermott’s testimony regarding Mr. Vicks’s purported identification: “In contrast to Clark’s and Curtis Smith’s testimony, the identification of Petitioner as the shooter by

---

[4] The Magistrate Judge also referred to a post-trial affidavit executed by Mr. Clark, in which he, among other things, recanted his testimony identifying Mr. Johnson as the shooter. *Id.* at 11. The sworn statements in the affidavit will presumably be covered when Mr. Clark testifies at the upcoming evidentiary hearing.

Amin Vicks, improperly admitted via a law enforcement officer, was unequivocal and seemingly devoid of self-interest: 'Dennis Johnson was the shooter.'." *Id.* at 13 (quoting N.T. 9/29/10 at 176).

After cataloguing all these problems with the eyewitness testimony and assessing the impact of Mr. Vicks's purported identification, the Magistrate Judge concluded that the state court's determination—that Vicks's improperly-admitted identification was merely cumulative of the Clark and Smith testimony—constituted an unreasonable application of *Strickland*. *See id.* ("It was not simply cumulative of Clark's and Curtis Smith's testimony; there is reason to believe that jurors would have found it more credible or compelling and not found Petitioner guilty without it.").

This Court recently ordered that a hearing be held on July 17, 2026, at which Mr. Johnson is to present testimony from Mr. Clark, Mr. Smith, and Mr. Vicks. *See* ECF Nos. 97, 110. On June 5, 2026, the Commonwealth filed its motion seeking to withdraw its response. ECF No. 118 at 7.

**DISCUSSION**

Whatever the Commonwealth believes about the arguments it made in its response, they plainly did not induce any detrimental reliance on the part of the Magistrate Judge. The Commonwealth says its "most significant error" is the following comment: "Most seriously, [Ozzie] Clark testified that he did not

visually identify Johnson—a crucial fact overlooked by the state court." *Id.* at 4 (quoting ECF No. 86 at 19). The Commonwealth now believes that this comment constitutes "an inaccurate description of [Mr. Clark's] trial testimony," and that the Magistrate Judge "appears to rely on the response's characterization of Clark's identification." *Id.* at 5.

The Commonwealth's claim that the Magistrate Judge recommended relief without understanding the central witness's trial testimony is nonsensical. For one, the Magistrate Judge quoted the Superior Court's factual recitation of the trial, which recites many of the facts the Commonwealth now believes it should have included in its response and makes clear that Mr. Clark testified at trial that he visually identified Mr. Johnson:

> Clark also testified for the Commonwealth. He had worked at his parents' business, the convenience store located at 30th Street and Lehigh Avenue, since he was a child. **Clark identified Appellant in court, indicating that he had known him for 5 or 6 years at the time of the shooting. N.T., 9/29/10, at 41.** Appellant would frequent the convenience store about once or twice a week as a customer. Clark knew Kenyatta as a frequent customer at the store as well, and further recalled that Kenyatta was a nighttime security guard at a local pool. Clark also indicated that he knew Amin Vicks and Curtis, as they were also regular customers.
>
> Clark was working alone the evening of the shooting. **He saw Curtis, Amin Vicks, and Appellant approach the store.** Kenyatta arrived at nearly the same time on a bicycle. Kenyatta purchased a few items first. **While he was taking an order for Amin Vicks or Curtis, Clark noticed Appellant holding Kenyatta at gunpoint with a chrome revolver, and rifling through the victim's pockets. Clark heard Appellant say something like, "you want to get popped,**

> **Oldhead?"** ***Id.*** **at 54. Clark believed that Appellant said this when Kenyatta resisted giving up his phone.** ***Id.*** **at 61. Immediately thereafter, Clark heard a gunshot ring out, and saw everyone run away,** including Kenyatta, who only ran for a short time before collapsing.

ECF No. 89 at 2–3 (quoting *Johnson*, 2015 WL 6169417, at *1–2) (footnotes omitted in original) (emphasis added). Accepting the Commonwealth's argument that the Magistrate Judge detrimentally relied on the Commonwealth's characterizations would require concluding that she misunderstood the very facts she included in the R. & R.

For another, the R. & R. specifies that the "not visual" testimony was given at the preliminary hearing. *Id.* at 10–11. There is no reason to believe that the Magistrate Judge was confused about the timing of this testimony.

Additionally, Mr. Clark was extensively cross-examined about his preliminary hearing testimony at trial. The cross (based on the preliminary hearing transcript) read, in part, as follows:

> Q. "QUESTION: You just said to me under oath a moment ago that when this incident happened you kind of knew who it was and you kind of didn't know who it was; is that the answer you want to stick with?"
> What's your answer to that?
>
> A. Line 4, "Correct."
>
> Q. And after you say correct, "QUESTION: How is that?
> "ANSWER: Well, you know, the identity came through talk, speech, not visual."
> Was that what you said at the preliminary hearing under oath?

A. Yes.

Q. So if it was not visual, how are you telling this jury that you identified him by his face?

A. Repeat that one.

Q. Yes, I'll repeat the question, too. Let's go back to Page 24, line 5.
"QUESTION: How was it that?
"ANSWER: Well, you know, the identity came through talk, speech, not visual."
That's your answer under oath at the preliminary hearing; is that right?

A. That's my answer.

Q. So if it's not visual, how are you telling the ladies and gentlemen of the jury, that you identified him by his face?

A. Because I'm identifying by his face when he walked up and said, what's up, O.

Q. Isn't that visual?

A. Yes.

Q. But you say here "not visual;" isn't that what it says?

A. Yes.

Q. In fact, let's go on.
"QUESTION: The identity came from walk, talk, speech, not visual"
Follow me on this part.
"So you didn't see the shooter's face?"
What's your answer?

A. Line 10 says "No."

Q. So when that question was posed under oath you said, "No, I didn't see the shooter's face?"

A. Correct.

Q. As a matter of fact it goes on.
"QUESTION: What part of the shooter's body did you see?
"ANSWER: Hands, the body, the shoulders."
Is that right?

A. Correct.

N.T. 9/29/10 at 98–100. The "not visual" preliminary hearing testimony was therefore part of the trial record before the Magistrate Judge.[5]

Lastly, the Commonwealth finds fault with its response because it "does not mention that in Clark's initial police statement, given shortly after the crime, he described the shooter as 'clean shaven,' meaning that he saw the shooter's face." ECF No. 118 at 5. But the Commonwealth neglects to mention critical facts related to Mr. Clark's initial statement, given hours after the murder; namely, that Mr. Clark did not initially identify Mr. Johnson, whom he had known for years, and instead told police that he had never seen the shooter before. *See* ECF No. 80-1 at

---

[5] Mr. Clark was similarly cross-examined at trial about his preliminary hearing testimony that the shooter was wearing a baseball cap, which "gave [him] a reason to pause." N.T. 9/29/10 at 124. While this conflicted with Mr. Clark's trial testimony, *id.* at 125, it was also part of the trial record.

13 (8/17/07 Clark police statement); *see also* ECF No. 89 at 10 ("Clark did not initially identify the shooter to police." (citing N.T. 9/29/10 at 68)).

The Commonwealth also fails to mention that when presented with Mr. Johnson's photograph in a photo array in May 2008, Mr. Clark did not identify Mr. Johnson as the shooter. N.T. 9/29/10, 79 (quoting from the photo array: "On Saturday 17th of May, 2008, at 5:15 a.m., array shown to witness Ozzie Clark. No identification made."); *see also id.* at 177 (Detective McDermott's testimony about Mr. Clark's non-identification of Mr. Johnson); ECF No. 89 at 10 ("Nor did he select Petitioner from a photo array shown to him by Philadelphia Detectives in May 2008." (citing N.T. 9/29/10 at 80)). It is therefore difficult to imagine how a reference to the "clean shaven" comment would have bolstered Mr. Clark's identification of Mr. Johnson.

Based upon this record, the Magistrate Judge's characterization of Mr. Clark's testimony as "shaky, at best," ECF No. 89 at 12, is well-supported. There is no reason to believe that she was unaware of any material facts or that a new response would change any aspect of the R. & R. with respect to the reliability of Mr. Clark's testimony.

The Commonwealth notes two additional errors in its response; namely, its comments that "[a]t trial, [Clark's] only explanation for the delay [in identifying Johnson] was that he felt a sense of civic duty to come forward," and that "[Curtis

Smith's] probation agent pressured him to cooperate in the hope that [Smith] would be able [to] make a deal for less prison time." ECF No. 118 at 6–7 (internal citations omitted). But as the Commonwealth notes, each of these misstatements was identified by the Magistrate Judge in the R. & R. *Id.* Her decision to recommend that relief be granted was thus made with full awareness of the accuracy of these two comments.

The Commonwealth's final desired retraction is its comment that "[t]he state court's failure to acknowledge key facts rendered its adjudication of the prejudice prong of *Strickland* unreasonable." ECF No 118 at 7 (internal citation omitted). The Commonwealth now asserts that it should have discussed footnote 6 of the Pennsylvania Superior Court opinion in conjunction with this statement. *Id.* Footnote 6 reads as follows:

> Appellant argues that "the Amin Vick[s] identification was the strongest one presented by the Commonwealth" because it was the only unimpeached identification of Appellant as the shooter. Appellant's Brief at 25. Appellant does not cite to any portion of the record where this statement was repeated, nor has he identified where in the record the Commonwealth relied upon this statement. Indeed, our review of the Commonwealth's closing argument reveals that Amin Vick was only mentioned once, in passing, and that the statement in question was never referenced. Accordingly, Appellant's characterization that the Amin Vick[]s statement was the strongest evidence against Appellant is simply belied by the record.

*Johnson*, 2015 WL 6169417, at *7 n.6.

Again, it is difficult to understand how discussion of this footnote, of which the Magistrate Judge was undoubtedly aware, would have changed anything. The Magistrate Judge did not find prejudice because the Vicks identification was the most extensive or heavily relied upon; it plainly was not. The Magistrate Judge instead determined that, "[i]n contrast to Clark's and Curtis Smith's testimony, the identification of Petitioner as the shooter by Amin Vicks, improperly admitted via a law enforcement officer, was unequivocal and seemingly devoid of self-interest: 'Dennis Johnson was the shooter.'" ECF No. 89 at 13 (quoting N.T. 9/29/10 at 176). The Magistrate Judge's R. & R. concluded that the Vicks statement "was not simply cumulative of Clark's and Curtis Smith's testimony" and that "there is reason to believe that jurors would have found it more credible or compelling and not found Petitioner guilty without it"; such conclusion would not have been affected by discussion of footnote 6. *Id.*

Additionally, the Commonwealth's assertion that, in footnote 6, "the Superior Court rejected Johnson's argument that Vicks's identification was 'the only unimpeached identification of [Johnson]'" is inaccurate. *See* ECF No. 118 at 2. The Superior Court instead rejected Mr. Johnson's argument that the Vicks identification was the "strongest" evidence against Mr. Johnson, because the Commonwealth did not repeat or rely upon it. *Johnson*, 2015 WL 6169417, at *7 n.6 ("Appellant's characterization that the Amin Vick[]s statement was the

strongest evidence against Appellant is simply belied by the record.”). The Superior Court did not address Mr. Johnson’s contention that the statement was unimpeached.

## CONCLUSION

Mr. Johnson takes no position on the Commonwealth’s motion to withdraw its response. He instead simply states what the record already makes clear—namely, that the Magistrate Judge issued a reasoned report and recommendation that clearly did not rely on any Commonwealth’s “misstatements” in reaching the conclusion that Mr. Johnson was deprived of his Sixth Amendment right to effective counsel and recommending that he be granted a new trial.

Respectfully submitted,

/s/ Aren Adjoian
Aren Adjoian
Federal Community Defender Office
for the Eastern District of Pennsylvania
The Curtis, Suite 545-W
601 Walnut Street
Philadelphia, PA 19106
(215) 928-0520

/s/ Nilam A. Sanghvi
Nilam A. Sanghvi
The Pennsylvania Innocence Project
1515 Market Street, Suite 300
Philadelphia, PA 19102
(215) 204-4255

/s/ Amelia R. V. Maxfield
Amelia R. V. Maxfield
The Exoneration Project
126 C St. NW, Floor 2
Washington, DC 20001
(771) 221-0441

Dated: June 12, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on this date I caused the forgoing document to be served upon the following individuals via this Court's ECF System:

David J. Napiorski
Steven J. Wildberger
Peter F. Andrews
Katherine Ernst
Philadelphia District Attorney's Office

Susan E. Affronti
Catherine Kiefer
Pennsylvania Office of the Attorney General

/s/ Amelia R.V. Maxfield
Amelia R.V. Maxfield

Dated: June 12, 2026