# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DENNIS JOHNSON,** | : | **CIVIL ACTION** |
| *Petitioner* | | |
| | | |
| **v.** | : | |
| | | |
| | | |
| **SCOTT NICKELSON, et al.,** | : | **NO. 15-4965** |
| *Respondents* | | |

### OFFICE OF ATTORNEY GENERAL'S REPLY TO CONFLICT NOTICES

The Pennsylvania Office of Attorney General ("OAG") respectfully submits the following reply to the recent filings by Assistant District Attorneys ("ADAs") and the Philadelphia District Attorney's Office ("DAO") regarding conflicts. As described in detail below, those filings further highlight the divergent views on the parameters on the conflict of interest and underscore the need for factfinding during an evidentiary hearing. OAG therefore requests that the Court schedule the second-half of the ongoing hearing to resolve these issues prior to addressing the merits of the pending habeas petition.

On July 24, 2026, the Court ordered the parties to respond to the Notice of Conflict filed by ADAs (Doc. No. 135) and the DAO's Response to Notice of Conflict (Doc. No. 138) by July 28, 2026 if they wished to do so.  Doc. No. 139.  To be clear, OAG takes no position on either the Notice of Conflict or the Response to Notice of Conflict. However, OAG observes that the Notice of Conflict and the Response to Notice of Conflict present competing factual representations and legal arguments advanced by individual ADAs and the DAO that remain unresolved.  As the Court previously noted

in its June 30, 2026 Order, the Court "cannot address the merits of the § 2254 Petition until I have determined what has been alleged and argued by the DAO and its attorneys, what representations have been made to the Court, and what has actually occurred." Doc. No. 127 at 4-5. OAG concurs with the Court's prior assessment, which is even more appropriate now.

In addition, a hearing remains appropriate so that the Court can assess actual and apparent conflicts of interest with the benefit of witness testimony. The Court's June 30, 2026 Order anticipated live testimony from ADAs Ernst and Wildberger, among others. Doc. No. 127 at 5. In their Notice of Conflict, ADAs Ernst and Wildberger state that they "stand ready to testify as ordered by this Court." Doc. No. 135 at 3 fn. 3. Their testimony, and the testimony of others, will assist the Court in resolving actual or apparent conflicts of interest so that the merits of the pending habeas petition can be addressed.

The Notice of Conflict also states that the ADAs "have since been advised by an attorney that the deliberative process privilege does not apply under these circumstances." Doc. No. 135 at 2 fn. 2. In contrast, the DAO asserts that the deliberative process privilege applies to "any privileged communications." Doc. No. 138 at 8 fn. 13. OAG struggles to respond to this broad assertion because generalized assertions, such as the one made here, are insufficient. Rather, the party asserting privilege must provide both "a specific designation and description of the documents claimed to be privileged" as well as "precise and certain reasons for preserving the confidentiality of the communications." *United States v. O'Neill*, 619 F.2d 222, 226

2

(3d Cir. 1980) (quotations omitted); *see Redland Soccer Club, Inc. v. Dept. of Army*, 55 F.3d 827, 854 (3d Cir. 1995) (to meet initial burden of showing that deliberative process privilege applies, "government must present more than a bare conclusion or statement that the documents sought are privileged"); *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990) (attorney-client privilege must be asserted document by document, rather than as a single, blanket assertion.). Given the impermissibly generalized nature of the DAO's assertion, OAG can only offer the following broad guidelines.[1]

The deliberative process privilege permits the government to withhold documents containing confidential deliberation of law- or policy-making[2] and "should be

---

[1] Even when properly invoked as to a specific document, courts in the Third Circuit have rejected claims to the privilege when improperly presented. Such assertions have been rejected where "there was no indication here that the department heads made the type of personal careful examination which must precede invocation of the privilege" and provided both "a specific designation and description of the documents claimed to be privileged" as well as "precise and certain reasons for preserving the confidentiality of the communications." *O'Neill*, 619 F.2d at 226 (quotations omitted). "Usually, such claims must be raised by affidavit." *Id.* "In an affidavit, the department head can offer context to the claim of privilege and explain *why* disclosure of specific material would be contrary to the deliberative-process privilege's animating purpose." *Smith v. Rogers,* No. 3:15-CV-264, 2017 WL 2937957, at *5 (W.D. Pa. July 10, 2017) (emphasis in original).

[2] Courts have recognized a distinction between documents that illustrate the formulation of "important public policy" and documents that illustrate "the making of any decision by a public official." *Reid v. Cumberland Cnty.*, 34 F. Supp. 3d 396, 406 (D.N.J. 2013) (relying on *Kelly v. City of San Jose*, 114 F.R.D. 653, 658 (N.D. Cal. 1987). This is because a body of privilege that sweeps so broadly that virtually every datum created by government is presumptively shielded from disclosure is contrary to the general idea of public access to governmental decisions. *See Carter v. City of Philadelphia*, 2000 WL 632988, at *1, *3 (E.D. Pa. May 5, 2000) (finding that documents generated by the Philadelphia Police Department and Philadelphia District Attorney's Office in an underlying criminal case were not protected by the

narrowly construed." *Redland Soccer Club*, 55 F.3d at 853, 856. The privilege is a qualified privilege. The government has the burden of showing privilege at this first step, and "must present more than a bare conclusion or statement that the documents sought are privileged." *Id.* at 854. After the government makes a sufficient showing of entitlement to the privilege, the court should balance the competing interests of the parties. *Id.* "'Strong competing interests must be weighed against the government's interest in nondisclosure. Foremost is the interest of the litigants, and ultimately of society, in accurate judicial fact finding.'" *Scott Paper Co. v. United States,* 943 F. Supp. 489, 496 (E.D. Pa. June 25, 1996), *aff'd*, 943 F. Supp. 501 (E.D. Pa. 1996) (quoting *In re Franklin National Bank*, 478 F.Supp. 577, 582 (E.D.N.Y. 1979)).[3]

Indeed, the privilege may be pierced. Many courts have held that "when the deliberations of a government agency are at issue, the Privilege is not available to bar disclosure of such deliberations." *Griffin-El v. Beard*, No. CIV.A. 06-2719, 2009 WL 1606891, at *9 (E.D. Pa. June 8, 2009) (collecting cases). So too "where there is reason to believe the documents sought may shed light on government misconduct, 'the privilege is routinely denied,' on the grounds that shielding internal government deliberations in this context does not serve 'the public's interest in honest, effective

---

deliberative process privilege in a subsequent civil rights suit challenging "the handling of the criminal case" because the documents were specific to the plaintiff and did "not reveal any broad pronouncements by the D.A.'s office that would tend to show how that office's decisions are made or its policies are formulated.").

[3] Courts are encouraged to undertake *in camera* review of the documents in order to balance parties' interests. *Redland Soccer Club*, 55 F.3d at 855.

government.'" *In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997) (quoting *Texaco Puerto Rico, Inc. v. Department of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995); *see also In re Comptroller of the Currency*, 967 F.2d 630, 634 (D.C. Cir. 1992) ("the privilege may be overridden where necessary ... to shed light on alleged government malfeasance"); *Stevens v. Sullum*, No. CV 3:20-1911, 2021 WL 2784818, at *5 (M.D. Pa. July 2, 2021) (the privilege may be overcome where "[i]mproper motivation on the part of a government agency" is at issue).

Thus, whether documents reflecting the internal DAO communications regarding the existence of a particular conflict related to litigation of particular case rises to the level of "law or policy making" is properly answered by this Court as to each piece of evidence to which the DAO asserts deliberative process privilege. So too must this Court determine, as to each assertion of privilege, whether the need for transparency regarding the DAO's communications override the assertion of privilege.

For the foregoing reasons, OAG respectfully requests that the Court schedule the second-half of the ongoing hearing to address actual and apparent conflicts of interest.

Respectfully submitted,

Criminal Appeals Section
Pennsylvania Office of Attorney General
1000 Madison Avenue, Suite 310
Norristown, PA 19403

*Catherine B. Kiefer*
CATHERINE B. KIEFER
Senior Deputy Attorney General

*John J. Boscia*
JOHN J. BOSCIA
Senior Deputy Attorney General

5

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DENNIS JOHNSON,** | : | **CIVIL ACTION** |
| *Petitioner* | | |
| | | |
| **v.** | : | |
| | | |
| | | |
| **SCOTT NICKELSON, et al.** | : | **NO. 15-4965** |
| *Respondents* | | |

## CERTIFICATE OF SERVICE

I, CATHERINE B. KIEFER, hereby certify that on July 28, 2026, a copy of the foregoing pleading was served via this Court's ECF system on counsel for petitioner and for respondents Scott Nickelson and the District Attorney of the County of Philadelphia.

*Catherine B. Kiefer*
Senior Deputy Attorney General
Pennsylvania Office of Attorney General
100 Madison Avenue, Suite 310
Norristown, PA 19403
ckiefer@attorneygeneral.gov