**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DENNIS JOHNSON<br>Petitioner,<br><br>v.<br><br>SCOTT NICKELSON, *et al.*,<br>Respondents. | CIVIL ACTION<br><br>No. 15-cv-4965 |

## RESPONSE TO MOTION FOR LEAVE FOR LIMITED PARTICIPATION OF COUNSEL AS *AMICUS CURIAE*

Pursuant to this Court's August 14, 2026 Order, ECF No. 148, Steven J. Wildberger and Katherine E. Ernst hereby respond to Jaclyn Mason's Motion for Leave for Limited Participation of Counsel as *Amicus Curiae*. ECF No. 147. In short, Wildberger and Ernst respectfully suggest that participation by counsel as *amicus curiae* is unwarranted but if permitted, such participation should be granted to them as well.[1]

Ms. Mason requests that her counsel be permitted to question witnesses as *amicus* because "[t]he DAO affirmatively placed her conduct at issue in seeking to withdraw its concession[.]" ECF No. 147

---

[1] Wildberger and Ernst were unrepresented during the first half of this hearing. As a result of unexpected aspects of Ms. Mason's testimony, Wildberger and Ernst have since retained Attorney James Schwartzman of Stevens & Lee.

(Memorandum of Law) at 7. And only Ms. Mason should be so permitted because she is "uniquely situated" as "she is the only witness whose conduct has been affirmatively placed at issue in a pleading filed with this Court and who has been expressly accused therein of making 'material misstatements.'" *Id.* at 6 n.2.[2, 3]

---

[2] Wildberger and Ernst respectfully disagree with Ms. Mason's interpretation of the Motion to Withdraw Response—it does not "expressly" accuse her of anything. The response merely identifies errors and requests to withdraw the prior response, consistent with the duty of candor to the Court. The Motion to Withdraw Response does not allocate fault for the errors, and it mentions Ms. Mason only once in a footnote acknowledging that, while she alone signed the response, Assistant District Attorney Matthew Stiegler supervised its preparation. *See* ECF No. 118 at 3 n.1. That footnote also mentions her resignation to explain why she did not sign the motion.

Additionally, while Ms. Mason testified that she did not believe that there were any material misstatements in the 2022 response, N.T. Hr'g, 7/17/26 N.T. at 59, and her instant motion continues to refer to the misstatements in the response as "alleged," ECF 147 (Memorandum of Law) at 5 n.1, she does not dispute any particular error.

[3] To be clear, Wildberger and Ernst do not seek to dispute Ms. Mason's assertion that these proceedings have adversely affected her reputation. *See* ECF No. 147 (Memorandum of Law) at 5 n.1 (citing a Philadelphia Inquirer article). But to properly understand the issues presented here, we must divest the contents of the filings from the reporting about them. Wildberger and Ernst have also been affected by reporting about this case. *See* Chris Palmer, *A former prosecutor said DA Larry Krasner's Office colluded with defense attorneys to try to overturn a murder conviction*, THE PHILADELPHIA INQUIRER, July 17, 2026,

Ms. Mason has, however, made accusations against Wildberger, Ernst, and others. Ms. Mason accused Wildberger, Ernst, and others of withdrawing the prior response in some effort to conceal the process by which the 2022 response came about. *See, e.g.*, N.T. Hr'g, 7/17/26 at 59. Wildberger and Ernst vehemently deny that allegation. But that allegation proves that Ms. Mason is not "uniquely situated." Rather, under Ms. Mason's rationale, her allegation against Wildberger and Ernst necessitates that their counsel be permitted to question witnesses as well.

Ms. Mason further observes that the current parties to the litigation—the Pennsylvania Office of Attorney General (OAG), the Philadelphia District Attorney's Office (DAO), and petitioner—do not represent her interests. ECF No. 147 (Memorandum of Law) at 1. The same is true of Wildberger and Ernst, particularly regarding the DAO.

As this Court is aware, when Wildberger and Ernst withdrew their appearances, they alerted the Court that, in their best professional judgment, the DAO may have a conflict of interest in this case. ECF No.

---

https://www.inquirer.com/crime/philadelphia-district-attorney-murder-conviction-overturn-collusion-20260717.html.

123. After the first half of this hearing, Wildberger and Ernst again alerted the Court to the conflict because "the conflict they perceive to be burdening the DAO has not been remedied[.]" ECF No. 135.[4]

The DAO responded. ECF No. 138. It accused Wildberger and Ernst of being "ill-informed" and characterized their Notice of Conflict as "inappropriately filed[.]" *Id.* at 1. The DAO also asserted the deliberative process privilege, attempting to shield from this Court's consideration the documents and discussions that informed Wildberger's and Ernst's belief that a conflict of interests exists. *Id.* at 8. The DAO, thus, clearly does not represent Wildberger's and Ernst's interests.

For these reasons, if the Court grants Ms. Mason's request for counsel to question witnesses, Wildberger and Ernst respectfully request that they be granted the same.

That being said, Wildberger and Ernst object to Ms. Mason's request, as they do not believe that counsels' participation as *amicus* is necessary or appropriate. Wildberger and Ernst have been unable to find

---

[4] Consistent with recently issued guidance, Wildberger and Ernst sought to provide the Court with adequate information for it to understand the basis of the conflict while reserving for their testimony any additional information the Court may require. *See* ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 524 (2026) (attached).

a single case in which a witness's lawyer has been permitted to ask other witnesses questions to protect that witness's professional reputation, and Mason provided none.

Moreover, Wildberger and Ernst anticipate that the other counseled witnesses will make a similar request. Ms. Mason has, after all, made allegations against them as well. If granted, that would result in nine attorneys (representing the six counseled witnesses, the DAO, the OAG, and petitioner) questioning witnesses. Such cumbrous questioning is unnecessary. This Court has made clear the issues it seeks to explore. *See* ECF No. 127. Wildberger and Ernst believe that the existing parties are capable of eliciting testimony necessary to answer any questions the Court has. If this Court were to permit Ms. Mason's counsel to question witnesses, however, it should likewise permit Wildberger's and Ernst's counsel to do so.

Respectfully submitted,

/s/
KATHERINE E. ERNST

/s/
STEVEN J. WILDBERGER

## CERTIFICATE OF SERVICE

I, Katherine Ernst, certify that on August 19, 2026, I served a copy of this response on all counsel of record via the Court's CM/ECF system.

*/s/*

KATHERINE E. ERNST

AMERICAN BAR ASSOCIATION
STANDING COMMITTEE ON ETHICS AND PROFESSIONAL RESPONSIBILITY

**Formal Opinion 524** **July 22, 2026**

**Government Lawyers' Obligations When Knowing of a Public Official's Intended or Ongoing Violation of Law**

*Model Rules of Professional Conduct 1.13(b) and (c) guide lawyers employed or retained by an organization when they know of intended or ongoing violations of law or other legal obligations by representatives of the organization that, depending on the circumstances, are likely or reasonably certain to result in "substantial injury to the organization." This Opinion addresses when these provisions may be implicated for a lawyer representing the government because the lawyer knows of a government officer's or employee's violation of a legal obligation to the government organization or their violation of law that is likely to be, or reasonably certain to be, "imputed" to the government organization and to cause "substantial injury" to the government organization. The Opinion concludes that, with respect to government lawyers under Model Rules 1.13(b) and (c), a violation of a legal obligation or of law by an officer or employee of a government organization will be "imputed" to the organization if the officer or employee is using or misusing authority that the officer or employee possesses by virtue of their employment with the government. For purposes of these provisions, any violation of a legal obligation to the government organization or violation of law that reasonably might be imputed to a government organization will cause "injury" to the organization within the meaning of Model Rules 1.13(b) and (c), given the government's obligation to support, defend, and promote the rule of law. The government lawyer should exercise reasonable judgment regarding whether that injury is "substantial" and whether that injury may therefore trigger the permissive or mandatory reporting provisions of Model Rules 1.13(b) and (c).*

## Introduction

Model Rules 1.13(b) and (c) address the conduct of "a lawyer for an organization [who] knows that an officer, employee or other person associated with the organization is engaged in action, intends to act, or refuses to act in a matter related to the representation that is a violation of a legal obligation to the organization or a violation of law that reasonably might be imputed to the organization, and that is likely to result in substantial injury to the organization." If substantial injury is likely to result, the Rule ordinarily requires the lawyer initially to "refer the matter to higher authority in the organization,"[1] and, if warranted, to the "highest authority that can act on behalf of the organization as determined by applicable law." If the highest authority "insists upon or fails to address in a timely and appropriate manner an action or refusal to act that is clearly a violation of law," and the organization's lawyer "reasonably believes that the violation is reasonably certain to result in substantial injury to the organization," the lawyer "may then reveal

---

[1] MODEL RULES OF PROF'L CONDUCT R. 1.13(b) provides in pertinent part: "Unless the lawyer *reasonably believes that it is not necessary in the best interest* of the organization to do so, the lawyer shall refer the matter to higher authority in the organization, including, if warranted by the circumstances, to the highest authority that can act on behalf of the organization as determined by applicable law." (Emphasis supplied.)

information relating to the representation whether or not Rule 1.6 [the confidentiality rule] permits such disclosure" to an authority outside the organizational client. That information may be revealed, however, only "to the extent the lawyer reasonably believes necessary to prevent substantial injury to the organization."

Model Rules 1.13(b) and (c) apply to a lawyer representing a government organization as well as to a lawyer representing a private organization such as a corporation. However, this Committee has not previously addressed *how* these provisions apply when the lawyer represents a *government* organization, and the answer is not self-evident. In particular, the meaning of certain terms that are not defined by the Rules may be uncertain, including (1) what it means for a government officer's or employee's violation of law to be "imputed" to the government organization and (2) when a violation of a legal obligation to the organization or a violation of law will be said to "result in substantial injury" to a government organization.

This Opinion concludes that, for purposes of these provisions, a violation of a legal obligation or a violation of law by an officer, employee, or other constituent of a government organization can be "imputed" to the organization if the officer, employee, or other constituent is using or misusing authority possessed by virtue of a position with the government.

It further concludes that the injuries against which the Rule protects are not limited to financial and reputational injuries. In the case of a government organization client, virtually any violation of a legal obligation or law by a public official or other constituent that reasonably might be imputed to the government organization client may cause "injury" to the organization, given the government's obligation to support, defend, and promote the rule of law. In determining whether Rules 1.13(b) and (c) apply, the government lawyer should exercise reasonable judgment regarding whether that injury is "substantial."[2]

**Discussion**

The Model Rules, as drafted, are intended to apply to all lawyers, including lawyers for the government.[3] Lawyers who represent government organizations have professional obligations to their clients like those of other lawyers, such as the duty of competence, the duty of confidentiality, and the duty to avoid conflicts of interest, including under provisions specifically addressing government lawyers. *See, e.g.,* Model Rules 1.1, 1.6 & 1.11.[4] Further, lawyers representing the

---

[2] The principles discussed in this Opinion apply to lawyers at all levels of government – federal, state, local, and tribal. Although this Opinion refers to the laws of certain jurisdictions by way of example, it is not specifically directed at lawyers for any particular government organization.

[3] *See, e.g.*, N.Y. City Bar Ass'n Comm. on Prof'l Ethics, Op. 2025-1 (2025) (a government lawyer must abide by the professional conduct rules when representing the government, even if doing so is contrary to the direction of a supervising lawyer); *In re Sponsel,* 566 P.3d 960 (Az. 2025) (sanctioning prosecutor under multiple rules of professional conduct, finding that she violated her duties to the public and the justice system, including "[b]y bringing charges without first reviewing the evidence, and by failing to review the charges as the litigation progressed").

[4] Even when lawyers are not representing a client, they have obligations under the professional conduct rules that may be applicable. *See, e.g.*, MODEL RULES OF PROF'L CONDUCT R. 8.1-8.4; *see generally* ABA Comm. on Ethics & Pro. Resp., Formal Op. 518, at 1-2 (2025) (noting that Model Rules 8.1-8.4 "govern lawyers' conduct regardless of whether the lawyer is serving in a representational role"); ABA Comm. on Ethics & Pro. Resp., Formal Op. 509, at 3

government have obligations to their government organizational clients under Rule 1.13 just as in the case of lawyers who represent private organizations. *See* Model Rule 1.13, cmt. [9] ("The duty defined in this Rule applies to governmental organizations."); Restatement (Third) of the Law Governing Lawyers § 97(2) (2000) (A lawyer representing a governmental client must proceed "as stated in §§ 96(2) and 96(3) [similar to Model Rules 1.13(b) and (c)] with respect to an act of a constituent of the governmental client that violates a legal obligation that will likely cause substantial public or private injury or that reasonably can be foreseen to be imputable to and thus likely result in substantial injury to the client."). Although government lawyers often have additional legal obligations that overlap with their obligations under the professional conduct rules,[5] those legal obligations rarely, if ever, preempt government lawyers' professional obligations but apply in addition to those other obligations.

Like other lawyers for an organization, lawyers employed or retained by the government may be required or permitted to make certain disclosures under Rules 1.13(b) and (c) in certain prescribed circumstances when they know that public officials or employees in their organizations are engaged or intend to engage in action that violates a legal obligation to the organization. Rule 1.13 (b) provides:

> If a lawyer for an organization knows that an officer, employee or other person associated with the organization is engaged in action, intends to act or refuses to act in a matter related to the representation that is a violation of a legal obligation to the organization, or a violation of law that reasonably might be imputed to the organization, and that is likely to result in substantial injury to the organization, then the lawyer shall proceed as is reasonably necessary in the best interest of the organization. Unless the lawyer reasonably believes that it is not necessary in the best interest of the organization to do so, the lawyer shall refer the matter to higher authority in the organization, including, if warranted by the circumstances, to the highest authority that can act on behalf of the organization as determined by applicable law.

Rule 1.13(c), in turn, allows for permissive disclosure outside of the organizational client when the circumstances articulated in the Rule are present. It provides:

> Except as provided in paragraph (d),[6] if
>
> (1) despite the lawyer's efforts in accordance with paragraph (b) the highest authority that can act on behalf of the organization insists upon or fails

(2024) (noting that ABA Model Rule 1.11(c) "applies irrespective of whether lawyers served in a representational capacity when they acquired the confidential government information").

[5] As noted in recent ABA Formal Op. 509, "[l]awyers representing a public or government entity or officials have the same confidentiality obligations as lawyers for private individuals and private entities, although statutes and regulations may establish additional confidentiality obligations." ABA Comm. on Ethics & Pro. Resp., Formal Op. 509 (year) at 2; *see also In re* McCarty, 716 S.W.3d 245 (Mo. 2025).

[6] MODEL RULES OF PROF'L CONDUCT R. 1.13(d) provides that paragraph (c) "shall not apply with respect to information relating to a lawyer's representation of an organization to investigate an alleged violation of law, or to defend the organization or an officer, employee or constituent associated with the organization against a claim arising out of an alleged violation of law."

to address in a timely and appropriate manner an action, or a refusal to act, that is clearly a violation of law; and

(2) the lawyer reasonably believes that the violation is reasonably certain to result in substantial injury to the organization, then the lawyer may reveal information relating to the representation whether or not Rule 1.6 permits such disclosure, but only if and to the extent the lawyer reasonably believes necessary to prevent substantial injury to the organization.

These provisions may apply when a government organization's lawyer knows of a government actor's conduct that may be either (1) "a violation of a legal obligation to the organization" or (2) "a violation of law that reasonably might be imputed to the organization." This Opinion addresses the meaning and application of Rules 1.13(b) and (c) in situations in which a lawyer for the government knows that a government officer or employee, using or misusing authority they possess by virtue of their position with the government, is engaged or plans to engage in conduct in violation of a legal obligation or of law on behalf of the government, so that the government may become, in effect, a lawbreaker.[7] This may include where the government representatives' actions will be violating a constitutional provision, a statutory or regulatory provision, or a court order. Among the questions presented will be whether the violation "might be imputed to the organization" and whether the violation is likely or reasonably certain "to result in substantial injury to the organization."

Two threshold questions raised by this scenario must be considered by a lawyer retained or employed by the government. First, there is the question whether the lawyer is employed in a representational capacity. As in private organizations, lawyers in government may serve in various roles, not all involving a lawyer-client relationship. A lawyer retained or employed by the government may hold a position that does not involve serving as a lawyer for the government organization as a client. To the extent the lawyer is not acting in a representative capacity, the rules governing a lawyer-client relationship, including Rule 1.6 and Rule 1.13, do not apply. Whether the lawyer serving in a nonrepresentational capacity may or must disclose information about government illegality to authorities in the government organization or to others may be dictated by internal regulations or other law, but it will not be dictated by Rules of Professional Conduct governing the lawyer-client relationship.

The second threshold question will be: "who is the client?". Where the lawyer is serving in a representative capacity as a lawyer for a government organization, then the lawyer is subject to the

---

[7] This Opinion does not address a government lawyer's professional obligations under the Model Rules when the government organization is bringing a good faith challenge to the relevant law or court order. *See, e.g.*, MODEL RULES OF PROF'L CONDUCT R. 3.1 (forbidding a lawyer from bringing or defending a proceeding or asserting or controverting an issue therein "unless there is a basis in law and fact for doing so that is not frivolous"). Nor does it address the government lawyer's responsibilities under other provisions of the Model Rules to avoid assisting in unlawful conduct. *See, e.g.*, MODEL RULES OF PROF'L CONDUCT R. 1.2(d) (forbidding a lawyer from assisting a client "in conduct that the lawyer knows is criminal or fraudulent"); MODEL RULES OF PROF'L CONDUCT R. 1.16(a)(1) (forbidding representation that "will result in violation of the Rules of Professional Conduct or other law"). When a government representative seeks a government lawyer's assistance in conduct that may be unlawful, the lawyer should consider whether these provisions may be applicable.

rules governing the lawyer-client relationship, including Rule 1.13. The client's identity may not always be obvious and is an issue beyond the scope of the Model Rules. *See* Model Rule 1.13, cmt. [9] ("Defining precisely the identity of the client . . . may be more difficult in the government context and is a matter beyond the scope of these Rules."). Government lawyers can represent a government entity as a whole (*e.g.*, the United States of America, a particular state, or a particular town or county), or a branch of government (*e.g.*, the executive branch, the legislature, or the judiciary), or one or more government agencies.[8]

The question is important in this context, in part, because Rule 1.6, the confidentiality rule, restricts a lawyer from disclosing "information relating to the representation of a client" to third parties without the client's informed consent, but it does not restrict the disclosure of such information to the client. On the contrary, in many situations, the lawyer has an obligation to disclose information to the client. *See* Rule 1.4; *see also* Rule 1.1 & Rule 2.1. In the case of an organizational client, the lawyer's disclosure of information relating to the representation to others *within* the organization does not necessarily implicate or run afoul of Rule 1.6. It is important therefore to identify the client in order to know whether another person is an officer or employee who can be considered a non-client constituent of the client organization.

Under the Model Rules, a lawyer representing a government organization who learns of misconduct *may* always raise the issue *within* the organization, consistent with Rule 1.4 [9] and Rule 2.1,[10] which address the lawyer's communications with, and advice to, the client. This is true even if the lawyer suspects but does not "know" of wrongdoing that falls within Rule 1.13(b). A government lawyer may (and perhaps in some cases, must) go up-the-ladder (*i.e.*, report to higher-ups within the organization), even when Rule 1.13(b) does not require it, because reporting up-the-ladder does not disclose protected information *to a third party* and therefore does not require the client's "informed consent" or implied authorization under Rule 1.6(a).[11] For example, if a government lawyer discloses information to the governor of the state regarding wrongdoing by a state agency, Rule 1.6 will be implicated if the client is only the state agency but not if the client is the state. *Accord* Model Rule 1.13, cmt. [9] ("[If] the action or failure to act involves the head of a bureau, either the department of which the bureau is a part or the relevant branch of government may be the client for purposes of the rule."). Rule 2.1 requires that when serving as

---

[8] MODEL RULES OF PROF'L CONDUCT R. 1.13, cmt. 9.

[9] MODEL RULES OF PROF'L CONDUCT R. 1.4(b) includes, among other things, a duty to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." As we recently noted, the Rule "builds on lawyers' legal obligations as fiduciaries, which include 'the duty of an attorney to advise the client promptly whenever he has any information to give which it is important the client should receive.'" ABA Comm. on Ethics & Pro. Resp., Formal Op. 512, at 8 (2024) (quoting *Baker v. Humphrey*, 101 U.S. 494, 500 (1879)). Like other lawyers, government lawyers owe fiduciary duties to their clients as well as duties under the professional conduct rules and other law.

[10] MODEL RULES OF PROF'L CONDUCT R. 2.1 cmt. [1] requires a lawyer to "exercise independent professional judgment and render candid advice. In rendering advice, a lawyer may refer not only to law but to other considerations such as moral, economic, social and political factors, that may be relevant to the client's situation." This means providing "straightforward advice expressing the lawyer's honest assessment."

[11] Although this Opinion focuses on Model Rule 1.13, government lawyers may have other sources of obligations to report constituents' wrongdoing to higher-ups in the organization, such as obligations established by statutes or regulations, internal policy, fiduciary duties, or other rules. Rule 1.13 simply establishes one minimal disclosure obligation. Even absent such an obligation, the Model Rules permit government lawyers to go up-the-ladder and Rule 1.6 would not be an impediment.

advisors, government lawyers, like other lawyers, must provide clients their candid view of the law and facts, not the view most favorable to the client's interests. This role differs from that of an advocate who often may take positions on the law and facts that are unlikely to prevail but are not frivolous. See Rule 3.1.

When a lawyer representing the government believes that a government officer or employee may be acting on behalf of the government in violation of law, Rule 1.13 may apply.[12] The government lawyer's possible obligation to bring a situation to the attention of a higher authority arises under paragraph (b) where the lawyer "knows that an officer, employee or other person associated with the organization is engaged in action, intends to act or refuses to act in a matter related to the representation that is a violation of a legal obligation to the organization, or a violation of law that reasonably might be imputed to the organization, and that is likely to result in substantial injury to the organization." Likewise, paragraph (c), which authorizes an organization's lawyer, including a government lawyer, to disclose information to an authority *outside* the organization, arises in prescribed circumstances when the lawyer knows of such misconduct by a representative of the organization. Specifically, paragraph (c) is triggered if "despite the lawyer's efforts in accordance with paragraph (b) the highest authority that can act on behalf of the organization insists upon or fails to address in a timely and appropriate manner an action or a refusal to act, that is clearly a violation of law, and . . . the lawyer reasonably believes that the violation is reasonably certain to result in substantial injury to the organization."

Issues of interpretation may be raised under these provisions. One issue is whether the lawyer "knows" the information is sufficient to trigger these provisions. "Knows" is a defined term: Rule 1.0(f) explains that it "denotes actual knowledge of the fact in question. [However,] a person's knowledge may be inferred from the circumstances." Government lawyers may have greater obligations or opportunities than lawyers for private organizations to question and ascertain the legality of officers' and employees' conduct in a matter. *See* Model Rule 1.13, cmt. [9] ("[I]n a matter involving the conduct of government officials, a government lawyer may have authority under applicable law to question […] [the] conduct [of a government official] more extensively than that of a lawyer for a private organization in similar circumstances.").

Issues of interpretation also arise because both provisions rely on two undefined terms. The first is "imputed to the organization." The concept of imputation arises in multiple areas of the law, such as when ascertaining a party's income in an action for child support or spousal maintenance,[13]

[12] Although this Opinion focuses on interpretive questions arising under Model Rules 1.13(b) and (c), a government lawyer must take account of other potentially applicable Rules. For example, Comment [6] to ABA Model Rule 1.13 notes that this Rule "does not limit or expand the lawyer's responsibility under Rules 1.8, 1.16, 3.3 or 4.1." And, as suggested above, in order to render reasonable and candid advice to the government organization under ABA Model Rules 1.4 and 2.1, a government lawyer may sometimes be required to advise or communicate with an appropriate authority within the organization regarding government conduct involving actions including fraud, waste, abuse, or illegality, regardless of whether Rule 1.13(b) also applies. Further, as noted later in this Opinion, sources other than the professional conduct rules may establish a government lawyer's discretion or obligation to disclose government conduct involving actions including fraud, waste, abuse, or illegality to a public official within or outside the government organization that the lawyer represents.

[13] *See, e.g.*, *In re* Dow & Dow, 169 A.3d 960, 963 (N.H. 2017) (holding that trial court erred in not imputing income as required by statute); Petrzelka v. Goodwin, 461 P.3d 1134 (affirming imputation of income).

when assigning accomplice liability in criminal law,[14] when bankruptcy courts impute the fraud of a non-debtor partner to a debtor,[15] and when assigning civil or criminal liability to an organization for the acts of its employees or officers.[16] The Committee's task differs from these examples, however: we must interpret the meaning of imputation in the context of Rule 1.13, which concerns a lawyer's responsibilities when representing a government organization. In that context, we construe "imputed to the organization" broadly for two reasons. First, a broad interpretation aligns with the meaning of imputation elsewhere in the Rules. For example, when one lawyer in a firm has a conflict of interest, Rule 1.10(a) imputes that conflict to all other lawyers in the same firm, subject to certain exceptions detailed in the Rule, without requiring proof that those lawyers knew or should have known of the conflict.[17] Second, Rule 1.13 is intended to protect the organization from substantial injury and, as explained below, "injury" should be construed broadly in the case of a government organization. It follows that imputation to a government organization should be construed broadly as well. Accordingly, for purposes of Rules 1.13(b) and (c), action or inaction by an officer, employee, or other constituent will be imputed to the organization when that person is using or misusing authority that the person possesses by virtue of a position with the government.[18]

The second undefined term that is central to both provisions is the term "substantial injury." Rule 1.13(b) may require a government lawyer to disclose a public official's "violation of a legal obligation or law that reasonably might be imputed to the organization" – *i.e.*, that would be, in effect, a violation of law by the government organization itself – only if the violation "is likely to result in *substantial injury* to the organization." (Emphasis added.) Rule 1.13(c) also may permit a government lawyer to disclose a violation outside the organization only if the violation "is reasonably certain to result in *substantial injury* to the organization." (Emphasis supplied.) Therefore, the application of these provisions turns on understanding when a violation causes a "substantial injury" to the organization, not just to others. A government lawyer must first assess whether there is an "injury." Then, if an injury exists, whether the injury is "substantial."

For a government organization, as with a private organization, "injury to the organization" may include something other than direct financial injury. For example, a violation of a legal obligation or violation of law that subjects the organization to legal liability would likewise cause injury, and

---

[14] *See, e.g.*, State v. Thompson, 647 S.E.2d 702, 706 (S.C. Ct. App. 2007) (affirming conviction based on acts imputed to defendant under theory of accomplice liability).

[15] *See* Strang v. Bradner, 114 U.S. 555, 556-61 (1885) (holding that the fraud of a non-debtor partner may be imputed to the debtor, and the debt declared non-dischargeable, without regard to the debtor's participation in or knowledge of the wrongdoing); *see also* Casablanca Lofts LLC v. Abrham, 436 B.R. 530, 537 (N.D. Ill. Bnkr. Aug. 30, 2010) (following *Strang*).

[16] *See, e.g.*, Guiga v. JLS Constr. Co., 255 A.D.2d 244, 245 (N.Y. App. Div. 1998) (holding that trial court properly imputed employee's negligence to employer based on respondeat superior principles); Schaefer v. RCP Assocs., 649 N.Y.S.2d 13, 14 (N.Y. App. Div. Oct. 24, 1996) (affirming denial of motion to set aside jury verdict imputing employee's negligence to employer).

[17] As noted above, a lawyer's duty to report under Rule 1.13(b) arises only when the lawyer knows of a violation or potential violation that satisfies the Rule's criteria. That knowledge requirement, however, does not apply to the separate question whether the violation may be imputed to the government organization in the first instance.

[18] We emphasize that our interpretation of imputation is limited to construing Rule 1.13 and its application to the representation of a government organization. We do not purport to address imputation in other areas of the law, such as holding employers responsible for employee misconduct or holding a corporation liable in tort for the act of an employee or officer. As explained above, those are distinct inquiries.

perhaps "substantial injury," even if financial damages will not ensue. Similarly, a constituent's violation of a legal obligation to the organization may be considered to have resulted in substantial injury to the organization even if the direct financial damages are immaterial. Reputational harm may also constitute injury for any organization, and, if serious enough, may constitute "substantial injury."

When assessing whether a violation may cause "injury to the organization," government lawyers are differently situated from lawyers representing private organizations because of the unique interests and obligations of the government.[19] In the case of a government organization, the term "injury" should be construed broadly to include harms in addition to financial and other harms that are likely to be more relevant to private organizations. Unlike a private organization or entity, a government entity's interests are not primarily financial ones. In particular, the lawful functioning of government should be at least as significant to the government organization and to the public officials who run it or oversee it as the government organization's financial interests.

Government organizations have a significant interest in the fair administration of justice and in protecting and preserving the rule of law. The government must set an example, itself complying with the legal obligations, even seemingly minor ones, that apply to it. As Justice Brandeis put it: "If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy."[20] Thus, in the context of representing the government, the word "injury" includes harm to the rule of law.

The credibility of government depends on its own compliance with the law. And the rule of law presupposes that no one – and no organization – is above the law. For these reasons and more, a violation of law that is imputed to the government organization – in other words, government lawbreaking or lawlessness – causes injury not only to any third parties who are victims of the violation, but also to the public's trust in government, and ultimately to the government organization itself.[21] Given the opportunity, public officials in authority should ordinarily be expected to address violations of legal obligations or of law that would be imputed to the

---

[19] *See, e.g.*, Berger v. United States, 295 U.S. 78 (1935) ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.").

[20] Olmstead v. United States, 277 U.S. 438, 485 (1928) (Brandeis, J., dissenting). *See also* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 97 (2000) cmts. (b) ("[T]he goals of a governmental client necessarily include pursuit of the public interest, as identified by law and as determined by decisions of government officials in the course of their duties.") and (f) ("A government lawyer may occasionally bear special disabilities or obligations because of responsibility to maintain public trust in government. Thus, courts and disciplinary agencies commonly apply more exacting standards of conduct for government lawyers and occasionally exercise discretion to impose harsher sanctions when a violation of such standards is found.").

[21] Consequently, a violation of law by the government that harms members of the public, financially or otherwise, will also injure the government both by undermining its objective to uphold the law and by eroding the public's trust. *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 97 cmt. j ("Unlawful acts of a governmental official may also violate the nonproprietary rights of third persons-such as depriving them of the right to vote or of the right to be free of racial or gender discrimination."); *see, e.g., In re* Sponsel*,* 566 P.3d at 960 (Sup. Ct. Az. 2025) (finding that prosecutor's misconduct damaged faith in the legal system, office morale, and the prosecutor's office's reputation for integrity). Comment j to Section 97 of the Restatement also notes that "[w]hen a lawyer is required to act to protect the best interests of a government client…, those interests are defined with reference to applicable constitutional, statutory, and regulatory definitions of the objectives and responsibilities of the governmental client."

government organization, even if the direct legal consequences to the organization would be insignificant. As a consequence, Rule 1.13 may impose more demanding disclosure obligations on government lawyers than on lawyers for private organizations. *Cf.* Model Rule 1.13, cmt. [9] ("[W]hen the client is a governmental organization, a different balance may be appropriate between maintaining confidentiality and assuring that the wrongful act is prevented or rectified, for public business is involved.").

As for the concept of what is a "substantial" injury, the Rules and accompanying Comments provide some general guidance, not specifically directed at government lawyers, that bears on the meaning of this term for purposes of Model Rule 1.13. The terminology section explains that "'[s]ubstantial' when used in reference to degree or extent denotes a material matter of clear and weighty importance." ABA Model Rule 1.0(l). As a general matter, in deciding how to proceed under Rule 1.13, lawyers are advised to "give consideration to the seriousness of the violation and its consequences, the responsibility in the organization and the apparent motivation of the person involved, [and] the policies of the organization concerning such matters." Model Rule 1.13, cmt. [4]. This suggests that harm must have significant consequences for the organization. Again, given the unique obligations of the government lawyer to maintain the public trust, the analysis of the meaning of "substantial" differs from that of a lawyer representing a private sector organization.

As is the case for a lawyer representing a private organization, determining whether an injury is "substantial" will require a government lawyer's exercise of reasonable professional judgment based on all the relevant facts.[22] For a government organization, as for a private organization, Rule 1.13(b) or (c) may be triggered if direct financial injury caused by a violation of law is "substantial." However, unlike in the private sector, in the context of representing the government, a relatively small financial loss may cause "substantial injury to the organization." "The public interest in the integrity of government may reasonably lead a lawyer to conclude, for example, that misappropriation of a small sum warrants remedial action for the government that might not be warranted for a nongovernmental client."[23] The term should be interpreted and applied in light of Rule 1.13's purpose, which is to require or authorize disclosures necessary to protect the organizational client from substantial injury.[24] "Government lawyers bear special obligations because of the responsibility to maintain public trust in government,"[25] so the focus should be on whether the injury is significant enough that a higher authority within the organization (in the case of Rule 1.13(b)), or an authority outside the organization (in the case of Rule 1.13(c)), should reasonably want to know the information and reasonably be expected to act on it to protect the organization from being injured by the wrongdoing.[26]

[22] The reasonableness of the lawyer's exercise of professional judgment will be evaluated based on relevant facts known at the time and will not be adjudged with the benefit of hindsight. The standard is an objective not subjective analysis.

[23] RESTATEMENT, *supra* note 20, § 97 cmt. j.

[24] If a government lawyer knows that the conduct of a government officer or employee is likely to be "a violation of a legal obligation to the organization," the question of whether any injury to the government organization would constitute "substantial" injury may be informed by the jurisdiction's whistleblower laws or other laws that require disclosure of certain misconduct directed against the government organization.

[25] RESTATEMENT, *supra* note 20, § 97 cmt. f.

[26] MODEL RULES OF PROF'L CONDUCT R. 1.13 assumes that, in some cases, higher authorities may not avert harm to the organization as they should. That is precisely why, in the most serious situations, a lawyer who goes up-the-ladder but fails to elicit an adequate response may be permitted to "report out" in order to protect the organizational client from substantial injury.

When a lawyer representing the government knows that a government officer or employee, using or misusing authority of the officer or employee's position with the government, intends to violate or is engaged in violating a legal obligation to the organization or is violating the law, the resulting injury to the government organization may be "substantial" because of the erosion of public trust. A constitutional violation or a violation of a court order by the government should ordinarily be regarded as causing "substantial injury" to the government because of the harm to the government's credibility as an exemplar and enforcer of the law, whereas a violation of a minor procedural requirement in a statutory or regulatory provision that causes no harm to third parties and does not result in injury to the government's reputation or role in advancing the public interest may not cause substantial injury within the meaning of Rule 1.13. Violations of law that cause substantial injury to a government organization would also include violations causing substantial reputational harm to the government, creating direct or potential legal exposure to the government, or impeding a government investigation.[27] Additionally, we note that the federal whistleblower statute protects employees from retaliation for reporting conduct that "violates the law, involves mismanagement of a government agency, gross waste of funds, abuse of authority or specific danger to public health or safety."[28] Given the protections afforded to employees for reporting out these types of conduct, we conclude that conduct that falls in any of these areas should be evaluated by the government lawyer as potential areas of "substantial injury."[29]

When it is determined that there is substantial injury, government lawyers have considerable discretion under Rule 1.13(b) regarding how to proceed when the Rule is triggered, since the provision calls upon the organization's lawyer to "proceed as is reasonably necessary in the best interest of the organization."[30] If the lawyer cannot persuade the government representative not to violate the law, the provision presupposes that the lawyer will take the matter to a higher authority unless the lawyer reasonably believes that it is not necessary to do so in the best interest of the organization. If the violation of law still is not adequately addressed, the Rule anticipates taking the matter further up-the-ladder, even to "the highest authority that can act on" the issue, but we assume that, in a government organization, going to the highest authority sometimes will not be a reasonable or practical alternative.

Disclosures permitted, but not required, by Rule 1.13(c) outside the government organizational client should not be undertaken lightly. Like other confidentiality exceptions, Rule 1.13(c) should be invoked prudently, and information should be revealed only "to the extent the lawyer reasonably believes necessary" in light of the purposes it is intended to serve.

---

[27] *See*, *e.g.*, *In re* Schuessler*,* 578 S.W.3d 762 (2019) (finding that an assistant county attorney violated the counterpart to Rule 1.13 by failing to disclose that a colleague filed false charges against a suspect to cover up a police officer's brutal assault of that suspect and among other things, lied to her supervisors about her knowledge, thereby interfering with and prolonging a federal investigation).

[28] THE FEDERAL WHISTLEBLOWER PROTECTION ACT, 5 U.S.C. § 2302 provides statutory protections for government employees, including lawyers, who report misconduct by government officials. Federal agencies are prohibited from retaliating against employees who report misconduct in these categories. 5 U.S.C. § 2302 (D).

[29] Lawyers should examine either the federal or state whistleblower statutes as appropriate.

[30] In Rule 1.13(b), as elsewhere in the Model Rules, the reasonableness standard is an objective one, as prior opinions note. *See, e.g.*, ABA Comm. on Ethics & Pro. Resp., Formal Op. 11-458 (2011) (the reasonableness standard under Rule 1.5(a) "is an objective standard").

In the case of subordinate lawyers in a government law office, assistance in making judgments about the application of these provisions should ordinarily be sought from supervising lawyers in their offices, insofar as internal policies permit. Although all lawyers, including government lawyers, have a responsibility to abide by the professional conduct rules applicable to their own conduct,[31] subordinate lawyers generally benefit from their supervisors' guidance and, if the direction provided by the supervisor is "a reasonable resolution of an arguable question of professional duty,"[32] the subordinate may defer to it even if the subordinate would decide the issue differently. However, unless the superior's direction meets that standard, following orders is no excuse and the subordinate lawyer is responsible for the lawyer's own conduct.[33]

Finally, it is important to emphasize that Rule 1.13 is only one potential source of a disclosure obligation for government lawyers. Government lawyers have other disclosure obligations under other provisions of the Model Rules.[34] They may also have contractual obligations or other employment obligations established by the organization's policies and rules and also, as noted earlier, legal obligations established by relevant regulations and statutes. We do not address obligations that government lawyers may have rooted in sources outside the professional conduct rules, but it is essential that government lawyers appropriately take account of them. For example, regardless of whether lawyers working for the government are serving in a representational capacity, they may be required by regulations or statutes in addition to Rule 1.13 to report legal or regulatory violations.[35] This Opinion does not address how these other confidentiality or disclosure laws may interact with the professional conduct rules.[36]

---

[31] This includes the responsibility under ABA Model Rule 2.1 to "exercise independent professional judgment and render candid advice" to clients.

[32] MODEL RULES OF PROF'L CONDUCT R. 5.2(b) ("A subordinate lawyer does not violate the Rules of Professional Conduct if that lawyer acts in accordance with a supervisory lawyer's reasonable resolution of an arguable question of professional duty.").

[33] *See* MODEL RULES OF PROF'L CONDUCT R. 5.2(a) ("A lawyer is bound by the Rules of Professional Conduct notwithstanding that the lawyer acted at the direction of another person.").

[34] *See, e.g.*, MODEL RULES OF PROF'L CONDUCT R. 3.3(a), 3.3(d), 3.8(d) & 4.1; MODEL RULES OF PROF'L CONDUCT R. 1.2(d), cmt. [10]; *see also* ABA Comm. on Ethics & Pro. Resp., Formal Op. 522 (2026) (addressing the obligation under Model Rule 8.4(d) to disclose procedural and jurisdictional problems to the court, such as the possible need for judicial recusal).

[35] For example, Federal Department of Justice employees must report any allegation of fraud waste, abuse, or criminal misconduct by any Department employee. Employees are also required to report any third-party investigations of any criminal misconduct. 28 CFR 45.11& 12. Government lawyers' legal obligation to report government constituents' minor violations of law, and statutory whistleblower protections for reporting such violations of law, are consistent with this Opinion's conclusion that even minor government illegality may cause "substantial injury" to the government organization. *See also* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 97(4) (2000) ("A lawyer representing a governmental client must proceed in the representation as stated in § 96 [addressing the rules applicable to lawyers representing organizations other than a governmental client], except that the lawyer . . . must observe other applicable restrictions imposed by law on those similarly functioning for the governmental client.").

[36] *See, e.g.*, MODEL RULES OF PROF'L CONDUCT R. 1.6(b)(6) (permitting the disclosure of information relating to the representation "to the extent the lawyer reasonably believes necessary . . . to comply with other law or a court order.").

**Conclusion**

Lawyers representing the government should seek guidance found in Model Rules 1.13(b) and (c) when they know of an intended or ongoing violation of a legal obligation to their government organization client or a violation of law by representatives of the government organization client that would be "imputed" to the organization and that is likely or reasonably certain to result in "substantial injury to the organization." A violation of law or legal obligation by an officer or employee of a government organization will be "imputed" to the organization if that government representative is using or misusing authority they possess by virtue of their position with the government. A violation of a legal obligation or law by a government officer or employee that would be imputed to their organization will cause "injury to the organization" within the meaning of Model Rules 1.13(b) and (c), given the government's obligation to support, defend and promote the rule of law. The government lawyer should exercise reasonable judgment regarding whether that injury is "substantial."

If a lawyer representing a governmental organization knows that its officer or employee, acting on behalf of the governmental organization client, intends to violate or is violating a legal obligation to the organization or is violating the law, that violation would be imputed to the organization, and the resulting injury to the organization is likely to be "substantial," the lawyer must "proceed as is reasonably necessary in the best interest of the organization" under Rule 1.13(b). Depending on the circumstances, this will likely require the government lawyer to "refer the matter to higher authority in the organization" and, if that fails to elicit an adequate response, to the organization's "highest authority that can act on behalf of the organization as determined with regard to applicable law." If, despite the lawyer's efforts in this situation, the higher authority fails to adequately address what is "clearly a violation of law," the government lawyer may, under Rule 1.13(c), reveal the information to an appropriate authority outside the government organization "but only if and to the extent the lawyer reasonably believes necessary to prevent substantial injury to the organization."

**AMERICAN BAR ASSOCIATION STANDING COMMITTEE ON ETHICS AND PROFESSIONAL RESPONSIBILITY**

321 N. Clark Street, Chicago, Illinois 60654-4714 Telephone (312) 988-5328

CHAIR: Bruce Green, New York, NY ■ Brian Shannon Faughnan, Memphis, TN ■ Terri Garland, Chicago, IL ■ Hilary P. Gerzhoy, Washington, D.C. ■ Veronica Root Martinez, Durham, NC ■ Tim Pierce, Madison, WI ■ Margaret Raymond, Madison, WI ■ Hon. Jennifer A. Rymell, Fort Worth, TX ■ A.J. Singleton, Lexington, KY ■ Thomas G. Wilkinson, Jr., Philadelphia, PA

**CENTER FOR PROFESSIONAL RESPONSIBILITY:** Joseph W. Tirrell, Lead Senior Counsel

**© 2026 by the American Bar Association. All rights reserved.**