**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DENNIS JOHNSON, *Petitioner*, | : | |
| v. | : | Civ. No. 15-4965 |
| SCOTT NICKELSON, et al., *Respondents* | : | |

**REPLY IN SUPPORT OF MOTION FOR RECUSAL**

Because the Court's conduct and statements during the course of recent proceedings would lead a reasonable observer to question its ability to impartially adjudicate this case, it is required to recuse itself. 28 U.S.C. § 455(a) (recusal is mandatory for a judge "in any proceeding in which his impartiality might reasonably be questioned"). The uncontroverted evidence before the Court established that DA Krasner's first introduction to Dennis Johnson's habeas petition came when a group of supervisory assistants[1] discovered serious errors in a years-old briefing that incorrectly conceded that Johnson was entitled to a new trial. That brief was authored and filed by ADA Jaclyn Mason while she was supervised by ADA Matt Stiegler. Before advising DA Krasner of the situation, the supervisory assistants approached Mason suggesting she correct her errors and oppose a new trial. Instead, she quit and for the first time blamed Stiegler for the errors.[2] As any responsible, ethical lawyer should,

---

[1] Katherine Ernst, Steven Wildberger, David Napiorski, Peter Andrews.

[2] Mason has since testified under oath before this Court that she neither read

DA Krasner agreed that the errors should be corrected promptly and that support for a new trial should be withdrawn. Stiegler suggested reviewing other work by Mason to see if she had made other serious mistakes. Ernst, Wildberger, and Napiorski disagreed with a broader search for additional errors by Mason,[3] and DA Krasner accepted their advice and did not move forward with a review of her or Stiegler's or others' work at that time. Although DA Krasner and his supervisory assistants acted with integrity in seeking to withdraw the erroneous brief, correct the errors, and change position to oppose a new trial, the Court determined that the consideration of a review of Mason's other work[4] for error—without actually having conducted that review to date—warrants criminal investigation by the Department of Justice. Self-correction, transparency, further investigation and even-handed accountability for all are ordinarily regarded as a good thing. To the contrary, the Court's baseless allegations of criminality demonstrate only the Court's apparent bias. That, among other things, is why the DAO has sought the Court's recusal. OAG's response to the Motion to Recuse runs away from the most flagrant indicators of the Court's apparent bias and thereby avoids weighing in on the most important reasons the Court must recuse.

The bedlam that resulted from this Court's handling of the discovery and disclosure of the erroneous concession has unfairly done real and lasting

---

the Notes of Testimony and only "may have" read all of the relevant caselaw prior to signing and filing the erroneous concession.

[3] Other supervisors had supervised Mason as well.

[4] Such review necessarily includes reviewing the work of Mason's other supervisors for any errors, including any failures to catch Mason's errors.

damage to the DAO and to the reputations of its personnel, and much of that stemmed from the Court's selective focus on courses of action DA Krasner considered during privileged conversations, including the discussion of a wholly appropriate broader review for additional error that to date he has not pursued. Bedlam didn't wait for the Court to seek or consider all the evidence. In the midst of its three hearings, the Court appeared to pre-judge the case and levied baseless accusations of criminality before hearing from additional witnesses ordered to testify by the Court and with zero input from Krasner whose input the Court had not and still has not sought. The Court ultimately issued an opinion that included an unprecedented (and unfounded) referral of an elected District Attorney, supervisor Matt Stiegler, and the DAO for criminal investigation by the Department of Justice without even suggesting that DA Krasner should testify prior to this accusation.

OAG's opposition to the Motion to Recuse acknowledges what it calls "an evolving landscape," of ever-shifting focus and purpose for prolonged hearings that became this summer's ancillary proceedings. OAG Response, Doc. No. 180 at 1. But it ignores the clear and uncontroverted record that the question being litigated (*i.e.*, the DAO's disqualification[5]) was not announced, or even mentioned, by the Court until after the closing of the evidentiary record. Judicial flexibility is always welcome, but parties shouldn't need a crystal ball (or post-hearing briefing order) to know what issues were being litigated during a hearing. Litigants who request hearings must clearly identify the issues to be

[5] This Court ruled against DAO disqualification, thereby agreeing that DA Krasner was legally correct all along on the supposed office-wide conflict issue raised by DAO supervisors.

litigated in advance; Courts acting on their own motion in a highly unorthodox process they tightly control should do the same. The Court did not demonstrate "neutrality throughout an evolving landscape"; rather, it twisted the landscape in what publicly appears to be an effort to steer the proceedings to a particular conclusion.

The OAG contends that the Court's obfuscation wasn't problematic because it allowed the DAO to present any evidence it believed would be relevant. Response at 4. Per OAG, the DAO's effort to supplement the record with an expert opinion was untimely and impermissible because it could have presented other witnesses during the evidentiary hearing. Response at 3-4. OAG cites *U.S. v. Watson* in support. 244 F. App'x 484, 487-88 (3d Cir. 2007) (unpublished). But its reliance on the Third Circuit's unpublished decision in *Watson* misses the point. There, Watson, a criminal defendant who had been fully apprised of accusations against him[6] was colloquied about his decision not to testify after the defense rested. *Id.* He declined to do so, but he changed his mind after closing arguments and asked to reopen the record. *Id.* Watson was reminded and re-apprised of the issues before the Court prior to deciding not to testify and chose to sit on his rights until the court began to charge the jury; the Court held his request to testify at that point was untimely. *Id.* But here, DA Krasner chose not to testify or submit an affidavit when the Court twisted what was at issue in the "evolving" proceedings. The Court may have been willing to accept testimony from DA Krasner or an ethics expert, but that

[6] There is obvious irony in OAG's disingenuous conflating of DA Krasner, who was accused of nothing prior to the Court's unorthodox hearings, with a criminal defendant.

willingness is of cold comfort given the Court's failure to articulate the issues it wished to decide *sua sponte* prior to closing the record at the evidentiary hearing.[7] This is particularly so given the portrayal to the public that "although [the Court] did not call Krasner to testify about the saga, he nonetheless criticized the DA in his memorandum for not taking the stand,[8] saying Krasner 'chose' not to testify, and noting he didn't submit an affidavit[9] to offer his version of events."[10]

OAG's charge that the DAO "was idle" by failing to call witnesses and submit evidence the Court never indicated were necessary is peculiar given its own idleness in addressing the most salient indication of the Court's apparent bias in this matter: its indication that DA Krasner (and ADA Stiegler) may have committed crimes. OAG offers no rebuttal to the DAO's contention that the Court's allegations are unsupported by the record. Indeed, the Court initially levied accusations that the very Law Division Supervisors it would go on

[7] OAG's argument that the Court was willing to "accept[] and answer[] requests for clarification" also misses the mark. OAG Response at 6. Parties should not be required to seek clarification to determine what, precisely, a Court is ruling on in proceedings it initiated *sua sponte.*

[8] Yet more irony: silence cannot be held against a criminal defendant, which this Court's surprise accusation makes him out to be.

[9] The ironies continue: Affidavits are generally inadmissible in hearings, but in their absence apparently welcomed by the Court. The common thread in this Court's evidentiary rulings and questioning appears to be that evidence is welcome if it can be interpreted as detrimental to only one side.

[10] Chris Palmer, *A timeline of turmoil*, Sept. 25, 2026, Philadelphia Inquirer (available at https://www.inquirer.com/crime/inq2/larry-krasner-post-conviction-case-controversy-timeline-20260925.html).

to laud "may have sought to mislead the Court" based on a strained and seemingly motivated misreading of the OAG's motion for a briefing schedule. ECF. No. 127, 4. It later announced that "potential wrongdoing abounds" and invoked the specter of perjury, subornation of perjury, criminal conspiracy, and obstruction of justice, before hearing any of the evidence it ultimately held supported potential criminal referrals. Tr. 8/27/2026 at 34. Those wildly intemperate and unsupported public remarks plainly had a profound effect on a reasonable observer's view of the Court's impartiality.[11] But according to OAG, the DAO's complaints about the Court's appearance of bias should be rejected because "opinions formed by [a] judge on the basis of facts introduced or events occurring in the course of the current proceedings" can't support a motion to recuse based on bias or partiality "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." OAG Response at 5-6 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Because the Court's apparent bias was on display before, during, and after it heard the evidence in this case, OAG's argument falls flat.

The appearance of the Court's bias was further exacerbated by the decision the Court ultimately issued, specifically its unorthodox public "referrals" for criminal investigation that received widespread media coverage.[12] One

[11]*See, e.g.*, Chris Palmer, *A Federal Judge Suggested Actions by DA Larry Krasner's Office in a Controversial Case Could Amount to Crimes*, Aug. 27, 2026, Philadelphia Inquirer ("a stunning suggestion that inserted the threat of potential criminal consequences into a matter that has already roiled District Attorney Larry Krasner's office. . . .") (available at https://www.inquirer.com/crime/larry-krasner-murder-conviction-appealed-federal-case-crimes-20260827.html).

[12]*See, e.g.*, Chris Palmer, *A Federal Judge Believes DA Larry Krasner May Have*

observer noted his view that the Court "is using an internal conflict in the office to further the objective of removing Krasner from office."[13] The Court's referral to the DOJ is particularly notable because the Department as it stands is a funhouse mirror reflection of its former self.[14] It flouts court orders.[15] It vindictively prosecutes political opponents and litigants who challenge its actions.[16]

---

*Broken the Law, and He Referred the Case to the U.S. Attorney's Office*, Sept. 15, 2026, Philadelphia Inquirer (describing the Court's referrals as "stunning statements") (available at https://www.inquirer.com/crime/paul-diamond-judge-larry-krasner-crimes-prosecution-20260915.html); Campbell Robinson, *A Progressive D.A. Pushed to Overturn Convictions. Now He's Under Fire*, Oct. 3, 2026, N.Y. Times (available at https://www.nytimes.com/2026/10/03/us/larry-krasner-philadelphia-district-attorney.html).

[13] Chris Palmer, Anna Orso, and Ellie Rushing, *Philly DA Larry Krasner Faces Legal and Political Uncertainty After a Judge Said He May Have Committed Crimes*, Sept. 16, 2026, Philadelphia Inquirer (available at https://www.inquirer.com/crime/larry-krasner-paul-diamond-criminal-prosecution-murder-post-conviction-20260916.html). Another noted that "Just as the Krasner statements have been closely scrutinized, so should the highly unusual manner that seeks to subject the DA to a sadly suspect criminal process." Michael Carroll, *Letter to the Editor, Criminal Referral*, Philadelphia Inquirer (Sept. 21, 2026) (available at https://www.inquirer.com/opinion/letters/letters-editor-september-21-2026-20260921.html).

[14] J. David McSwane, Pratheek Rebala and Carla Astudillo, *Federal Judges Chastise Trump's Justice Department for "Unlawful," "Unethical" and "Unseemly" Conduct*, July 28, 2026, Pro Publica (available at https://www.propublica.org/article/justice-department-presumption-of-regularity).

[15] *E.g.*, Benjamin S. Weiss, *DOJ Admits it Violated More Than 50 Court Orders in New Jersey*, Feb. 18, 2026, Courthouse News Service (available at https://www.courthousenews.com/doj-admits-it-violated-more-than-50-court-orders-in-new-jersey/).

[16] *E.g.*, *United States v. Abrego Garcia*, 833 F.Supp.3d 811 (M.D. Tenn. 2026) (holding that that the DOJ had engaged in vindictive and selective prosecution and saying that absent Abrego Garcia's "successful lawsuit challenging his removal to El Salvador, the government would not have brought this

And it engages in litigation despite conflicts of interest and for improper purposes.[17] Even as we write, it has been announced that former White House aide Cassidy Hutchinson, who testified about the January 6 attack on the U.S. Capitol, is being investigated by a federal grand jury.[18] Misconduct may abound, but it is not occurring in the Philadelphia District Attorney's Office.

OAG's silence on the Court's unprecedented criminal "referrals" speaks volumes. In light of the evidence before the Court and the lack of compelling opposition from the OAG, the DAO reiterates its request for the Court's recusal. Because the Court's actions and statements give rise to the appearance of bias, it is required to recuse under 28 U.S.C. § 455(a).

---

prosecution"); Rebecca Beitsch, Rebecca Beitsch, *Comey Seeks to Toss Seashell '86' Case, Accusing Trump, DOJ of Vindictive Prosecution*, Jul. 29, 2026, The Hill (available at https://thehill.com/regulation/court-battles/5996345-comey-86-seashell-case-trump-doj-blanche/);*see also* Kristy Parker, Shanna Singh Hughey, Molly Golski, *Tracking Retaliatory Use of Arrests, Prosecutions, and Investigations by the Trump Administration*, (Sept. 21, 2026) Pro Publica (available at https://protectdemocracy.org/work/retaliatory-action-tracker/).

[17] *Trump v. Internal Revenue Serv.*, 836 F.Supp.3d 1225, 1260 (S.D. Fla. 2026) (finding that "the [DOJ] failed to defend this lawsuit or to respond to the Court's jurisdictional inquiry because its position would not withstand judicial scrutiny and because resolution of the threshold issues identified by the Court would not have favored its preferred outcome to this case.").

[18] Hafiz Rashid, *Justice Department Finds Its Newest Target: Cassidy Hutchinson*, (Oct. 8, 2026) New Republic ("These substandard lawyers will hopefully have a tough time convincing a federal grand jury to pursue revenge against one of Trump's perceived enemies") (available at https://newrepublic.com/post/216418/justice-department-indictment-target-cassidy-hutchinson);

Respectfully submitted,

*/s/Thomas Gaeta*
THOMAS GAETA
Assistant District Attorney
Supervisor, Civil Litigation

*/s/Lawrence S. Krasner*
LAWRENCE S. KRASNER
District Attorney of Philadelphia

## CERTIFICATE OF SERVICE

I, Thomas Gaeta, certify that on October 9, 2026, I served a copy of this response on all counsel of record via the Court's CM/ECF system.

*/s/Thomas Gaeta*
THOMAS GAETA
Assistant District Attorney
Supervisor, Civil Litigation