**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DENNIS JOHNSON | : | |
| PETITIONER | : | |
| V. | : | CIVIL ACTION NO. 15-4965 |
| | : | |
| SCOTT NICKELSON, *ET AL.* | : | |
| RESPONDENTS | : | |

**OFFICE OF ATTORNEY GENERAL'S**
**RESPONSE TO MOTION FOR RECONSIDERATION**

The Pennsylvania Office of Attorney General ("OAG") respectfully submits this Response to the Philadelphia District Attorney's Office's ("DAO") Motion for Reconsideration ("Motion") (Doc. No. 176) seeking reconsideration of parts of the Court's September 15, 2026 Memorandum and Order (Doc. Nos. 173 and 174).

The DAO's Motion attempts to reconstrue unrebutted facts, relitigate well-founded legal conclusions, and offer -- for the first time -- argument via an unsworn declaration by District Attorney Lawrence Krasner. A motion for reconsideration is not the proper vehicle to ask the Court to rethink repetitive arguments that have already been fully examined. Therefore, the Motion should be denied.

## I. Legal Standard

While the DAO's Motion does not cite the legal basis for seeking reconsideration, a motion to reconsider a non-final, interlocutory order (such as the

order here) arises under Federal Rule of Civil Procedure 54(b).[1] "To preserve the court's interest in finality, motions for reconsideration of both final and interlocutory orders should be granted sparingly." *Carnevale v. DiGiovanni*, No. 2:22-cv-341, 2026 WL 346207, at *1 (W.D. Pa. Feb. 9, 2026) (citing *Williams v. City of Pittsburgh*, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998)). Indeed, "[e]ffective trial court management requires a presumption against reconsideration of interlocutory decisions." *In re Anthanassious*, 418 F. App'x 91, 96 (3d Cir. 2011) (unpublished).

"Rule 54(b) permits reconsideration pursuant to a district court's 'inherent power' when reconsideration is 'consonant with justice to do so.'" *Virgin Grand Estates #60 Villa Ass'n v. Inter-Ocean Insurance Agency, St. Thomas, LLC*, No. 25-1804, 2026 WL 2412589, at *4 (3d Cir. Aug. 18, 2026) (unpublished) (quoting *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973), *abrogated on other grounds by Ohio v. Johnson*, 467 U.S. 493 (1984)); *see Qazizadeh v. Pinnacle Health System*, 214 F. Supp. 3d 292, 295 (M.D. Pa. 2016) ("The court reaffirms the better-reasoned view that motions for reconsideration of interlocutory orders . . . are motions under Federal Rule of Civil Procedure 54(b)."); *Laboratory Charter School v. A.M.*, Civil Action No. 25-2524, 2026 WL 591550, at *2 (E.D. Pa. Mar. 3, 2026) (under Rule 54(b), an interlocutory order may only be reconsidered if the person seeking reconsideration "establish[es] good cause for why [we] should revisit the order and if it is consonant

[1] Rule 54(b) provides, in relevant part, that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

with justice to reconsider it") (quotations and citations omitted). In assessing a motion to reconsider under Rule 54(b), courts may also consider the more stringent grounds a party must establish for reconsideration under Federal Rule of Civil Procedure 59(e): "'(1) an intervening change in the controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or fact or prevent manifest injustice.'" *Wiest v. Lynch*, 710 F.3d 121, 128 (3d Cir. 2013) (quoting *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)).

"Moreover, whether involving a final or interlocutory order, a motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant. A reconsideration motion should not be used to try to get a second bite at the apple, or to raise new arguments or evidence that could have been proffered prior to the issuance of the order in question." *Qazizadeh*, 214 F. Supp. 3d at 295-96 (quotations and citations omitted). In short, a "motion to reconsider may not raise new arguments that could or should have been made in support of, or in opposition to, the original motion." *In re Linerboard Antitrust Litig.*, Civil Action Nos. 98-5055 and 99-1341, 2008 WL 4461914, at *3 (E.D. Pa. Oct. 3, 2008).

## II. Argument

There is no good cause to reconsider the Order, for several reasons. First, the hearing in this case was properly conducted and designed to address conflict issues *raised by* the DAO and its attorneys. *See* Doc. No. 127 at 4-5 (June 30, 2026 Order scheduling hearing stating, "I cannot address the merits of the § 2254 Petition until

I have determined what has been alleged and argued by the DAO and its attorneys, what representations have been made to the Court, and what has actually occurred"). A court possesses inherent authority to manage proceedings before it and ensure that its process is used for the orderly adjudication of matters properly presented. *See Dietz v. Bouldin,* 579 U.S. 40, 45-47 (2016); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991).

Here, over the course of the three-day hearing, the Court gave all parties the opportunity to examine the witnesses who testified, offer documentary evidence, and call additional witnesses. For its part, the DAO participated in the hearing, questioned witnesses, and offered several documentary exhibits. Despite twice being afforded the opportunity to call witnesses, the DAO chose not to do so. N.T. 8/27/26 at 180; N.T. 9/1/26 at 45. After the hearing concluded, the Court asked the parties to submit proposed findings of fact and conclusions of law. N.T. 9/1/26 at 45. The DAO submitted proposed factual findings and conclusions of law documenting its view of the facts developed at the hearing and its legal conclusions. Doc. No. 169. The DAO even included a purported "expert" opinion from Professor Green (Doc. No. 169-1) despite not calling (or even mentioning) Professor Green as a witness or offering a report during the hearing; nonetheless, the Court reviewed and considered this information. *See* Doc. No. 173 at 34 (describing "expert" opinion as a "disorganized mess and largely useless" that "ignored critical facts that bear directly on the conflicts question").

In sum, during a hearing that spanned three days over an approximate six-week period, the DAO had the opportunity to question witnesses, offer evidence, call additional witnesses, submit post-hearing proposed factual findings and conclusions of law, and supplement its post-hearing filings with a previously-undisclosed "expert" opinion without objection. In these circumstances, the conduct and procedures employed at the hearing were fair to all parties and provide no basis for reconsideration.

Second, the Motion attempts to reconstrue unrebutted facts -- facts that the Court found had been "proven clearly and convincingly" after the testimony of six witnesses over three hearing days. Doc. No. 173 at 7. The Court credited the testimony of Mason, Ernst, Wildberger, Napiorski, and Andrews, finding that it was "compelling and corroborated by contemporaneous documents." Doc. No. 173 at 7. Despite the deeply concerning testimony offered by these witnesses, and despite being afforded the opportunity to call additional witnesses, the DAO chose not to do so. N.T. 8/27/26 at 180; N.T. 9/1/26 at 45. The Court therefore concluded, "Mr. Krasner does not wish to give this Court a truthful account of how the Concession came to be even though his duty to the Court requires him to do so. Moreover, Mr. Krasner's duty to the Commonwealth requires him to explore fully and then reveal to the Court his own actions, the actions of his long-time colleague Stiegler, and those of the office Mr. Krasner leads." Doc. No. 173 at 33-34; *see also* Doc. No. 173 at 35 ("[The conflicts] arise from Mr. Krasner's own words and actions, recounted consistently by four

credible witnesses (whom Mr. Krasner does not contradict), and corroborated by contemporaneous documents.”).

As to those facts themselves, as summarized by the Court:

> Mr. Krasner urged the Four to blame Mason alone for the errors, adopting Stiegler’s “really good idea”: to review Mason’s other cases, “say that this was a pattern by her, and then file something with the Court saying that.” (Doc. No. 160 at 52:5–11 (Ernst), 122:23–123:2 (Wildberger), 165:16–20 (Napiorski).) Mr. Krasner repeatedly refused to refer this matter to the OAG, insisting that “we have to have somebody in the room, in the courtroom to protect the office.” Indeed, he would “just tell the person handling the case to not do any investigation” of Johnson’s claims—a direct violation of his duty to the Commonwealth. (Id. at 54:18–20, 65:19–21 (Ernst).) Mr. Krasner “was not interested in talking about the merits of the case.” (Id. at 105:13–14 (Ernst).) And Mr. Krasner warned that there would be “consequences” if anyone alerted the Court to the conflict. (Id. at 136:13–22 (Wildberger); Doc. No. 165 at 9:2–7 (Napiorski).)

Doc. No. 173 at 34.

Of course, a motion for reconsideration should not be used “to raise new arguments or evidence that could have been proffered prior to the issuance of the order in question[.]” *Qazizadeh*, 214 F. Supp. 3d at 295-96. Nor should a motion to reconsider be used “as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement[.]” *Laboratory Charter School*, 2026 WL 591550, at *2 (citations and quotations omitted). Having declined to offer additional evidence during the hearing, and having already offered its proposed findings of fact and conclusions of law, the DAO’s Motion offers no good cause to reargue those points now.

Relatedly, the Court should disregard the unsworn declaration of District Attorney Krasner appended to the DAO's Motion. Doc. No. 176-1. Of course, "'the right to testify must be exercised at the evidence-taking stage of trial.'" *United States v. Watson*, 244 F. App'x 484, 487 (3d Cir. 2007) (unpublished) (quoting *United States v. Jones*, 880 F.2d 55, 59 (8th Cir. 1989)). And an unsworn declaration (not subject to cross examination) cannot substitute for live testimony. *See e.g., Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473 (1962) ("It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice.'").[2]

Putting aside these evidentiary deficiencies, once again, a motion for reconsideration is not the proper vehicle to "raise new arguments or evidence that could have been proffered prior to the issuance of the order in question[.]" *Qazizadeh*, 214 F. Supp. 3d at 295-96. The DAO twice declined the Court's invitation to call witnesses during the hearing; DA Krasner could have testified during the hearing but did not do so. It is revealing that DA Krasner submitted his unsworn declaration

[2] DA Krasner's unsworn declaration is procedurally defective as well. An unsworn declaration may substitute for an affidavit only when the declarant subscribes to the statement as true under penalty of perjury. *See* 28 U.S.C. § 1746. The Third Circuit has therefore held that unsworn statements not given under penalty of perjury are not competent evidence. *United States ex rel. Doe v. Heart Solution, P.C.*, 923 F.3d 308, 315 (3d Cir. 2019); *see Davis v. Solid Waste Services, Inc.*, 625 F. App'x 104, 105 n.1 (3d Cir. 2015) (unpublished) (district court did not abuse its discretion in striking six declarations that violated Section 1746 because they were unsigned and did not contain a statement that they were true under penalty of perjury). DA Krasner's unsworn declaration is similarly incompetent.

*only after* the Court issued its Memorandum and Order. But "[m]ere dissatisfaction with the Court's ruling, however, is not a proper basis for reconsideration." *Progressive Cas. Ins. Co. v. PNC Bank, N.A.*, 73 F. Supp. 2d 485, 487 (E.D. Pa. 1999).[3]

Further, even if the Court were to consider the information in DA Krasner's unsworn declaration, it simply attempts to recharacterize evidence developed during the hearing, such as what happened during meetings and the meaning of phrases like "protect the office," "consequences," and "conflict." *See* Doc. No. 176-1 at 3. Of course, the DAO already attempted to advance its interpretation of the evidence in its proposed findings of fact and conclusions of law. *See, e.g.*, Doc. No. 169 at 28 ("DA Krasner also explained his prior comment regarding protecting the office"); 33 (section heading titled "Conclusions of law regarding conflicts of interest."). And as the Court pointed out in its Memorandum, DA Krasner "apparently does not dispute – or does not address – much of the testimony presented." Doc. No. 173 at 6. The Court should reject this latest salvo. After all, reconsideration is "not to be used as a

---

[3] The Motion (at 6) asserts that the "Court appears to have taken pains to *avoid* having DA Krasner testify." This after-the-fact analysis is flatly contradicted by the record. To start, in its June 30, 2026 Order setting a hearing, the Court stated, "I expect, *inter alia*, to hear live testimony from" the six witnesses who testified. Doc. No. 127 at 5. Use of the phrase "*inter alia*" made clear that the hearing was not limited to the six listed witnesses. During the hearing, at the end of the second and third days, the Court asked all parties whether they wanted to call other witnesses; they did not. N.T. 8/27/26 at 180; N.T. 9/1/26 at 45. Before the hearing concluded, the Court stated, "*I* don't wish to hear from any other witnesses." N.T. 9/1/26 at 45 (emphasis added). The Court immediately followed this statement by *asking the parties* whether they wanted to call witnesses; the Court's wish did not prevent the DAO from calling witnesses. Finally, at no point during the three days did the DAO ask to call additional witnesses, seek to offer additional evidence, or request more time to do so.

means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002) (quotations and citation omitted).

The unsworn declaration also contains extensive advocacy. DA Krasner describes the Court's Memorandum as "twist[ing] the truth to the point of breaking" (Doc. No. 176-1 at 1); "defy[ing] logic and employ[ing] Orwellian language" (*id.*); and having "accusatory themes" (*id.* at 3). The unsworn declaration also characterizes Mason as not "credible" (*id.* at 5 n.7) and opines that drafts written by Mason do not support her claims -- despite admittedly not reviewing those drafts (*id.* at 8). The unsworn declaration also comments on the motivations of witnesses that the Court found credible, claiming that these witnesses were motivated by "fear" or finances. *Id.* at 4; 8.[4] Such argument and credibility determinations are not facts established through a declaration, sworn or otherwise.[5] The Court should reject reconsideration based on the unsworn declaration.

---

[4] The unsworn declaration references Ernst and Wildberger, among other Law Division personnel. OAG understands that as of on or about October 7, 2026, Ernst and Wildberger are no longer employed by the DAO and that Ernst and Wildberger strongly disagree with some of the information alleged in DA Krasner's unsworn declaration. *See* Chris Palmer, *Two prosecutors resigned after they said Philly DA Larry Krasner 'sought to discredit' them in court*, The Philadelphia Inquirer, Oct. 7, 2026.

[5] Substantial portions of DA Krasner's unsworn declaration concern political matters having no apparent relevance to the Motion. The unsworn declaration discusses the president of the United States, the U.S. Department of Justice, unrelated investigations and prosecutions, electoral politics, and the political affiliations of attorneys involved in this matter. *See* Doc. No. 176-1 at 1-2. It then relies on those

Finally, analysis of the grounds needed to reconsider a final order under Rule 59(e) is insightful. *See, e.g.*, *Laboratory Charter School*, 2026 WL 591550, at *2 (considering factors). Here, the Motion cites no change in controlling law. Nor does it point to any evidence that could not have been "proffered prior to the issuance of the order in question[.]" *Qazizadeh*, 214 F. Supp. 3d at 296. And to the extent the Motion asserts the need to correct a clear error of law or fact or to prevent manifest injustice, the circumstances of this case demonstrate that no clear errors or manifest injustice occurred. When alerted to a potential conflict issue by the DAO and its employees, the Court convened a lengthy hearing, heard testimony, reviewed documentary evidence, gave all parties the opportunity to participate, and received post-hearing briefing. The DAO's disagreement with the Court's decision neither rises to the level of manifest injustice, nor does it provide good cause for reconsideration. Reconsideration it not "a second bite at the apple." *Qazizadeh*, 214 F. Supp. 3d at 296 (quotations and citations omitted).

---

matters to request that the Court recuse itself "from this matter and every other matter involving the Philadelphia District Attorney's Office for the foreseeable future." Doc. No. 176-1 at 2.

## III. Conclusion

For the foregoing reasons, OAG respectfully submits that the Motion should be denied.

Respectfully submitted,

*/s/ Susan E. Affronti*
SUSAN E. AFFRONTI
Chief Deputy Attorney General

*/s/ John J. Boscia*
JOHN J. BOSCIA
Senior Deputy Attorney General

*/s/ Catherine Kiefer*
CATHERINE KIEFER
Senior Deputy Attorney General

Criminal Appeals & Grand Jury Section
Pennsylvania Office of Attorney General
1000 Madison Avenue, Suite 310
Norristown, PA 19403

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DENNIS JOHNSON | : | |
| PETITIONER | : | |
| V. | : | CIVIL ACTION NO. 15-4965 |
| | : | |
| SCOTT NICKELSON, *ET AL.* | : | |
| RESPONDENTS | : | |

CERTIFICATE OF SERVICE

I, Susan E. Affronti, Chief Deputy Attorney General, hereby certify that on October 13, 2026, the foregoing was served through this Court's electronic filing system.

*/s/ Susan E. Affronti*
SUSAN E. AFFRONTI
Chief Deputy Attorney General